Shaun P. Martin (Cal. Bar No. 158480)
*smartin@sandiego.edu*
5998 Alcala Park, Warren Hall
San Diego, CA 92110
Telephone: (619) 260-2347
Facsimile: (619) 260-7933

Eleanor Frisch (Cal. Bar No. 304408)
*efrisch@cohenmilstein.com*
Jacob T. Schutz (MNBA #0395648,
admitted *pro hac vice*)
*jschutz@cohenmilstein.com*
COHEN MILSTEIN SELLERS
  & TOLL PLLC
400 South 4th Street # 401-27
Minneapolis, MN 55415
Tel.: (202) 408-4600
Fax: (202) 408-4699

[Additional counsel appear on signature page]

*Counsel for Plaintiffs and the Proposed Class*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### EASTERN DIVISION

| | |
|---|---|
| Alfredo Ramirez, Ramón Santos Castro and Ivan Fernandez, individually and as representatives of a class of all others similarly situated and on behalf of the AMPAM Parks Mechanical, Inc. Employee Stock Ownership Plan (the "AMPAM ESOP" or the "ESOP"),<br><br>                Plaintiffs,<br><br>    v.<br><br>AMPAM Parks Mechanical, Inc., Charles E. Parks III, John D. Parks, John G. | Case No. 5:24-cv-01038-KK (DTBx)<br><br>**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION**<br><br>Judge: Hon. Kenly K. Kato |

Mavredakis, Kushal B. Kapadia, the AMPAM Board of Directors, Neil Brozen, Ventura Trust Company, James C. Wright III, Kevin Dow, James Ellis, Steve Grosslight, and Mike Matkins,

        Defendants.

Courtroom: 3

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................ 1

II.   ERISA'S STATUTORY BACKGROUND ................................... 3

III.  FACTUAL BACKGROUND ....................................................... 5

    A.   The Seller Defendants Sought to Sell AMPAM but
       Keep Control. ................................................................... 5

    B.   Sellers Appoint Brozen to Approve the Sweetheart
       Deal.................................................................................... 6

    C.   Brozen Improperly Allows the ESOP to overpay for
       AMPAM. ........................................................................... 7

    D.   The Sellers Decide to Sell the Company Back to
       Themselves ....................................................................... 8

    E.   The Named Plaintiffs and Their Claims on Behalf of
       the Class ........................................................................... 9

IV.   ARGUMENT............................................................................ 10

    A.   The Class Meets Each of the Rule 23(a) Criteria............ 11

       1.    Numerosity............................................................ 11
       2.    Commonality.......................................................... 12
       3.    Typicality .............................................................. 14
       4.    Adequacy .............................................................. 15

    B.   Class Certification Is Appropriate Under Rule 23(b) ..... 17

       1.    Individual Adjudications Would Establish
          Incompatible Standards of Conduct for
          Defendants ............................................................ 18

       2.    Individual Adjudications Would Be
          Dispositive of the Interests of Other Class
          Members as a Practical Matter............................... 19

    C.   Defendants did not and cannot identify any facts or
       evidence that shows Plaintiffs fail to satisfy any of
       the Rule 23's requirements............................................. 20

V.    CONCLUSION......................................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alcantar v. Hobart Serv.*,
  800 F.3d 1047 (9th Cir. 2015) ...................................................................12

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)..............................................................10, 11, 17, 18

*Amgen Inc. v. Conn. Ret. Plans and Tr. Funds*,
  568 U.S. 455 (2013)..................................................................................11

*Baker v. John Hancock Life Ins. Co.*,
  No. 1:20-cv-10397, ECF 53 (D. Mass. Feb. 12, 2021) .........................1

*Barnes v. AT & T Pension Benefit Plan-Nonbargained Program*,
  270 F.R.D. 488 (N.D. Cal. 2010)............................................................16

*Bateman v. Am. Multi-Cinema, Inc.*,
  623 F.3d 708 (9th Cir. 2010) ..................................................................11

*Coleman v. Brozen*,
  20-1358 (N.D. Tex. filed Sept. 27, 2019).................................................6

*Colesberry v. Ruiz Food Prods., Inc.*,
  *2006 WL 1875444 (E.D. Cal. June 30, 2006)* ..............................17, 19

*Cryer v. Franklin Templeton Res., Inc.*,
  2017 WL 4023149 (N.D. Cal. July 26, 2017) .....................................18

*Cunningham v. Wawa, Inc.*,
  387 F. Supp. 3d 529 (E.D. Pa. 2019)......................................................1

*Delarosa v. Boiron, Inc.*,
  275 F.R.D. 582 (C.D. Cal. 2011).............................................................12

*Douglin v. GreatBanc Tr. Co.*,
  115 F. Supp. 3d 404 (S.D.N.Y. 2015) ....................................................1

*Ellis v. Costco Wholesale Corp.*,
   657 F.3d 970 (9th Cir. 2011) ........................................................................11, 14

*Feinberg v. T. Rowe Price Grp., Inc.*,
   No. 1:17-cv-00427, ECF 77-3 (D. Md. May 1, 2019)..........................................1

*Fernandez v. K-M Indus. Holding Co., Inc.*,
   2008 WL 2625874 (N.D. Cal. June 26, 2008)......................................................1

*Foster v. Adams & Assocs., Inc*,
   2019 WL 4305538 (N.D. Cal., Sept. 11, 2019)................................1, 15, 18, 19

*Gamache v. Hogue*,
   338 F.R.D. 275 (M.D. Ga. 2021).........................................................................1

*Gamino v. KPC Healthcare Holdings, Inc.*,
   2021 WL 7081190 (C.D. Cal. Aug. 6, 2021) ....................................1, 13, 15, 20

*In re GE ERISA Litig.*,
   1:17-cv-12123, ECF 138 (D. Mass. Dec. 13, 2019).............................................1

*Guidry v. Wilmington Tr.*,
   333 F.R.D. 324 (D. Del. 2019) ..........................................................................12

*Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.*,
   530 U.S. (2000).....................................................................................................4

*Harrison v. Envision Mgmt., Holding, Inc. Bd. of Dirs.*,
   59 F.4th 1090 (10th Cir. 2023) ............................................................................4

*Hawkins v. Cintas Corp.*,
   32 F.4th 625 (6th Cir. 2022) ................................................................................4

*Hurtado v. Rainbow Disposal Co., Inc.*,
   2019 WL 1771797 (C.D. Cal. Apr. 22, 2019).............................................*passim*

*Kanawi v. Bechtel Corp.*,
   254 F.R.D. 102 (N.D. Cal. 2008).....................................................1, 13, 17, 18

*LaRue v. DeWolff, Boberg & Assocs., Inc.*,
   552 U.S. 248 (2008)..............................................................................................4

*Lively v. Dynegy Inc.*,
   2007 WL 3081709 (7th Cir. Oct. 10, 2007) ........................................................3

*Marshall v. Northrop Grumman Corp.*,
    2017 WL 6888281 (C.D.Cal., 2017) ...................................................................14

*Mass. Mut. Life Ins. Co. v. Russell*,
    473 U.S. 134 (1985).......................................................................................3

*McCluskey v. Trs. of Red Dot Corp. Emp. Stock Ownership Plan &*
    *Tr.*,
    268 F.R.D. 670 (W.D. Wash. 2010) ........................................................1, 18

*McGinnes v. FirstGroup Am., Inc.*,
    No. 1:18-cv-00326, ECF 92 (S.D. Ohio Sept. 8, 2022)..................................1

*Miller v. Brozen*,
    No. 23-2540 (D.N.J. filed May 9, 2023) .......................................................6

*Moitoso v. FMR LLC*,
    No. 1:18-cv-12122, ECF 83 (D. Mass. May 7, 2019) ....................................1

*Moyle v. Liberty Mut. Ret. Ben. Plan*,
    *823 F.3d 948, 965 (9th Cir. 2016)*……………………............................17

*Munro v. University of Southern California*,
    2019 WL 7842551 (C.D. Cal. Dec. 20, 2019)...............................................14

*Neil v. Zell*,
    275 F.R.D. 256 (N.D. Ill. 2011) .....................................................................1

*Norris v. Mazzola*,
    2017 WL 6493091 (N.D. Cal. Dec. 19, 2017)...............................................18

*In re Northrop Grumman Corp. ERISA Litig.*,
    2011 WL 3505264 (C.D. Cal. Mar. 29, 2011).....................................16, 18, 20

*In re Online DVD-Rental Antitrust Litig.*,
    779 F.3d 934 (9th Cir. 2015) ........................................................................15

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999).......................................................................................19

*Pledger v. Reliance Tr. Co.*,
    No. 1:15-cv-4444, ECF 101 (N.D. Ga. Nov. 7, 2017) ...................................1

*In re Polaroid ERISA Litig.*,
   240 F.R.D. 65 (S.D.N.Y. 2006) ............................................................1

*Reetz v. Lowe's Cos., Inc.*,
   2020 WL 6528866 (W.D.N.C. Nov. 5, 2020) ................................1, 20

*Rozo v. Principal Life Ins. Co.*,
   2017 WL 2292834 (S.D. Iowa May 12, 2017)......................................1

*In re Schering Plough Corp. ERISA Litig.*,
   589 F.3d 585 (3d Cir. 2009) ..............................................................1, 2

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
   559 U.S. 393 (2010)...............................................................................11

*Smith v. Greatbanc Tr. Co.*,
   No. 1:20-cv-02350, ECF 128 (N.D. Ill. Jan. 17, 2023) .......................1

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ..............................................................15

*In re Syncor ERISA Litig.*,
   227 F.R.D. 338 (C.D. Cal. 2005)...................................................15, 19

*Tawfilis v. Allergan, Inc.*,
   2017 WL 3084275 (C.D. Cal. June 26, 2017)......................................12

*Tibble v. Edison Int'l*,
   2009 WL 6764541 (C.D. Cal. June 30, 2009).................................13, 16

*Tracey v. MIT*,
   2018 WL 5114167 (D. Mass. Oct. 19, 2018) .......................................1

*Urakhchin v. Allianz Asset Mgmt. of Am. L.P.*,
   2017 WL 2655678 (C.D. Cal. June 15, 2017)................................16, 18

*Varity Corp. v. Howe*,
   516 U.S. 489 (1996)................................................................................4

*Velazquez v. Mass. Fin. Srvs. LLC*,
   No. 1:17-cv-11249, ECF 94 (D. Mass. June 25, 2019) .......................1

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011).................................................................10, 12, 14

*Walsh v. Brozen*,
   No. 22-01869 (N.D. Tex. filed Oct. 29, 2021) .......................................................6

**Rules and Statutes**

Employee Retirement Income Security Act .........................................................*passim*

29 U.S.C. § 502(a)(2) ...............................................................................................15

29 U.S.C. § 1104 ......................................................................................................21

29 U.S.C. § 1104(a)(1) .............................................................................................18

29 U.S.C. § 1105(a) ..................................................................................................21

29 U.S.C. § 1109 ........................................................................................................3

29 U.S.C. § 1132(a)(2) ......................................................................................3, 4, 10

29 U.S.C. § 1132(a)(3) ...................................................................................3, 4, 5, 10

29 U.S.C. § 1132(g) ..................................................................................................10

Fed. R. Civ. P. 23 .......................................................................................1, 10, 11, 20

Fed. R. Civ. P. 23(a) ............................................................................................*passim*

Fed. R. Civ. P. 23(a)(1) ............................................................................................12

Fed. R. Civ. P. 23(a)(2) ........................................................................................3, 12

Fed. R. Civ. P. 23(a)(3) ............................................................................................14

Fed. R. Civ. P. 23(a)(4) ............................................................................................15

Fed. R. Civ. P. 23(b) ........................................................................................2, 10, 17

Fed. R. Civ. P. 23(b)(1) ........................................................................................*passim*

Fed. R. Civ. P. 23(b)(1)(A) .............................................................................17, 18, 21

Fed. R. Civ. P. 23(b)(1)(B) .............................................................................17, 19, 20, 21

Fed. R. Civ. P.  23(g) ................................................................................................17

**Other Authorities**

1 William B. Rubenstein et al.,
    *Newberg on Class Actions* § 3.58 (5th ed. 2011) ...............................................15

# I.     INTRODUCTION

Plaintiffs Alfredo Ramirez, Ramón Santos Castro and Ivan Fernandez ("Plaintiffs") move to certify an ERISA class under Federal Rule 23. Courts in this district, and nationwide, have repeatedly found that "ERISA fiduciary litigation ... presents a paradigmatic example of a (b)(1) class." *Hurtado v. Rainbow Disposal Co., Inc.*, 2019 WL 1771797, at *9 (C.D. Cal. Apr. 22, 2019) (quoting *Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 112 (N.D. Cal. 2008)).[1] Indeed, given the overwhelming weight of authority certifying ERISA classes, many defendants have opted to conserve party and court resources by stipulating or consenting to class certification in similar ERISA cases.[2]

This lawsuit concerns the actions Defendants took with respect to a retirement plan, the AMPAM Employee Stock Ownership Plan (the "ESOP"). Plaintiff allege

---

[1] *See, e.g.*, *Gamino v. KPC Healthcare Holdings, Inc.*, 2021 WL 7081190 (C.D. Cal. Aug. 6, 2021); *Foster v. Adams & Assocs., Inc*, 2019 WL 4305538, at *7 (N.D. Cal., Sept. 11, 2019); *McCluskey v. Trs. of Red Dot Corp. Emp. Stock Ownership Plan & Tr.*, 268 F.R.D. 670 (W.D. Wash. 2010); *Fernandez v. K-M Indus. Holding Co., Inc.*, 2008 WL 2625874 (N.D. Cal. June 26, 2008); *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 604 (3d Cir. 2009); *Rozo v. Principal Life Ins. Co.*, 2017 WL 2292834, at *4 (S.D. Iowa May 12, 2017); *Neil v. Zell*, 275 F.R.D. 256, 267 (N.D. Ill. 2011); *Cunningham v. Wawa, Inc.*, 387 F. Supp. 3d 529 (E.D. Pa. 2019); *Gamache v. Hogue*, 338 F.R.D. 275 (M.D. Ga. 2021); *In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 78 (S.D.N.Y. 2006) (collecting cases).

[2] *See, e.g.*, *Smith v. Greatbanc Tr. Co.*, No. 1:20-cv-02350, ECF 128 (N.D. Ill. Jan. 17, 2023) (non-opposition to class certification); *Douglin v. GreatBanc Tr. Co.*, 115 F. Supp. 3d 404, 409 (S.D.N.Y. 2015) (same); *Baker v. John Hancock Life Ins. Co.*, No. 1:20-cv-10397, ECF 53 at 1 (D. Mass. Feb. 12, 2021) (same); *McGinnes v. FirstGroup Am., Inc.*, No. 1:18-cv-00326, ECF 92 (S.D. Ohio Sept. 8, 2022); *Reetz v. Lowe's Cos., Inc.*, 2020 WL 6528866 (W.D.N.C. Nov. 5, 2020); *Feinberg v. T. Rowe Price Grp., Inc.*, No. 1:17-cv-00427, ECF 77-3 (D. Md. May 1, 2019); *Tracey v. MIT*, 2018 WL 5114167, at *1 (D. Mass. Oct. 19, 2018); *In re GE ERISA Litig.*, 1:17-cv-12123, ECF 138 (D. Mass. Dec. 13, 2019); *Moitoso v. FMR LLC*, No. 1:18-cv-12122, ECF 83 (D. Mass. May 7, 2019); *Velazquez v. Mass. Fin. Srvs. LLC*, No. 1:17-cv-11249, ECF 94 (D. Mass. June 25, 2019); *Pledger v. Reliance Tr. Co.* , No. 1:15-cv-4444, ECF 101 (N.D. Ga. Nov. 7, 2017).

that Defendants violated the Employee Retirement Income Security Act ("ERISA") when they caused the ESOP to purchase AMPAM stock from the former owners (the "Sellers") at an inflated price of $247 million. Classwide evidence shows that the $247 million price the ESOP paid was too high given that the Sellers kept control of AMPAM while retaining undisclosed synthetic equity interest of ▮%. The Sellers then used their continued control over AMPAM to orchestrate a "second liquidity event" whereby the Sellers again sold AMPAM, this time publicly announcing that Buddy Parks would retain a "significant ownership interest" in AMPAM and would remain as the Chairman of its Board.

Because Plaintiffs' claims entirely turn on the evidence of how Defendants acted vis-à-vis the ESOP as a whole, these claims are ideally suited for class treatment. While Defendants resist certification,[3] there is no real dispute that each of the prerequisites of Rule 23(a)'s requirements have been met: (1) there were hundreds of ESOP participants during the class period; (2) the main issues in this case concern the value of AMPAM stock which must be adjudicated in a uniform manner for all ESOP participants, thereby satisfying commonality; (3) Plaintiffs' claims are typical of—indeed identical to—those of the proposed class; and (4) Plaintiffs and their counsel have, and will continue to, vigorously represent the proposed class.

With respect to Rule 23(b), Plaintiffs ERISA claims are "paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class" because their adjudication will be dispositive of the claims of all other ESOP participants. *In*

---

[3] Pursuant to Local Rule 7-3 on October 21, 2024, Plaintiffs' Counsel met and conferred with opposing counsel about this motion. After Plaintiffs' Counsel explained the basis of this motion, Defendants' indicated they opposed the motion. Asked for their reasons for their opposition, Defendants stated only that the motion was premature because Defendants might at some point uncover reasons to challenge the adequacy of the Named Plaintiffs.

1  *re Schering Plough Corp. ERISA Litig.*, 589 F.3d at 604 (collecting ERISA cases
2  certified under Rule 23(b)(1)).

3        For these reasons, the Court should follow the legions of decisions from inside
4  and outside of this Circuit, which certify ERISA claims like those asserted here. *See*
5  n.1 *supra*.

6              **II.  ERISA'S STATUTORY BACKGROUND**

7        To understand why courts routinely certify classes in ERISA cases (*see* n.1
8  *supra*) and why defendants regularly stipulate to certification of ERISA classes (*see*
9  n.2 *supra*), a brief explanation of the nature of ERISA claims is helpful. The claims
10  asserted here are brought pursuant to ERISA's "Civil enforcement" provisions at 29
11  U.S.C. § 1109, § 1132(a)(2) and § 1132(a)(3).

12        **First**, Section 1132(a)(2) provides all plan participants (like Plaintiffs in this
13  case) the right to bring a lawsuit "in a representative capacity on behalf of the plan
14  [(here the ESOP)] as a whole." *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134,
15  142 & n.9 (1985); 29 U.S.C. §§ 1109, 1132(a)(2). In turn, Section 1132(a)(2) refers
16  to Section 1109 for a recitation of the **plan-wide** remedies available under
17  § 1132(a)(2). *See* 29 U.S.C. § 1109 (providing that a fiduciary who violates ERISA
18  shall be liable for "any losses to the plan resulting from each such breach, and to
19  restore to such plan any profits" obtained from the use of plan assets and "other
20  equitable or remedial relief as the court may deem appropriate, including removal of
21  such fiduciary.").

22        Congress established this plan-wide remedial scheme because the "Plan is a
23  trust, with assets owned by a trustee and individual accounts established [solely] for
24  bookkeeping purposes …." Brief of the Secretary of Labor, Elaine L. Chao, as
25  Amicus Curiae in Support of Plaintiffs-Appellees, *Lively v. Dynegy Inc.*, 2007 WL
26  3081709 (7th Cir. Oct. 10, 2007). Indeed, the "Supreme Court has made clear that
27  § 1132(a)[2] does not provide a remedy for individual injuries distinct from plan

injuries." *Harrison v. Envision Mgmt., Holding, Inc. Bd. of Dirs.*, 59 F.4th 1090, 1111 (10th Cir. 2023) (citing *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 256 (2008)). For this reason "the weight of authority suggests that such claims should be thought of as Plan claims, not the [P]laintiff's claims." *Id*. at 1106 (quoting *Hawkins v. Cintas Corp.*, 32 F.4th 625, 635 (6th Cir. 2022) (cleaned up)). Ultimately the plan-wide remedies provided to plan participants under Section 1132(a)(2) of ERISA make these claims uniquely suited for class treatment. 2 Newberg and Rubenstein on Class Actions § 4:12 (6th ed.) (the "trust-like nature of ERISA cases, therefore, generally supports certification whether one focuses on the incompatible standards that might arise for the trustee or upon the indivisible interests of the members of the plan.") (cleaned up).

**Second**, ERISA § 1132(a)(3) is a catch-all remedial provision that provides equitable relief against non-fiduciaries (as opposed to fiduciaries) for any violation of ERISA. *See Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996); *Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. at 248-49 (2000). Section 1132(a)(3) allows plan participants like Plaintiffs to bring claims for restitution or disgorgement, which would require non-fiduciaries to return assets improperly received from their plan. *Harris Tr.*, 530 U.S. at 248-49 (authorizing § 1132(a)(3) equitable claims against non-fiduciaries who are knowing participants in a prohibited transaction). Here, Plaintiffs have asserted § 1132(a)(3) claims as alternative theories of liability in the event the Court finds that the former owners of AMPAM are not fiduciaries. Among other remedies, Plaintiffs seek an order disgorging all ill-gotten profits that the Sellers received from the ESOP Transaction and the 2023 Resale Transaction. The disgorged profits would be returned to the ESOP and would necessarily redound to the benefit of all ESOP participants.

### III. FACTUAL BACKGROUND

A. <u>The Seller Defendants Sought to Sell AMPAM but Keep Control.</u>

AMPAM Parks Mechanical, Inc. ("AMPAM") was a "family-owned" plumbing contractor operating throughout California prior to the sale of AMPAM to the ESOP.[4] In 2018, AMPAM's former owners and Board members Charles Parks, John Parks, and John Mavredakis (collectively the "Sellers") explored "Sale Alternatives" with their investment bank. The Sellers were told that selling to a third party could result in the "[p]ossible loss of control" over the Company and would be "disruptive."[5] Not wanting to lose control of AMPAM, the Sellers and their investment bank identified a solution that perfectly suited their interests: create an ESOP to buy AMPAM for $247 million and structure the transaction so that the Sellers would retain control of AMPAM.[6] This control would then provide the Sellers the ability to "realize additional value in the future through a second liquidity event." *Id*.

In other words, the ESOP sale provided the Sellers with a first liquidity event (i.e., the receipt of $247 million for AMPAM from the 2019 sale). Then, a few years later, the Sellers exercised their ongoing control of the Company to get "additional value" from the Resale transaction, providing the Sellers with a "second liquidity event," when they orchestrated the sale of AMPAM to a new company the Sellers formed with a private equity partner.[7]

---

[4] Ex. 1 (L.A. Business Journal Article "Notable Family-Owned Business").

[5] Ex. 2 (Sellers' investment banking advisor presentation entitled "ESOP Transaction Feasibility Discussion Materials") at BJC_002331.

[6] Ex. 2 at BJC_002321 (explaining that the ESOP Transaction would provide Sellers with "desired outcomes in terms of seller liquidity" but would allow them to "preserve existing management"), at BJC_002331 (noting a benefit of an ESOP Transaction as "certainty of close").

[7] Ex. 3 (News Release entitled "Gemspring Capital Acquires AMPAM").

B. <u>Sellers Appoint Brozen to Approve the Sweetheart Deal.</u>

The Sellers needed a willing partner, who would ostensibly act as an indepedent Trustee for the ESOP, but who would provide "certainty" that the contemplated deal would occur as planned.[8] They found him in Neil Brozen, a serial hired gun who has been repeatedly sued by both the Department of Labor and private plaintiffs for breaching his fiduciary duties to other ESOPs.[9] The Sellers appointed Brozen as the ESOP's trustee to represent the ESOP in the 2019 Transaction, yet simultaneously hamstrung Brozen to prevent him from driving a hard bargain. More specifically, Brozen's trustee engagement contract expressly limited his power and responsibilities to evaluating—**not** negotiating—the price the Sellers would receive from the ESOP in 2019.[10] And while Brozen had the power to negotiate non-financial terms with the Sellers, his contract expressly said he was **not** obligated to negotiate them.[11]

That Brozen would sign off on the ESOP Transaction was a foregone conclusion. Indeed, his contract assumed the ESOP Transaction would be approved and included the fees and terms for Brozen's ongoing engagement as ESOP Trustee **after approval** of the 2019 ESOP Transaction.[12] This provision not only reveals that Defendants knew they could expect Brozen's approval, but it created a financial conflict of interest: Brozen would receive the ongoing annual $40,000 fee if—and only if—he  approved the ESOP Transaction.

---

[8] Ex. 2 at BJC_002331 (stating that the ESOP sale option provides "certainty of close" and further explaining that the "likelihood of closing increases significantly" compare to the other sale options such as selling to a third party).

[9] *Walsh v. Brozen*, No. 22-01869 (N.D. Tex. filed Oct. 29, 2021); *Miller v. Brozen*, No. 23-2540 (D.N.J. filed May 9, 2023); *Coleman v. Brozen*, 20-1358 (N.D. Tex. filed Sept. 27, 2019).

[10] Ex. 5 (Certificate of Trustee) at BJC_001423.

[11] *Id.*

[12] Ex. 5 at BJC_001405.

1    To ease Brozen's mind that he may be sued for allowing the ESOP to overpay
2 for AMPAM, the Board Defendants went so far as to agree to indemnify Brozen for
3 any potential liability "related in any way to the performance of [Brozen's]
4 services."[13] Notably, the Board did not personally provide such indemnification;
5 rather the Board agreed to have AMPAM (which would be owned by the ESOP after
6 2019) do so. In so doing, the Board perversely saddled the ESOP with the obligation
7 to pay for Brozen's legal defense if he was sued for approving the 2019 ESOP sale.[14]

8    C.  Brozen Improperly Allows the ESOP to overpay for AMPAM.

9    In light of Brozen's conflicts of interests and lack of power to negotiate price
10 and other financial terms, it was perhaps inevitable that the ESOP would overpay
11 the Sellers for their AMPAM stock. And in fact, class-wide evidence shows that
12 Brozen overlooked numerous valuation flaws when approving the $247 million price
13 paid by the ESOP. For example, Brozen allowed the ESOP to pay for a controlling
14 interest in AMPAM even though the Sellers retained control.[15]

15    Brozen also failed to account for the lack of marketability of the AMPAM
16 stock which resulted from the substantial restrictions the Sellers put into the bylaws
17 when they sold AMPAM to the ESOP. Section 7.7 required that substantially all
18 AMPAM shares shall be owned by the employees only,[16] which significantly limited
19 the ESOP's ability to sell AMPAM after the ESOP Transaction (unless the Sellers
20 who controlled the Board after the Transaction lifted the restriction). In other words,
21 the Sellers—who retained a majority of the Board—could unilaterally enforce or

22    [13] Ex. 6 (ESOP Trust Agreement) at PLAINTIFFS000010-11.
23    [14] *Id.*
24    [15] Ex. 4 at CW-NB00000006 ███████████████████
25 ███████████     ; Ex. 7 (AMPAM Am. Resp. to Interrog. 2) at  15-17 (showing that
26 Sellers Charles Parks, John Parks, and John Mavredakis retained a majority of the
27 Board post-Transaction).
28    [16] Ex. 8 (AMPAM Amended and Restated Bylaws) at AMPAM_0000635.

waive the marketability restriction.[17] This amendment to the bylaws right before the ESOP sale, should have resulted in material discount for lack of marketability. But, despite these extreme limitations on the transfer of AMPAM stock, ████████████ ████████████████████████████████.[18]

Further, Brozen ████████████████████████████████████████ ████████████████████████████████████████████████████ ███████████████████.[19] Relatedly, the price Brozen agreed to have the ESOP pay failed to reflect the significant dilution of the ESOP's interest in AMPAM caused by the Sellers retaining synthetic equity in AMPAM, which was never disclosed to ESOP participants. More specifically, the Sellers received warrants with such a low strike price that shortly after the Transaction the warrants were "in the money" and resulted in the Sellers immediately owning ██% of the fully diluted common stock outstanding.[20] The synthetic equity worth ██% of the Company was never disclosed in the ESOP's governmental filing nor to ESOP participants.

Finally, Brozen ████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████.[21]

### D. The Sellers Decide to Sell the Company Back to Themselves

By year-end 2022, AMPAM had contributed $42 million into the ESOP, purportedly for the benefit of employees.[22] But about **half** of those contributions (totalling $20.3 million) were spent on interest on the ESOP's loans (many of which

---

[17] *Id.* Ex. 8 at AMPAM_0000637.
[18] Ex. 4 at CW-NB00000062.
[19] Ex. 4 at CW-NB00000074.
[20] Ex. 5 at BJC_001396.
[21] Ex. 4 at CW-NB00000138.
[22] Ex. 9 at PLAINTIFFS000079; Ex. 10 at PLAINTIFFS00011; Ex. 11 at PLAINTIFFS000143; Ex. 12 at PLAINTIFFS000175 (ESOP Forms 5500 2019-2022).

were held by the Sellers themselves), and the other half was used to allocate AMPAM shares to ESOP participants (at an inflated price).[23] Indeed, while AMPAM contributed $42 million to the ESOP from 2019 to 2022, the total value of stock that had been allocated to ESOP participants' accounts as of 2022 was just $2.7 million.[24]

Because the Sellers remained in control of the Board after the 2019 ESOP Transaction, they retained the power to sell the company *again*. And indeed they did. In 2023, Buddy Parks orchestrated the 2023 sale of AMPAM from the ESOP back to himself and a private equity partner (the "2023 Resale Transaction").[25] A news release from the time of the Resale does not even mention the ESOP as a seller and states that Buddy Parks would "maintain a significant ownership stake in the Company" and "remain as Chairman" of AMPAM."[26]

Brozen once again served as the ESOP Trustee who approved the 2023 Resale Transaction.[27] And again Brozen acted as a rubber stamp, disempowered from negotiating the price the ESOP would receive from the Resale and failing in his duty to adequately investigate and consider alternatives to the Resale. Had Brozen acted prudently and solely in the interest of the ESOP participants, he would have never agreed to a trustee engagement where he was unable to negotiate financial terms on behalf of the ESOP.

E.  The Named Plaintiffs and Their Claims on Behalf of the Class

Each of the proposed class representatives are current and former employees of AMPAM who participated in the ESOP and were vested in their ESOP accounts. Plaintiffs' Declarations ¶ 2. Based on the conduct outlined above, Plaintiffs assert

---

[23] *Id.*

[24] Ex. 12 at PLAINTIFFS000192.

[25] Ex. 12 at PLAINTIFFS000198.

[26] Ex. 3.

[27] Ex. 13 (AMPAM Amended Initial Disclosures) at 9.

several claims under 29 U.S.C. §§ 1132(a)(2) and (a)(3) and seek several remedies, including: (1) declarations that Defendants have violated applicable provisions of ERISA and an injunction forbidding them from engaging in further such violations; (2) recovery of losses to the ESOP; (3) disgorgement of profits from the Sellers and other Defendants; (4) other equitable relief including reformation of the 2019 ESOP Transaction and/or rescission of the 2023 Resale Transaction; (5) an accounting for profits; (6) surcharge, and/or imposition of a constructive trust or equitable lien on assets wrongfully held by Defendants); (7) invalidation of the indemnification provision in the Trustee engagement agreement; (8) attorneys' fees and costs pursuant to ERISA § 1132(g); (9) pre-judgment and post-judgment interest; and (10) other relief as the Court deems appropriate. *See* FAC, Prayer for Relief.

Because their ERISA claims apply equally to all plan participants and they seek relief on behalf of the ESOP pursuant to §1132(a)(2) of ERISA, Plaintiffs seek to certify a class consisting of all participants in the AMPAM ESOP on August 6, 2023 or at any time thereafter who vested under the terms of the Plan and those participants' beneficiaries. *See* FAC ¶ 112. Excluded from the Class are Defendants and their immediate families, any fiduciary of the Plan; the officers and directors of AMPAM, or of any entity in which a Defendant has a controlling interest; and legal representatives, successors, and assigns of any such excluded persons. *Id.*

## IV.   ARGUMENT

Certification of a class is required where the party seeking certification satisfies the four prerequisites of Rule 23(a) and at least one of the requirements of Rule 23(b). Fed. R. Civ. P. 23; *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613–14 (1997). An analysis of whether a class can be certified may "entail some overlap with the merits of the plaintiff's underlying claim." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011). However, "[m]erits questions may be considered to the

extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans and Tr. Funds*, 568 U.S. 455, 466 (2013); *see also Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 n.8 (9th Cir. 2011) ("To hold otherwise would turn class certification into a mini-trial.").

The trial court has broad discretion to certify a class within the framework of Rule 23. *See Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 712 (9th Cir. 2010). However, once the elements of Rule 23 are met, a district court does not have discretion to deny class certification. *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010) (rejecting argument that court has discretion to deny class certification because "[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action"). Because this action satisfies all the requirements of Rule 23, it should be certified as a class action. Plaintiffs seek certification of the following class:

> All participants in the AMPAM ESOP on August 6, 2023 or at any time thereafter who vested under the terms of the Plan, and those participants' beneficiaries, excluding Defendants and their immediate family members; any fiduciary of the Plan; the officers and directors of AMPAM or of any entity in which a Defendant has a controlling interest; and legal representatives, successors, and assigns of any such excluded persons.

**A. The Class Meets Each of the Rule 23(a) Criteria**

Rule 23(a) sets forth four requirements applicable to all class actions: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *Amchem Prods., Inc.*, 521 U.S. at 613; Fed. R. Civ. P. 23(a). Each of these requirements are met in this case.

**1. *Numerosity***

A putative class satisfies the numerosity requirement "if the class is so

numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Plaintiffs need not state the exact number of potential class members, nor is there a bright-line minimum threshold requirement." *Tawfilis v. Allergan, Inc.*, 2017 WL 3084275, at *8 (C.D. Cal. June 26, 2017) (citation omitted). "[A]s a general rule, classes of forty or more are considered sufficiently numerous." *Delarosa v. Boiron, Inc.*, 275 F.R.D. 582, 587 (C.D. Cal. 2011) (citation omitted).

Here, the ESOP's governmental filing, signed under penalty of perjury on October 16, 2023, show that the ESOP had approximately 700 participants.[28] This easily meets Rule 23(a)'s numerosity requirement.

### 2. *Commonality*

Commonality requires "questions of law or fact common to the class." Fed R. Civ. P. 23(a)(2). "A common contention need not be one that will be answered, on the merits, in favor of the class." *Alcantar v. Hobart Serv.*, 800 F.3d 1047, 1053 (9th Cir. 2015) (quotations omitted). Rather, a common question is one that is "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. at 350. For purposes of Rule 23(a)(2), "even a single [common] question will do." *Id.* at 359 (quotations omitted).

Here, two central questions in the litigation are common to the entire class. First, whether the ESOP paid more than fair market value for AMPAM in 2019, rendering the ESOP Transaction a non-exempt prohibited transaction.[29] *See Guidry v. Wilmington Tr.*, 333 F.R.D. 324, 329 (D. Del. 2019) ("The class claims here all depend on the question of whether the ESOP paid an inflated price for the [Company] stock."). And second, whether Defendants breached their fiduciary

---

[28] Ex. 12 at PLAINTIFFS000171-72.

[29] Plaintiffs will prove the ESOP overpaid using evidence common to the entire class. *See, e.g.*, Ex. 4 ██████████████████████████████████
█████████████████████████████████████ *see supra* at III.C).

duties in connection with the Resale. Based on strikingly similar claims, this Court certified a class of ESOP participants that challenged defendants' fiduciary actions concerning an ESOP. *Hurtado*, 2019 WL 1771797. In so doing, this Court found commonality satisfied because "the common focus is on the conduct of Defendants ... Plaintiffs' claims do not focus on injuries caused to each individual ESOP Participant, but rather on how the Defendants' conduct affected the pool of assets that make up the ESOP." *Id* at *7 quoting *Kanawi*, 254 F.R.D. at 109 (cleaned up).

Virtually every merits question in this case is common to all ESOP participants, including: whether the Trustee Defendants breached their fiduciary duties in connection with the ESOP's purchase of AMPAM stock in 2019; whether the Trustee Defendants again breached their duties in connection with the 2023 Resale; whether the Board Defendants were ESOP fiduciaries; and if so, whether they breached their duties to monitor the Trustee Defendants during both transactions.[30]

For these reasons, this Court and federal courts nationwide routinely find commonality in ERISA cases that assert fiduciary breach and prohibited transaction claims because "the primary focus … is on the actions of Defendants, not on the actions of the Plaintiffs." *Tibble v. Edison Int'l*, 2009 WL 6764541, at *3 (C.D. Cal. June 30, 2009). *See also Gamino*, 2021 WL 7081190, at *4 ("resolution of this case will turn on several questions common to all class members," including "whether

---

[30] For example, Plaintiffs will prove that the Board Defendants were fiduciaries who breached their duties using evidence common to the entire class. *See, e.g.*, Ex. 14 at PLAINTIFFS000055 (identifying AMPAM as a named fiduciary); *id.* at PLAINTIFFS000024 (the Board has fiduciary powers to appoint the Trustee); Ex. 6 at PLAINTIFFS000011 (the Board has the right to modify or terminate the Trust Agreement); Ex. 8 at AMPAM_0000623 (the Board acted as Named Fiduciary by virtue of the AMPAM bylaws, which permit the Board to exercise all the powers of AMPAM).

numerous individuals and entities breached their respective fiduciary duties [and] whether a prohibited transaction occurred"); *Marshall v. Northrop Grumman Corp.*, 2017 WL 6888281, at *5 (C.D.Cal., 2017) (finding commonality met where ERISA plaintiffs alleged that defendants engaged in a prohibited transaction and needed to determine what equitable remedy should be imposed for all plan participants); *Munro v. University of Southern California*, 2019 WL 7842551, at *4 (C.D. Cal. Dec. 20, 2019) ("The essential question here is whether Defendants breached their fiduciary duties and thereby caused losses to the Plans.") .

### 3. *Typicality*

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Ellis*, 657 F.3d at 984 (citation and internal quotations omitted). Here, Plaintiffs' claims are typical for the same reasons they are common. As many courts acknowledge, the commonality and typicality requirements "tend to merge" as both examine "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Dukes*, 564 U.S. at 349 n.5.

As this Court has found in a similar ESOP case, "Plaintiffs' claims are typical of the proposed class because they focus on the conduct of Defendants as to the ESOP as a whole and not on conduct specific to any particular Plaintiff." *Hurtado*, 2019 WL 1771797, at *8. Here, Plaintiffs, like all class members, are Plan participants who held AMPAM stock in their ESOP accounts. Plaintiffs' Decls ¶ 2. And Plaintiffs' claims—which are the same claims for all proposed class members—arise from the same events: the ESOP's purchase of AMPAM in 2019 and then the

Resale of AMPAM in 2023. "Nothing in the record indicates that Plaintiffs were harmed by Defendants in any way other than by alleged misconduct with respect to the ESOP that affected all ESOP Participants with equal force." *Hurtado*, 2019 WL 1771797, at *8

Given the inherently plan-wide nature of Plaintiffs' claims, courts routinely find typicality satisfied in ERISA cases. *See, e.g.*, *Gamino*, 2021 WL 7081190, at *4 ("Defendants' alleged acts and omissions were not directed to an individual but rather relate to the plan as a whole, such that the claims of Plaintiff and the unnamed class members all arise from the same course of conduct"); *Foster*, 2019 WL 4305538, at *4 ("Plaintiffs' claims here are typical and there are no unique defenses which would preclude certification. Plaintiffs allege that Defendants breached their duties as to every ESOP Plan participant and that they have all been injured in the same way."); *In re Syncor ERISA Litig.*, 227 F.R.D. 338, 344 (C.D. Cal. 2005) (finding typicality in § 502(a)(2) suit involving ESOP where "each member of the purported class suffered injuries as an indirect result of the same breaches of fiduciary duty by the remaining defendants"). Accordingly, the typicality requirement is satisfied.

### 4. *Adequacy*

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." In assessing adequacy of representation, courts ask two questions: "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003). "Only conflicts that are fundamental to the suit and that go to the heart of the litigation prevent a plaintiff from meeting the Rule 23(a)(4) adequacy requirement." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 942 (9th Cir. 2015) (citing 1

William B. Rubenstein et al., *Newberg on Class Actions* § 3.58 (5th ed. 2011)).

The named Plaintiffs in this case and their counsel satisfy the adequacy requirement. For starters, the unique character of ERISA claims demonstrate that Plaintiffs' interests are not antagonistic to those of other class members. As this Court recognized in a similar ESOP case, "the central issue in this case is whether the ESOP has been lawfully administered. On this fundamental issue, Plaintiffs' interest in prevailing on the merits is coextensive with the interests of proposed class members." *Hurtado*, 2019 WL 1771797, at *8; *accord*, *Barnes v. AT & T Pension Benefit Plan-Nonbargained Program*, 270 F.R.D. 488, 495 (N.D. Cal. 2010) (adequacy satisfied where plaintiffs' interests were "completely aligned with the class regarding the central issue" in the case).

Further, Plaintiffs will represent the interests of the class members as they would their own. Castro Decl. ¶ 8;   Fernandez Decl. ¶ 8; Ramirez Decl. ¶ 8; Exs. 15-16 (English translations of Castro and Ramirez declarations). Plaintiffs will vigorously prosecute the class claims and have been actively engaged in the litigation. Castro Decl. ¶¶ 5-7; Fernandez Decl. ¶¶ 5-7 Ramirez Decl. ¶¶ 5-7. Plaintiffs understand the allegations in the complaints, communicate regularly with counsel, have produced documents related to the case, and all have attested they are willing to participate in discovery. Castro Decl. ¶¶ 5-7; Fernandez Decl. ¶¶ 5-7; Ramirez Decl. ¶¶ 5-7. Plaintiffs are prepared to prosecute this litigation to its conclusion and are willing to take on any additional responsibilities required of them as class representatives. "Courts have approved class representatives in other [ERISA] class actions based on similar evidence." *Urakhchin v. Allianz Asset Mgmt. of Am. L.P.*, 2017 WL 2655678, at *6 (C.D. Cal. June 15, 2017) (citing *In re Northrop Grumman Corp. ERISA Litig.*, 2011 WL 3505264, at *14–15 (C.D. Cal. Mar. 29, 2011); *Tibble*, 2009 WL 6764541, at *6.

Finally, Cohen Milstein Sellers & Toll PLLC and Shaun Martin are more than

adequate based on the relevant factors in Rule 23(g). Cohen Milstein and Mr. Martin, are experienced in complex ERISA class actions and have been appointed as class counsel dozens of times in other ERISA lawsuits. Yau Decl. ¶¶ 18-19; Martin Decl. ¶¶ 4-5. Law360 recognized Michelle Yau as one of the top five ERISA/Benefits lawyers in the United States in 2024 and 2021, and recognized Cohen Milstein's Employee Benefits group as one of the Benefits Groups of the Year in 2022 and 2021. Yau Decl. ¶¶ 7-8. Cohen Milstein and Mr. Martin have also invested significant time and effort to investigating and prosecuting these claims and are committed to vigorously representing the class, utilizing all necessary resources to achieve a successful resolution. Yau Decl. ¶¶ 21-25; Martin Decl. ¶ 7. Given their track record in this case and previous cases, Cohen Milstein and Mr. Martin easily meet the requirements of Rule 23(a)(4) and Rule 23(g).

## B. Class Certification Is Appropriate Under Rule 23(b)

In addition to meeting the requirements of Rule 23(a), Plaintiffs also must "show that the action is maintainable under" at least one of the subsections of 23(b). Amchem Prods., 521 U.S. at 614. "Most ERISA class action cases are certified under Rule 23(b)(1)." Kanawi, 254 F.R.D. at 111. This is because "ERISA [fiduciary] litigation ... presents a paradigmatic example of a (b)(1) class." Hurtado, 2019 WL 1771797, at *9 (quotation omitted). See also Colesberry v. Ruiz Food Prods., Inc., 2006 WL 1875444, at *5 (E.D. Cal. June 30, 2006) ("The propriety of Rule 23(b)(1) certification in this action is confirmed by the vast number of cases in which courts have certified ERISA class actions pursuant either to Rule 23(b)(1)(A) or Rule 23(b)(1)(B), or both.") (collecting cases).[31]

---

[31] Defendants may argue that class certification is improper under Rule 23(b)(1) because Plaintiffs seek monetary damages. However, most of the relief that Plaintiffs seek is equitable in nature, see supra at III.E, and the Ninth Circuit has recognized that ERISA cases seeking both monetary damages and equitable relief are appropriate for certification under Rule 23(b)(1). See *Moyle v. Liberty Mut. Ret. Ben. Plan*, 823 F.3d 948, 965 (9th Cir. 2016). "Other courts have certified 23(b)(1) classes in similar cases where the plaintiffs sought monetary relief[.]"

### 1. *Individual Adjudications Would Establish Incompatible Standards of Conduct for Defendants*

Certification under Rule 23(b)(1)(A) is appropriate where a party is either "obliged by law to treat the members of the class alike" or to do so "as a matter of practical necessity." *Amchem Prods.*, 521 U.S. at 614. That is exactly the situation presented here. The fiduciary duties imposed by ERISA are "duties with respect to a plan" that are intended to protect the "interest of the participants and beneficiaries" collectively. *See* 29 U.S.C. § 1104(a)(1).

This litigation fits squarely within Rule 23(b)(1)(A) because "separate lawsuits have the potential for conflicting decisions that would make uniform administration of the ESOP impossible." *Hurtado*, 2019 WL 1771797, at *10 (internal brackets omitted). For example, Plaintiffs here could obtain a declaration that the ESOP's purchase of AMPAM constituted a prohibited transaction, while a separate suit could theoretically result in a declaratory judgment that the 2019 ESOP Transaction was not prohibited. The risk of conflicting judgments "would be inconsistent with federal law which requires that pension plan terms and conditions be applied in a manner consistent to all participants." *Norris v. Mazzola*, 2017 WL 6493091, at *5 (N.D. Cal. Dec. 19, 2017) (certifying ERISA breach of fiduciary action under Rule 23(b)(1)(A)). *See also Cryer v. Franklin Templeton Res., Inc.*, 2017 WL 4023149, at *6 (N.D. Cal. July 26, 2017) ("Certification under Rule 23(b)(1) is particularly appropriate in cases involving ERISA fiduciaries who must apply uniform standards to a large number of beneficiaries.").

---

*Urakhchin*, 2017 WL 2655678, at *8 (citing *In re Northrop Grumman*, 2011 WL 3505264, at *11, *18; *Kanawi*, 254 F.R.D. at 109, 111); accord *Foster*, 2019 WL 4305538, at *2 (certifying class where plaintiffs sought "monetary damages relating to ESOP losses" in addition to declaratory, injunctive, and equitable relief); *McCluskey*, 268 F.R.D. at 677 (certifying (b)(1) class in ESOP case despite defendant's argument that action sought "primarily monetary damages").

### 2. *Individual Adjudications Would Be Dispositive of the Interests of Other Class Members as a Practical Matter*

Certification under Rule 23(b)(1)(B) is appropriate where "the shared character of rights claimed or relief awarded entails that any individual adjudication by a class member disposes of, or substantially affects, the interests of absent class members." *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 834 (1999). "Classic examples" of Rule 23(b)(1)(B) classes include "actions charging a breach of trust" which "similarly affect[s] the members of a large class of beneficiaries, requiring an accounting or similar procedure to restore the subject of the trust." *Id.* at 833-34 (internal quotation marks omitted). This is just such a case.

Here, similar to all ERISA fiduciary claims brought on behalf of a plan, "[i]f one plaintiff succeeds in obtaining a judgment that requires the Defendants to pay damages to the Plan, the benefit would affect everyone who has a right to disbursements from the Plan." *Colesberry*, 2006 WL 1875444, at *4; *see also In re Syncor ERISA Litig.*, 227 F.R.D. at 346 (noting that any monetary relief "would inure to the Plan as a whole" and "if one plaintiff forces the Defendants to pay damages to the Plan, the benefit would affect everyone who has a right to disbursements from the Plan"); *Hurtado*, 2019 WL 1771797, at *10 ("[T]he shared character of rights claimed or relief awarded entails that any individual adjudication by a class member disposes of, or substantially affects, the interests of absent class members.") (citation omitted).

Certification under Rule 23(b)(1)(B) is also appropriate because the merits of all claims asserted in this case turn on the conduct of Defendants; indeed, neither Plaintiffs nor any plan participants were personally involved in either of the challenged transaction. However, the Court's determination about the legality of the two those transactions will affect all plan participants who held AMPAM stock in their ESOP account in the precise same way. *See Foster*, 2019 WL 4305538, at *8

("The allegations here concern a single ESOP transaction and Defendants' actions. Determination regarding the legality of that transaction and Defendants' actions will affect the rights of all the other ESOP participants. Thus, certification under 23(b)(1)(B) is also appropriate.").

Ultimately, "because any decision regarding whether the defendants breached their fiduciary duties would necessarily affect the interests of other participants, courts regularly certify ERISA cases under Rule 23(b)(1)(B)." Newberg § 4:21 (5th ed.) (cleaned up). *See also Hurtado*, 2019 WL 1771797 at *10-11 (certifying a class of ESOP participants under Rule 23(b)(1)(B) given that a "judgment for or against one ESOP Participant that unwinds the Republic deal [sale of ESOP's company stock] … or otherwise rules on the ESOP's entitlement to certain funds or assets plainly affects the rights of all ESOP Participants and their beneficiaries."); *Gamino*, 2021 WL 7081190, at *6 ("given the shared character of the rights invoked under the ESOP and the relief sought on behalf of the ESOP, a 'judgment for or against one ESOP Participant ... plainly affects the rights of all ESOP Participants.'") (quoting *In re Northrop Grumman Corp. ERISA Litig.*, 2011 WL 3505264, at *11).

## C. Defendants did not and cannot identify any facts or evidence that shows Plaintiffs fail to satisfy any of the Rule 23's requirements.

Faced with the overwhelming weight of authority certifying ERISA classes under Rule 23(b)(1), many defendants in similar cases have stipulated or consented to class certification to conserve the Court's time and resources. *See* n.2, *supra*. Indeed, counsel for the AMPAM Defendants have stipulated twice before that ERISA fiduciary claims meet the requirements of commonality and typicality, and the Rule 23(b)(1) standards. Ex. 17, 18 (class stipulations from *Reetz v. Lowe's Cos.*, and *Jones v. DISH Network Corp.*). In other words, AMPAM's counsel has previously conceded:

> There are **common** issues respecting the Class [all plan participants] Claims related to (among other things): (a) which Defendants served as Plan fiduciaries; (b) whether the Plan's fiduciaries breached their fiduciary duties in violation of 29 U.S.C. § 1104; (c) whether Defendants are subject to co-fiduciary liability under 29 U.S.C. § 1105(a); (d) whether [one defendant] adequately monitored the [other fiduciary defendant]; and (e) the relief, if any, that may be appropriate in this case.
>
> Plaintiff is **typical** of other class members with respect to the Class Claims, as he participated in the Plan during the class period and was treated consistently with other class members.
>
> Rule **23(b)(1)(A)** class certification is appropriate … because prosecuting separate actions against Defendants with respect to the common issues identified in Paragraph 6 would create a risk of inconsistent or varying adjudications relating to those issues with respect to individual class members that would establish incompatible standards of conduct for Defendants.
>
> Rule **23(b)(1)(B)** is also appropriate … because adjudications with respect to the common issues identified in Paragraph 6 as to individual class members, as a practical matter, would be dispositive of the interests of the other persons not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests relating to those issues.

Ex. 18 (Stipulation for Class Certification in *Reetz v. Lowes*) ¶¶ 6-7, 9-12 (emphasis) (cleaned up). Furthermore, Plaintiffs served an interrogatory on the AMPAM Defendants that asked:

> If You contend that any of the requirements of Rule 23(a) or 23(b) of the Federal Rules of Civil Procedure are not met for the proposed Class in this action, set forth the basis of Your contention by Identifying [among other things] facts, Documents, and evidence that support Your contention as to each requirement of Rule 23(a) or 23(b) that You contend is not met.

Ex. 7 (AMPAM's Am. Interrog. Resps. at 21-22). In response to this Interrgatory, the AMPAM Defendants did not identify a single document, fact, or piece of evidence that undermines certification. Instead they stated, "Defendants will not

respond to this Interrogatory at this time, which seeks an advanced opposition to Plaintiffs' motion for class certification prior to its filing." *Id.* Similarly, at a meet and confer in connection with this motion on October 21, 2024, Plaintiffs asked Defendants to identify on what basis they opposed class certification, and Defendants stated only that the motion was premature, suggesting that at some future date they may have reason to challenge Plaintiffs' showing on the adequacy prong of Rule 23. Wheeler Decl. ¶ 7. Defendants' inability to identify any basis to oppose this motion illustrates that certification is appropriate.

## V.    CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion for class certification.

DATED:       October 25, 2024          Respectfully Submitted,

                              By:    *s/ Michelle C. Yau*
                                     Michelle C. Yau (DCBA #980449, MABA
                                     #657236, admitted *pro hac vice*)
                                     *myau@cohenmilstein.com*
                                     Ryan A. Wheeler (Cal. Bar No. 331642)
                                     *rwheeler@cohenmilstein.com*
                                     Allison C. Pienta (DCBA #494372,
                                     admitted *pro hac vice*)
                                     *apienta@cohenmilstein.com*
                                     COHEN MILSTEIN SELLERS
                                       & TOLL PLLC
                                     1100 New York Ave. NW, Suite 500
                                     Washington, DC 20005
                                     Tel.: (202) 408-4600
                                     Fax: (202) 408-4699

                                     Eleanor Frisch (Cal. Bar No. 304408)
                                     *efrisch@cohenmilstein.com*
                                     Jacob T. Schutz (MNBA #0395648,
                                     admitted *pro hac vice*)
                                     *jschutz@cohenmilstein.com*
                                     COHEN MILSTEIN SELLERS
                                       & TOLL PLLC
                                     400 South 4th Street # 401-27
                                     Minneapolis, MN 55415
                                     Tel.: (202) 408-4600
                                     Fax: (202) 408-4699

                                     Shaun P. Martin (Cal. Bar No. 158480)
                                     *smartin@sandiego.edu*
                                     5998 Alcala Park, Warren Hall
                                     San Diego, CA 92110
                                     Telephone: (619) 260-2347
                                     Facsimile: (619) 260-7933

                                     *Counsel for Plaintiffs and the Proposed
                                     Class*

### L.R. 11-6.2 Certificate of Compliance

The undersigned, counsel of record for Plaintiffs Alfredo Ramirez, Ramón Santos Castro, and Ivan Fernandez, certifies that this brief contains 6,971 words, which complies with the word limit of L.R. 11-6.1.

Dated: <u>October 25, 2024</u>        <u>*/s/ Ryan Wheeler*            </u>

        Ryan Wheeler