GROOM LAW GROUP, CHARTERED
Lars C. Golumbic (admitted *pro hac vice*)
lgolumbic@groom.com
Sarah M. Adams (admitted *pro hac vice*)
sadams@groom.com
Shaun A. Gates (admitted *pro hac vice*)
sgates@groom.com
Lawrence A. Brett (admitted *pro hac vice*)
lbrett@groom.com
1701 Pennsylvania Ave. NW
Washington, DC 20006
Tel: (202) 857-0620; Fax: (202) 659-4503

*Attorneys for Defendants AMPAM Parks Mechanical, Inc., Charles E. Parks III, John D. Parks, John G. Mavredakis, Kushal B. Kapadia, the AMPAM Board of Directors, James C. Wright III, Kevin Dow, James Ellis, Steve Grosslight, and Mike Matkins (collectively, the "AMPAM Defendants")*

[additional counsel listed below]

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Alfredo Ramirez, et al.,<br><br>            Plaintiffs,<br><br>      v.<br><br>AMPAM Parks Mechanical, Inc., et al.,<br><br>            Defendants. | No. 5:24-CV-01038<br><br>**DEFENDANTS' JOINT OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION (DKT. 84)**<br><br>**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**<br><br>Date: March 6, 2025<br>Time: 10:30 AM<br>Judge: Hon. Kenly Kiya Kato<br>Courtroom: 3 |

# TABLE OF CONTENTS

I.    Introduction ........................................................................................ 1

II.   Background ......................................................................................... 1

III.  Legal Standard ................................................................................... 3

IV.   Argument ............................................................................................ 4

      A.    Plaintiffs Fail to Satisfy Rule 23(a) ........................................ 4

            1.    Plaintiffs Are Inadequate Class Representatives ............ 4

                  a.    Plaintiffs Have Conflicts With Other Class Members—
                        Including Each Other ............................................ 5

                  b.    Plaintiffs and Their Counsel Will Not Prosecute the Action
                        Vigorously on Behalf of the Class ........................ 8

                        i.     Plaintiffs Do Not Understand Their Duties as Class
                               Representatives ................................................. 9

                        ii.    Plaintiffs Are Alarmingly Unfamiliar With Their
                               Case ................................................................ 11

                        iii.   Plaintiffs Cannot or Will Not Protect the Interests of the
                               Class Against the Possibly Competing Interests of the
                               Attorneys ......................................................... 15

                  c.    ██████████████████████████████
                        █████████ ............................................ 19

            2.    Plaintiffs Fail to Satisfy the Commonality and Typicality
                  Requirements .................................................................... 22

      B.    Plaintiffs Fail to Satisfy Rule 23(b) ...................................... 23

V.    Conclusion ....................................................................................... 24

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A Aventura Chiropractic Care Ctr., Inc. v. BB Franchising LLC*,
    1:15-cv-20137, 2015 WL 11051056 (S.D. Fla. Aug. 26, 2015)........................16

*Allied Orthopedic Appliances, Inc. v. Tyco Healthcare Group L.P.*,
    247 F.R.D. 156 (C.D. Cal. 2007) .............................................................5

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)..............................................................................3

*Berger v. Home Depot USA Inc.*,
    8:10-cv-00678-SJO, 2011 WL 13224881 (C.D. Cal. March 18, 2011) .............23

*Bodner v. Oreck Direct, LLC*,
    C 06-4756 MHP, 2007 WL 1223777 (N.D. Cal. Apr. 25, 2007) ......................19

*Burkhalter Travel Agency v. MacFarms Int'l, Inc.*,
    141 F.R.D. 144 (N.D. Cal. 1991)..............................................................15

*CE Design Ltd. v. King Architectural Metals, Inc.*,
    637 F.3d 721 (7th Cir. 2011) ..................................................................19

*Corley v. Entergy Corp.*,
    222 F.R.D. 316 (E.D. Tex. 2004) .............................................................23

*Ellis v. Costco Wholesale Corp.*,
    657 F.3d 970 (9th Cir. 2011) ............................................................. 3, 4, 8

*Gen. Tel. Co. of the Sw. v. Falcon*,
    457 U.S. 147 (1982)..............................................................................22

*Hall v. Nat'l Recovery Sys., Inc.*,
    96:132-CIV-T-17(C), 1996 WL 467512 (M.D. Fla. Aug. 9, 1996) .....................9

*Hanon v. Dataproducts Corp.*,
    976 F.2d 497 (9th Cir. 1992) ..................................................................23

*Jackson v. Johnson*,
    4:08-cv-02271, 2009 WL 10711327 (E.D. Ark. July 28, 2009)..........................23

*Kaplan v. Pomerantz*,
    132 F.R.D. 504 (N.D. Ill. 1990)....................................................... 19, 22

*Keegan v. Am. Honda Motor Co.*,
    284 F.R.D. 504 (C.D. Cal. 2012)..........................................................19

*Kenney v. Landis Fin. Grp., Inc.*,
    349 F. Supp. 939 (N.D. Iowa 1972)....................................................23

*May v. Gladstone*,
    562 F. Supp. 3d 709 (C.D. Cal. 2021) ...................................................9

*Navarro v. ExxonMobil Corp.*,
    17-cv-2477-DSF, 2022 WL 22248790 (C.D. Cal. July 5, 2022) ............... 15, 17

*Nghiem v. Dick's Sporting Goods, Inc.*,
    318 F.R.D. 375 (C.D. Cal. 2016)........................................................9, 11

*Ogden v. AmeriCredit Corp.*,
    225 F.R.D. 529 (N.D. Tex. 2005) .................................................... 14, 15

*Omni Home Fin., Inc. v. Hartford Life and Annuity Ins. Co.*,
    06-cv-0921, 2008 WL 1925248 (S.D. Cal. Apr. 29, 2008) ..............................2

*Passman v. Peloton Interactive, Inc.*,
    671 F. Supp. 3d 417 (S.D.N.Y. 2023) ....................................................11

*Richie v. Blue Shield of Cal.*,
    C-13-2693, 2014 WL 6982943 (N.D. Cal. Dec. 9, 2014) ...................................11

*Sanchez v. Wal Mart Stores, Inc.*,
    2:06-CV-02573, 2009 WL 1514435 (E.D. Cal. May 28, 2009)................ 8, 9, 18

*Schumacher v. Inslee*,
    526 F. Supp. 3d 878 (W.D. Wash. 2021)....................................................5

*Spano v. The Boeing Co.*,
    633 F.3d 574 (7th Cir. 2011) .........................................................6, 24

iii

*Wal Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ................................................................. 1, 4, 22

*Zimmerman v. Cedars-Sinai Med. Ctr.*,
    5:23-cv-01124-JLS-SP, 2024 WL 5274600 (C.D. Cal. Dec. 18, 2024) ...... *passim*

**Statutes**

29 U.S.C. § 1132(e)(2) ................................................................17

**Rules**

Fed. R. Civ. P. 23 ............................................................... *passim*

## I.    Introduction

It is now apparent why Plaintiffs were in a rush to declare class discovery and briefing closed, *see* Dkt. 93:  discovery has revealed they cannot satisfy Rule 23's "rigorous" standard.  *See Wal Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011) ("*Dukes*").  Crucially, Plaintiffs Ramirez and Santos (the "Named Plaintiffs") are inadequate class representatives.  In addition to conflicts of interest both between the two of them and with others, their utter lack of knowledge regarding their claims and demonstrated unwillingness or inability to act as a check on their counsel compels denial of Plaintiffs' Motion for Class Certification, Dkt. 84.  Beyond that, Ramirez's lack of credibility and Plaintiffs' failure to satisfy the remaining requirements of Rule 23 confirm that class certification should be denied.

## II.    Background

In their original Complaint, Dkt. 1, Plaintiffs brought claims concerning a 2019 transaction in which the AMPAM Parks Mechanical, Inc. ("AMPAM") Employee Stock Ownership Plan (the "ESOP" or "Plan") purchased 100 percent of AMPAM's stock (the "2019 Transaction").  *Id*.  Plaintiffs alleged that Defendants caused the ESOP to pay more than fair market value for the shares, in violation of ERISA.  *Id*.  Plaintiffs brought suit on behalf of the following putative class:

> All participants in the AMPAM ESOP on or after December 28, 2017, and those participants' beneficiaries, excluding [certain individuals].

*Id*. ¶ 112.  This putative class definition did not change when Plaintiffs filed their Amended Complaint adding fiduciary breach and prohibited transaction claims regarding the 2023 transaction in which the ESOP sold its AMPAM stock and terminated the ESOP (the "2023 Transaction").  Dkt. 68 ¶ 153 ("Am. Compl.").  Plaintiffs seek to rescind the 2023 Transaction.  *Id*. ¶ 237.E (seeking an order, among other things, "rescinding … the 2023 Resale Transaction"); *see also, e.g.,*

*Omni Home Fin., Inc. v. Hartford Life and Annuity Ins. Co.*, 06-cv-0921, 2008 WL 1925248, at \*6 n.8 (S.D. Cal. Apr. 29, 2008) ("ERISA provides for rescission of a prohibited transaction by a fiduciary.").

By encompassing all participants "on or after December 28, 2017," the putative class under Plaintiffs' original definition swept in all ESOP participants from before the ESOP purchased the AMPAM stock until the time it sold the stock upon its termination in 2023.  This class consists of at least the following subgroups:

1.    Participants (like Ramirez, *see infra* § IV(A)(1)(a)) whose accounts were allocated shares of AMPAM stock at some point following the 2019 Transaction and who still held stock at the time of the 2023 Transaction ("Group 1").  These participants were affected by both the 2019 Transaction and the 2023 Transaction.

2.    Participants whose accounts were allocated shares of AMPAM stock at some point following the 2019 Transaction but who left AMPAM without satisfying the ESOP's 3-year vesting requirement, thereby forfeiting their entire ESOP benefit ("Group 2").  Because they ultimately were not entitled to any benefit under the ESOP, these participants were not affected by either the 2019 Transaction or the 2023 Transaction.

3.    Participants whose accounts were allocated shares of AMPAM stock at some point following the 2019 Transaction, who satisfied the ESOP's 3-year vesting requirement, but then left employment and withdrew their assets from the ESOP prior to the 2023 Transaction ("Group 3").  These participants were affected by the 2019 Transaction but not the 2023 Transaction.  ***No named plaintiff falls into this category***.

4.    Participants (like Santos, *see infra* § IV(A)(1)(a)) whose accounts were allocated shares of AMPAM stock at some point following the 2019

Transaction but who, at the time of the 2023 Transaction and ESOP termination, had not satisfied the ESOP's 3-year vesting requirement ("Group 4").  Pursuant to the terms of the ESOP Plan Document, all participants were automatically vested at the time of the ESOP termination, even if they had not satisfied the plan's vesting requirements.  *See* Decl. of Sarah M. Adams ("Adams Decl."), Ex. A at AMPAM_0001475.  These participants were affected by both the 2019 Transaction and the 2023 Transaction.

Now, apparently recognizing that the class they pled will not satisfy Rule 23, Plaintiffs in their Memorandum of Points and Authorities in Support of their Motion for Class Certification, Dkt. 83-1 ("Mot.") lop off the first six and a half years or so from the class period:

> All participants in the AMPAM ESOP **on August 6, 2023 or at any time thereafter** who vested under the terms of the Plan, and those participants' beneficiaries, excluding [certain individuals].

Mot. at 11 (emphasis added).  Their new class period, specifically excluding those participants in Group 2 despite their allegedly being injured in the 2019 Transaction, appears designed to avoid the intra-class differences those participants presented.  But intra-class conflicts remain, along with numerous other failures to satisfy Rule 23, thereby compelling denial of Plaintiffs' Motion.

## III.   Legal Standard

To certify a class, Plaintiffs must satisfy all the requirements in Rule 23(a), plus one subsection of Rule 23(b).  Fed. R. Civ. P. 23; *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613-14 (1997).

Rule 23(a)'s requirements are numerosity, commonality, typicality, and adequacy of representation.  Fed. R. Civ. P. 23(a); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 980 (9th Cir. 2011).  Rather than rely on pleadings, plaintiffs must "affirmatively demonstrate … compliance with the Rule—that is, [they] must be

prepared to prove" that the requirements of Rule 23 are satisfied. *Dukes*, 564 U.S. at 350 (emphasis omitted).

If Rule 23(a) is satisfied, a class action may be maintained, as relevant here, if denying class certification "would create a risk" of:

> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>
> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests[.]

Fed. R. Civ. P. 23(b)(1); *see also* Mot. at 17-20 (seeking certification only under Rule 23(b)(1)).

## IV. Argument

### A. Plaintiffs Fail to Satisfy Rule 23(a).

Because Plaintiffs' failure to satisfy Rule 23(a)(4)'s adequacy requirement is the most apparent, and because that analysis partially overlaps with the commonality and typicality requirements, Defendants address adequacy first.[1]

#### 1. Plaintiffs Are Inadequate Class Representatives.

"To determine whether named plaintiffs will adequately represent a class, courts must resolve two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Ellis*, 657 F.3d at 980 (internal quotation marks omitted). Here, the Named Plaintiffs fail on both questions.

---

[1] Defendants do not dispute that Plaintiffs' proposed class is sufficiently numerous to satisfy Rule 23(a)(1).

### a.    Plaintiffs Have Conflicts With Other Class Members—Including Each Other.

This Court has held that, where named plaintiffs have fundamental conflicts with other class members, they are inadequate. *Allied Orthopedic Appliances, Inc. v. Tyco Healthcare Group L.P.*, 247 F.R.D. 156 (C.D. Cal. 2007). "A conflict is 'fundamental' when it goes to the specific issues in controversy, or where … some plaintiffs claim to have been harmed by the same conduct that benefited other members of the class[.]" *Id*. at 177-78 (citation omitted). The Court concluded that certain named plaintiffs' interests were "actually or potentially antagonistic to, or in conflict with, the interests and objectives of other class members." *Id*.; *see also Schumacher v. Inslee*, 526 F. Supp. 3d 878, 883 (W.D. Wash. 2021) (finding inadequacy where named plaintiffs and absent class members "have potentially divergent aims").

So too here. Not only do the Named Plaintiffs have divergent aims from absent class members (as explained *infra*), but there is direct conflict between Plaintiffs Ramirez and Santos themselves. This is because Plaintiffs complain that Defendants violated ERISA through two separate *and opposite* transactions: the 2019 Transaction in which the ESOP purchased AMPAM stock (allegedly at too high a price), and the 2023 Transaction, in which the ESOP sold AMPAM stock (allegedly at too low a price).

Because Plaintiffs complain about two distinct transactions several years apart, different putative class members were affected differently depending on the timing of their participation in the ESOP. *See* Adams Decl., Exs. B-G (2019-2023 ESOP participant data). Plaintiff Ramirez, for example, was already working at AMPAM when the ESOP was formed. *See* Adams Decl., Ex. B at 20 (showing May 2018 hire date). He became a participant at the earliest possible date upon satisfying the Plan's service requirements. *Id*. (showing plan participation starting

July 2019).  Ramirez continued working at AMPAM and satisfied the ESOP's
three-year vesting requirement prior to the 2023 Transaction.  *See* Adams Decl.,
Ex. F at 8 (showing 4 years of vesting); *see also supra* § II (describing Group 1).

Plaintiff Santos, on the other hand, did not work at AMPAM long enough to
vest under the Plan's normal rules.  *See* Adams Decl., Ex. F at 9 (showing October
2022 hire date); Adams Decl., Ex. H at AMPAM_001819 (showing November
2023 termination date); *see supra*, § II (describing Group 4).  Because he left
without 3 years of service, Santos would have been entitled to *nothing whatsoever*
had the ESOP remained in place.  *See* Adams Decl., Ex. E at 16 (showing vested
service of 0); Dkt. 94-4 at § 10(a).  However, the ESOP's plan document provided
that participants' accounts would immediately vest upon plan termination.  *See*
Adams Decl., Ex. A at AMPAM_0001475.  On this basis, Santos did receive a
payout from the ESOP.  *See* Adams Decl., Ex. F at 9.  Thus, *but for* the very
decision Plaintiffs claim was illegal—the 2023 Transaction terminating the ESOP
and selling its shares of AMPAM—Santos would have had nothing.  Rather than
being *harmed* by the ESOP termination about which Plaintiffs complain, Santos
*benefited*.  Such class conflicts warrant denial of class certification.  *See Spano v.
The Boeing Co.*, 633 F.3d 574, 588 (7th Cir. 2011) ("A claim … is not common if
the alleged conduct harmed some participants and helped others[.]").

The Amended Complaint's prayer to "rescind[] the … 2023 [] Transaction,"
*see* Am. Compl. ¶ 237.E, highlights this conflict.  *Plaintiff Ramirez* (like other
Group 1 participants) has an incentive to pursue this remedy:  were the ESOP
reinstated, Ramirez and participants like him would resume holding AMPAM
stock.  That stock could continue to grow, and they would be awarded more stock
under the terms of the Plan in accordance with their service.  But rescinding that
transaction would leave *Plaintiff Santos* (and other Group 4 participants) with
nothing.  In deciding which form of equitable relief to pursue, Plaintiffs' counsel

6

will be forced to decide whether to seek rescission (helping Ramirez but harming Santos) or to pull punches on Ramirez's case to avoid harming Santos.

Faced with this conflict, Plaintiffs may argue that—despite including rescission in their prayer for relief—the 2023 Transaction should not actually be rescinded, just reformed to reflect the stock's true fair market value, which would benefit both Named Plaintiffs. It is not that simple—rescinding the 2023 Transaction could be *more* financially beneficial to Ramirez than reforming it. The conflict is not resolved by pursuing a remedy that benefits both Plaintiffs if one Plaintiff would have been better off pursuing a different remedy.

Beyond that, neither Named Plaintiff is adequate to represent the absent participants described in Group 3, *supra*, who were affected by only the 2019 Transaction and not the 2023 Transaction. Ramirez and Santos' interests are in direct conflict with the Group 3 participants, who have no one in this action to represent them. The Group 3 participants were allegedly harmed by the 2019 Transaction in the same way all the other putative class members were allegedly harmed. But Plaintiffs amputate them from the class because they create conflicts with the class members who were affected by the 2023 Transaction. Plaintiffs cannot simultaneously argue that the class should be certified because all Plan members would have their rights adjudicated by the decision, Mot. at 19-20, while carving out those who present conflicting interests.

This conflict, which seems to be driving Plaintiffs' sudden change to the class period, is inherent in Plaintiffs' pleading. Plaintiffs have specifically claimed that the ESOP paid too much in the 2019 Transaction because "[t]he ESOP obtained *little control* over a company (AMPAM) *that was severely limited in terms of marketability to third party buyers*[.]" Am. Compl. ¶ 22 (emphasis added). Participants in Group 3 have every incentive to prove this was true and that AMPAM was worth less than what the ESOP paid for it. But if, as Plaintiffs

1    allege, the ESOP did not gain a controlling interest in AMPAM, then it did not

2    have a controlling interest to sell, and the ESOP should have received *less* than it

3    did when the buyers paid it for a controlling interest.

4         Because Plaintiffs complain about two transactions that are opposite in

5    nature, any argument that the ESOP *overpaid* for the stock in the 2019 Transaction

6    would also mean that the ESOP received *too much* when it sold the stock.  That is

7    true of any valuation argument Plaintiffs may make—the same valuation principle

8    applied to both the purchase and then the later sale will have opposite effects.  *See*

9    *also* Am. Compl. ¶ 150 (claiming, despite the previous allegation regarding lack of

10   marketability, that, had the trustee investigated alternative buyers, "the

11   marketplace would have produced higher offers and financing alternatives").  Now

12   that the pleading stage has passed, Plaintiffs will have to grapple with which of

13   their conflicting theories to pursue.  To protect the interests of absent participants,

14   they must not be permitted to gerrymander their class to dodge the conflicts.

> ### b.    Plaintiffs and Their Counsel Will Not Prosecute the Action Vigorously on Behalf of the Class.

17        The Court must next examine whether "the named plaintiffs and their

18   counsel [will] prosecute the action vigorously on behalf of the class[.]"  *Ellis*, 657

19   F.3d at 985.  "[T]he Court must ensure that the litigation is brought by a named

20   Plaintiff who understands and controls the major decisions of the case.  Class

21   counsel may not act on behalf of an essentially unknowledgeable client, for to

22   proceed with that plaintiff as class representative would risk a denial of due

23   process to the absent class members."  *Sanchez v. Wal Mart Stores, Inc.*, Civ. 2:06-

24   CV-02573, 2009 WL 1514435, at *3 (E.D. Cal. May 28, 2009) (internal quotation

25   marks omitted) (denying class certification).

26        As in *Sanchez*, "[t]he record here demonstrates that Plaintiff's counsel, and

27   not Plaintiff, is the driving force behind this action."  *Id.* at *3.  Both Plaintiffs lack

28

even the most basic understanding of their claims and their obligations to absent

class members, and they demonstrate neither willingness nor ability to control the

major decisions of the case.  Instead, they demonstrate only "blind reliance on

class counsel."  *See Zimmerman v. Cedars-Sinai Med. Ctr.*, 5:23-cv-01124-JLS-

SP, 2024 WL 5274600, at *10 (C.D. Cal. Dec. 18, 2024) (denying class

certification).  Recently, this Court deemed an ERISA named plaintiff inadequate

because she "had so little knowledge of and involvement in the class action that

[she] would be unable or unwilling to protect the interests of the class against the

possibly competing interests of the attorneys."  *Id*. at *9.[2]  That is precisely the

situation here.

                **i.**        **Plaintiffs Do Not Understand Their Duties as
Class Representatives.**

To fulfill the duties of a class representative, a plaintiff must necessarily

understand what those duties are.  The Named Plaintiffs neither understand nor

appreciate their obligations and thus cannot "prosecute the action vigorously on

behalf of the class[.]"  *Nghiem v. Dick's Sporting Goods, Inc.*, 318 F.R.D. 375, 383

(C.D. Cal. 2016); *see also May v. Gladstone*, 562 F. Supp. 3d 709, 713 (C.D. Cal.

2021) ("May's apparent lack of interest in his responsibilities and the goals of the

litigation is troubling.").

Tellingly, when asked what it means to be a class representative, Santos

responded: "The truth is that I barely know much.  ***I don't know***."  Adams Decl.,

Ex. I ("Santos Tr.") at 36:20-23 (emphasis added).  Indeed, he does not even know

what a class action is.  *Id.* at 36:24-25.  When asked whether he thinks that he has

---

[2] Additionally, "class certification can be denied if there is a strong indication that
Plaintiff's testimony might not be credible."  *Hall v. Nat'l Recovery Sys., Inc.*,
96:132-CIV-T-17(C), 1996 WL 467512, at *4-5 (M.D. Fla. Aug. 9, 1996) (internal
quotation marks omitted).  Ramirez's lack of credibility is discussed *infra*, §
IV(A)(1)(c).

"any obligations or responsibilities in this case," Santos again responded, "I don't
know." *Id.* at 37:1-5. He was later asked again: "Just to make sure we have a nice
clear record, sitting here right now, do you believe you have any responsibilities or
obligations in this case?" *Id.* at 50:20-23. Yet again, Santos responded: "I don't
know." *Id.* at 51:1.

After a break, Plaintiffs' counsel attempted to rehabilitate Santos' testimony
through reference to the Named Plaintiffs' boilerplate declarations submitted in
support of the Motion (*see infra*):

> Q [by Plaintiffs' counsel]: Do you understand what's written here [in
> the declaration] to be your representative -- your duties as a class
> representative?
>
> A. Yes.

Santos Tr. at 54:9-12.

Plaintiff's counsel attempt was unsuccessful, as Santos *still* could not
describe his responsibilities even after conferring with his counsel:

> Q [by defense counsel]: Did you have a conversation with your lawyer
> during the break?
>
> A.    Just questions.
>
> Q.    And now you understand that you have responsibilities?
>
> A.    Yes.
>
> Q.    What do those responsibilities entail?
>
> …
>
> [Santos]: I don't know.

*Id.* at 56:7-16. Santos' "demonstrated lack of understanding of … his role and
responsibilities make him an inadequate fiduciary for the interests of the absent
class members." *Passman v. Peloton Interactive, Inc.*, 671 F. Supp. 3d 417, 448

10

(S.D.N.Y. 2023) (holding plaintiff was inadequate class representative where he testified at deposition that "he does not know what the responsibilities of a class representative involve").

Ramirez demonstrated only slightly more understanding, conveying only that he had an obligation to communicate with his counsel.  Adams Decl., Ex. J ("Ramirez Tr.") at 29:21-30:1.

Plaintiffs' declarations, Dkts. 84-26, 84-27; *see also* Dkts. 84-17, 84-18, 84-19, 84-20 (English translations); Dkts. 89, 90, 90-1 (interpreter certifications), stating that they understand their duties does not save them from inadequacy.  The declarations are carbon copies of each other, indicating they are standard forms.  This Court has declined to credit such boilerplate declarations where, as here, it is clear that the named plaintiffs are unfamiliar with their case.  *See Zimmerman*, 2024 WL 5274600, at *9 ("[T]hese boilerplate declarations do not alleviate the Court's concerns where Plaintiffs' depositions reveal an almost total lack of familiarity with the facts of the case."); *see also infra* section § IV(A)(1)(b)(ii) (describing Plaintiffs' lack of familiarity with their case).

Plaintiffs' demonstrable failure to appreciate even their most basic duties renders them inadequate to represent the putative class.

### ii.    Plaintiffs Are Alarmingly Unfamiliar With Their Case.

To fulfill their obligation to "prosecute the action vigorously on behalf of the class[,]" *Nghiem*, 318 F.R.D. at 383, the Named Plaintiffs "must possess at least a minimal degree of knowledge regarding the class action."  *Richie v. Blue Shield of Cal.*, C-13-2693, 2014 WL 6982943, at *18 (N.D. Cal. Dec. 9, 2014) (citation omitted); *see also Zimmerman*, 2024 WL 5274600, at *9.

Though Plaintiffs will argue the bar is low for a class representative's understanding of ERISA claims, the bar is not at ground level.  As this Court

recently explained when denying class certification in another ERISA case, "an extensive understanding of ERISA[] … is not required for Plaintiffs to represent the ERISA class, but *adequacy must mean something*, at the very least there cannot be blind reliance on class counsel." *Zimmerman*, 2024 WL 5274600, at *10 (cleaned up). Here, too, "neither Plaintiff has established even a de minimis familiarity with the facts of the case, and the Court cannot assure itself that they have any role beyond that of furnishing their names as named plaintiffs." *Id*. (internal quotation marks omitted).

Despite their participation in the ESOP, neither Ramirez nor Santos understands even the most rudimentary aspects of the ESOP or why they are bringing claims about it. *See* Ramirez Tr. at 11:24-12:1 ("[D]o you know what the AMPAM ESOP invested in? No."); Santos Tr. at 15:24-16:1 ("Do you know what the purpose of the ESOP was? No."). When Santos was asked whether he understood that "the ESOP was a retirement plan," he responded: "No. I didn't know." Santos Tr. at 22:21-23. He also admitted that he "[doesn't] remember very well" whether he was even a "participant in the AMPAM ESOP," *id.* at 15:18-22, and, like Ramirez, when asked if he knew "what assets the ESOP held[,]" he responded "I really don't know." *Id.* at 16:2-4.

Plaintiffs are both similarly unaware of any information regarding the 2019 Transaction, the cornerstone of their allegations in this case. *See* Ramirez Tr. at 14:24-15:2 ("Do you have an understanding that in July 2019, there was a transaction in which the ESOP purchased shares of AMPAM stock? No."); Santos Tr. at 16:6-11 ("[W]hat did you hear about [the 2019 transaction]? Like, they sold stock, or they bought. I really don't understand that very well."); *see generally* Dkt. 68. When asked directly whether he understood "what the complaint is alleging about a 2019 transaction involving the ESOP[,]" Santos responded: "I'll leave that to my attorneys as well." *Id.* at 29:1-4. Both Ramirez and Santos

demonstrated a similar lack of understanding regarding the 2023 Transaction.  *See*
Ramirez Tr. at 15:11-13 ("What was your understanding at the time as to why the
transaction was occurring?  I don't remember why that was."); Santos Tr. at 16:12-
15 ("I barely understood what it was."); *see also id.* at 16:16-18 ("Do you have any
more understanding at this time than you did when you first heard about it?  No.").

Tellingly, Santos testified that his best understanding of the transactions at
issue was "that they sold–and about them selling, that they kept all the money and
that they didn't give us what we were entitled to."  Santos Tr. at 29:12-17; *see also
id.* at 24:20-23 ("It's about the–what we want is for them to give us our rights
when they sold their company[.]").  He parroted—sixteen times—that what he
sought was "our rights."  *Id.* at 24:21-23; 25:18-19; 31:23-25; 32:13-14; 33:7;
33:14-15; 33:22; 34:4-5; 34:12; 34:21-22; 35:5; 35:11; 35:19; 43:6-7; 43:12; 55:9.
But when asked what he thought these "rights" were, Santos responded: "The ones
that we were entitled to, each ███████████████."  *Id.* at 24:24-25:1.  ████
████████████████████████████████████████████████████████████
████████████████████  Ramirez similarly complained that "[t]he division
of the employees' stock, that they didn't inform us" was not "fair," Ramirez Tr. at
12:15-13:21, and that "[t]hey d[idn't] give information about what they're doing
with one's stocks."  *Id.* at 13:10-16.  When asked what was unfair about it, he
responded: "Ask my attorney about what is unjust because I don't know well
here."  *Id.* at 49:7-10.

Of course, neither understanding accurately reflects ***any*** of their claims—
there are no allegations whatsoever regarding improper allocations or distributions,
or that any member of the putative class received fewer shares than they were
entitled to under the terms of the ESOP.

Beyond that, Plaintiffs demonstrated a total lack of understanding about the
Defendants they chose to sue.  *See Ogden v. AmeriCredit Corp.*, 225 F.R.D. 529,

534-35 (N.D. Tex. 2005) ("[Plaintiff] should at least have an understanding of why all of the individuals or companies are defendants other than her general knowledge that a bad business deal occurred."). Santos admitted he does not know who eleven of the Defendants even are, *see* Santos Tr. at 32:18-35:14, while Ramirez does not know who ten of them are. *See* Ramirez Tr. at 48:6-50:1. They also could not explain what Defendants did wrong. *See* Santos Tr. at 32:12-35:19; Ramirez Tr. at 45:17-50:12. A named plaintiff who cannot articulate, even in the most basic lay terms, what they are claiming the defendants did wrong should not be entrusted to protect the interests of absent class members.

Nor do Plaintiffs know what injury they are seeking to remedy. In *Zimmerman*, a named plaintiff later found to be inadequate testified that she did "not know what damages are being sought in the lawsuit," 2024 WL 5274600, at *9. So too here. Neither Plaintiff has any idea what it is they are seeking through their lawsuit. When asked whether it was "[f]air to say [he] can't tell … how [he] was injured," Ramirez admitted: "Yes. I can't." Ramirez Tr. at 52:11-53:4. When Santos was asked specifically "[w]hat is the right that you say these defendants didn't give you[,]" Santos responded "I really don't know." Santos Tr. at 35:20-23. And when asked simply whether he is claiming that "some or all of the[] defendants hurt you in some way, financially or otherwise[,]" Santos testified: "I'll leave that to my attorneys." *Id.* at 35:25-36:6. He subsequently admitted: "I don't know." *Id.* at 36:8-13.

Because Plaintiffs show an "alarming unfamiliarity" as to the facts concerning every aspect of their lawsuit, class representative status must be denied. *See Burkhalter Travel Agency v. MacFarms Int'l, Inc.*, 141 F.R.D. 144, 154 (N.D. Cal. 1991); *see also Ogden*, 225 F.R.D. at 535 (holding plaintiff inadequate where she had "no factual knowledge, beyond knowing that money was lost, to support the allegations"). Plaintiffs' counsel "would be acting on behalf of an essentially

unknowledgeable client," meaning that "certifying a class with [Ramirez or

Santos] as its representative would risk a denial of due process to the absent class

members." *Burkhalter Travel Agency*, 141 F.R.D. at 154.  Because "neither

Plaintiff has established even a de minimis familiarity with the facts of the case,"

this Court "cannot assure itself that they have any role beyond that of 'furnishing

their names as named plaintiffs.'" *Zimmerman*, 2024 WL 5274600, at *10

(citation omitted).  While Defendants recognize that Plaintiffs "need not have any

particular level of financial sophistication, and that a basic knowledge of the facts

and claims [would be] sufficient," it is clear that "this low bar is not met here." *Id.*

at *9.

### iii.    Plaintiffs Cannot or Will Not Protect the Interests of the Class Against the Possibly Competing Interests of the Attorneys.

A named plaintiff is inadequate if he or she "would be unable or unwilling to

protect the interests of the class against the possibly competing interests of the

attorneys." *Id.* at *9.  Class certification should be denied where "plaintiff's

counsel, and not the plaintiff, is the driving force behind" the action.  *Navarro v.

ExxonMobil Corp.*, 17-cv-2477-DSF, 2022 WL 22248790, at *6 (C.D. Cal. July 5,

2022).  This litigation is clearly being driven by Plaintiffs' counsel, and the Named

Plaintiffs are unwilling or unable to check counsel's "unfettered discretion."  *See

id.*

First, the case history reveals that this litigation is driven by the lawyers, not

the clients.  *See A Aventura Chiropractic Care Ctr., Inc. v. BB Franchising LLC*,

1:15-cv-20137, 2015 WL 11051056, at *4 (S.D. Fla. Aug. 26, 2015) ("[A]

potential class is entitled to more than blind reliance upon even competent counsel

by uninterested and inexperienced representatives. … [W]here the named plaintiffs

have abdicated their role in the case …, the attorneys, in essence, are the class

representative.") (alterations in original).  On December 28, 2023, Plaintiffs'
counsel first initiated a practically identical lawsuit on behalf of a different named
plaintiff, Wilis Barrios, in the Southern District of California.  *Barrios v. AMPAM.*,
3:23-cv-02357 (S.D. Cal. Dec. 28, 2023) ("*Barrios*").  There, Plaintiffs' counsel
signed a civil cover sheet stating—correctly—that AMPAM resided in Los
Angeles County.  *Barrios*, Dkt. 1-1 at 1.  The civil cover sheet left the line for
Plaintiff's residence blank.[3]

   As it turned out, Plaintiffs' counsel had brought suit on behalf of an ESOP
participant who could not have been injured by the acts complained of because he
left AMPAM before vesting.  *See Barrios*, Dkt. 26.  That is, he was a member of
Group 2 described above.  *See supra*, § II.  Defendants moved to dismiss for lack
of standing, *Barrios*, Dkts. 26, 27, and Barrios subsequently dropped his case.
*Barrios*, Dkt. 30.

   That same day, Plaintiffs' counsel filed the Complaint in this case on behalf
of two *different* Plaintiffs, Ramirez and Santos.  *See* Dkt. 1.  This time, Plaintiffs'
counsel represented that AMPAM resided in Riverside County.  Dkt. 2 at 1.  They
further represented—incorrectly—that more than 50 percent of Defendants who
resided in the Central District resided in Riverside or San Bernardino County.  Dkt.
2 at 2.  They represented that Ramirez and Santos resided in Los Angeles County.
*Id*.  As a result of Plaintiffs' counsel's misrepresentation, the case was improperly
directed to this division.[4]

---

[3] At the time of Barrios' ESOP participation, he resided in Los Angeles.  *Barrios*,
Dkt. 26-3, Ex. 1 at 1.

[4] Despite Plaintiffs' misdirection of this matter to this Division, venue is not
improper here under ERISA.  *See* 29 U.S.C. § 1132(e)(2).  Although AMPAM is
headquartered in Los Angeles County, it does business in Riverside County.  *See
AMPAM Parks Mechanical*, https://ampam.com/ (listing headquarters in Carson,
CA but another office in Corona, CA) (last visited Feb. 12, 2025).

16

When they filed their Amended Complaint, Plaintiffs' counsel added Ivan Fernandez as a named plaintiff. *See* Dkt. 68. Fernandez initially refused to attend his deposition as noticed in Los Angeles, prompting a discovery conference with Magistrate Judge Bristow. Dkts. 110, 113. Following the conference, the parties renegotiated the deposition date. *See* Adams Decl., Ex. K. Then, two days before the scheduled deposition, Plaintiffs' counsel informed Defendants' counsel that they would withdraw Fernandez as a named Plaintiff. *See* Adams Decl., Ex. L. They did so on February 10. Dkt. 117.

In short, putative class counsel filed two different lawsuits—neither where their clients reside—first on behalf of someone who had no claim, and later on behalf of someone who changed his mind about pursuing a claim after he learned it required a trip to Los Angeles. *See* Dkt. 117. As in *Navarro*, "[c]lass counsel's inability to find and retain class representatives with an actual claim or continuing interest has been a concern throughout the litigation." *Navarro*, 2022 WL 22248790, at *6 (denying class certification for failure to satisfy Rule 23(a)(4)). In such a case, concerns that "plaintiff's counsel, and not the plaintiff, is the driving force behind" the action are particularly heightened. *Id.*

Indeed, the cause for this concern that the remaining Plaintiffs, Ramirez and Santos, will "blind[ly] rel[y] on class counsel[,]" *Zimmerman*, 2024 WL 5274600, at *10, was on full display at their depositions. Plaintiffs repeatedly deferred to their lawyers on the most fundamental questions about why they are suing and how they think they have been wronged. *See* Ramirez Tr. at 53:17-19 ("[M]y attorney is who has the last word."); *id.* at 44:15-19 ("Did you know that your lawyers filed an amended complaint[?] … In reality, I don't remember. You can ask the attorney."); *see also id.* at 21:16-17; 21:21-22; 39:21-22; 45:7-9; 49:9-10; 52:15-17; 54:2-4; Santos Tr. at 29:4; 36:5-6; 41:15-16; 42:11-12. Santos also admitted at his deposition that he has signed documents in this litigation without knowing what

17

they were.  *See* Santos Tr. at 41:24-42:8 ("Did you personally sign this document

through Docusign?  Yes. … Do you know what it is?  No.  Did you have an

understanding at the time you signed it?  No.").

Even if they wanted to, it is not clear that Ramirez and Santos are in a

position to "understand[] and control[] the major decisions of the case[,]" *Sanchez*,

2009 WL 1514435, at *3, where Plaintiffs' counsel has not facilitated their

understanding by providing translated versions of key case documents.  *See*

Ramirez Tr. at 30:5-9 ("Have [your lawyers] ever provided you with translated

documents at times when they were not asking for your signature? … No.");

Santos Tr. at 28:2-19 (explaining that counsel did not give him a translated version

of the Amended Complaint and that he translated it with an app on his phone, after

which he "[k]ind of" understood it).  To be clear, Defendants do not suggest that

Plaintiffs' limited English proficiency renders them inadequate class

representatives.  Rather, the concern that the lawyers, not the Named Plaintiffs, are

controlling the litigation is heightened to the extreme where Plaintiffs cannot

independently understand key case documents and Plaintiffs' Counsel have

demonstrated an unwillingness to provide them with translations unless their

signatures were specifically required.[5]

As in *Bodner v. Oreck Direct, LLC*, "[i]t is clear from the record that

plaintiff's counsel, and not plaintiff, is the driving force behind this action.  Such a

'cart before the horse' approach to litigation is not the proper mechanism for the

vindication of legal rights."  2007 WL 1223777, at *2 (N.D. Cal. Apr. 25, 2007).

"[W]here the class representatives [have] so little knowledge of and involvement in

---

[5] Further, Plaintiffs' counsel failed to provide certifications of their translated
filings prior to Defendants raising the issue, *see* Dkts. 89, 90, and they baselessly
attempted to require Defendants to translate their discovery requests into Spanish
rather than bearing that cost themselves.  *See* Adams Decl., Ex. M.

18

the class action that they would be unable or unwilling to protect the interests of
the class against the possibly competing interests of the attorneys[,]" class
certification is properly denied. *Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504,
525 (C.D. Cal. 2012).

**c.** ████████████████████████████████

### 2.    Plaintiffs Fail to Satisfy the Commonality and Typicality Requirements.

The Supreme Court has explained that "[t]he commonality and typicality requirements of Rule 23(a) tend to merge.  Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."  *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).

Plaintiffs are quick to identify supposed "common questions," asserting that "[v]irtually every merits question in this case is common to all ESOP participants," but then proceed to identify questions only about the element of breach. Mot. at 13. The Supreme Court has made clear, though, that "[w]hat matters to class certification … is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation. *Dissimilarities within the proposed class are what have the potential to impede the generation of common answers*." *Dukes*, 564 U.S. at 350 (second emphasis added). As explained with respect to adequacy, the interest of absent class members will not be fairly and adequately protected due to differences in how the acts alleged in the Amended Complaint affected them. The question of whether various participants were injured—or, in fact, benefited— from the acts alleged is not amenable to a common answer. *See supra*, § IV(A)(1)(a).

A similar problem arises with respect to the overlapping typicality requirement, which considers "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *See Berger v. Home Depot USA Inc.*, 8:10-cv-00678-SJO, 2011 WL 13224881, at *6 (C.D. Cal. March 18, 2011) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). Again, other class members—including Santos—were not injured by the conduct about which Plaintiffs complain. These dissimilarities within the proposed class defeat commonality and typicality.

## B.    Plaintiffs Fail to Satisfy Rule 23(b).

To warrant class certification, Plaintiffs must satisfy one of the subsections of Rule 23(b). Plaintiffs argue only for certification under subsection (b)(1). Mot. at 17-20. They fail to satisfy either subsection of Rule 23(b)(1).

Rule 23(b)(1)(A) does not apply.  That subsection is designed to *protect defendants* from "inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class[.]"  Fed. R. Civ. P. 23(b)(1)(A).  "A defendant may waive the protection afforded under Rule 23(b)(1)(A) by opposing certification."  *Jackson v. Johnson*, 4:08-cv-02271, 2009 WL 10711327, at *8 (E.D. Ark. July 28, 2009).  Where, as here, Defendants are "willing to accept that hazard [,]" certification under this subsection is "not warrant[ed]."  *Kenney v. Landis Fin. Grp., Inc.*, 349 F. Supp. 939, 951 (N.D. Iowa 1972).  "Consequently, the court should not certify [this] class over Defendants' objection."  *Corley v. Entergy Corp.*, 222 F.R.D. 316, 320 (E.D. Tex. 2004), *aff'd sub nom Corley v. Orangefield Indep. Sch. Dist.*, 152 F. App'x 350 (5th Cir. 2005).

Plaintiffs next argue for certification under Rule 23(b)(1)(B) because "the Court's determination about the legality of the two … transactions will affect all plan participants who held AMPAM stock in their ESOP account in the precise same way."  Mot. at 19.  To the contrary, as described above, section IV(A)(1)(a), the Court's determinations about the two transactions will affect *different* plan participants *differently* depending on their timing and ESOP vesting status.  Moreover, to the extent that Plaintiffs are concerned that "any individual adjudication by a class member disposes of, or substantially affects, the interests of absent class members[,]" Mot. at 19 (quotation omitted), Plaintiffs should then explain why they excluded the individuals in Group 3 (participants affected by the 2019 Transaction but not the 2023 Transaction).  These individuals were included in both complaints, which began the class period on December 28, 2017, but dropped when Plaintiffs moved to certify the class.  If a class is certified, Plaintiffs will extinguish the rights of those individuals, who have no representation here.

1    In short, certification under Rule 23(b)(1)(B) is not automatic in ERISA

2 cases; rather, whether certification is proper under that subsection "will turn on the

3 circumstances of each case."  *Spano*, 633 F.3d at 582.  In the circumstances here,

4 certification under Rule 23(b)(1)(B) is inappropriate.

## V.    Conclusion

6    For the foregoing reasons, Plaintiffs' Motion for Class Certification should

7 be denied.

8

9 Dated: February 13, 2025                    Respectfully Submitted,

10                                        */s/ Sarah M. Adams*
                                         Lars C. Golumbic (admitted *pro hac vice*)
11                                        Sarah M. Adams (admitted *pro hac vice*)
                                         Shaun A. Gates (admitted *pro hac vice*)
12                                        Lawrence A. Brett (admitted *pro hac vice*)
                                         GROOM LAW GROUP, CHARTERED
13                                        1701 Pennsylvania Ave. NW
                                         Washington, DC 20006
14                                        Tel: (202) 861-5432
                                         Fax: (202) 659-4503
15                                        Email: lgolumbic@groom.com
                                                sadams@groom.com
16                                                sgates@groom.com
                                                lbrett@groom.com
17
                                         PROCOPIO, CORY, HARGREAVES &
18                                        SAVITCH LLP
                                         Jeff S. Hood (Bar No. 216703)
19                                        jeff.hood@procopio.com
                                         12544 High Bluff Drive, Suite 400
20                                        San Diego, CA 92130
                                         Tel: (858) 720-6300
21
                                         Sean M. Sullivan (Bar No. 254372)
22                                        sean.sullivan@procopio.com
                                         525 B Street, Suite 2200
23                                        San Diego, CA 92101
                                         Tel: (619) 238-1900
24                                        Fax: (619) 235-0398

25                                        Emily M. Marsh (Bar No. 322494)
                                         emily.marsh@procopio.com
26                                        200 Spectrum Center Dr., Ste. 1650
                                         Irvine, CA 92618-5012
27                                        Tel: (949) 705-0666

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Attorneys for Defendants AMPAM Parks
Mechanical, Inc., Charles E. Parks III,
John D. Parks, John G. Mavredakis,
Kushal B. Kapadia, the AMPAM Board of
Directors, James C. Wright III, Kevin
Dow, James Ellis, Steve Grosslight, and
Mike Matkins*

*/s/ Julian Andre*
J. Christian Nemeth (Cal. Bar No.
222271)
jcnemeth@mwe.com
MCDERMOTT WILL & EMERY LLP
333 SE 2nd Avenue, Suite 4500
Miami, FL 33131-4336
Tel: (305) 358-3500
Fax: (305) 347-6500

Julian Andre (Cal. Bar No. 251120)
jandre@mwe.com
MCDERMOTT WILL & EMERY LLP
2039 Century Park East, Suite 3200
Los Angeles, CA 90067-3206
Tel: (310) 551-9335
Fax: (310) 317-7296

*Attorneys for Defendants Neil Brozen
and Ventura Trust Company*

25

## **LOCAL RULE 11-6.2 CERTIFICATION**

The undersigned, counsel of record for Defendants AMPAM Parks Mechanical, Inc., Charles E. Parks III, John D. Parks, John G. Mavredakis, Kushal B. Kapadia, the AMPAM Board of Directors, James C. Wright III, Kevin Dow, James Ellis, Steve Grosslight, and Mike Matkins, certifies that this brief contains 6,994 words, which complies with the word limit of L.R. 11-6.1.


Dated: February 13, 2025              */s/ Sarah M. Adams*

                                       Sarah M. Adams

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 18, 2025, I electronically filed the foregoing through this Court's electronic transmission facilities via the Notice of Electronic Filing (NEF) and hyperlink, to the parties and/or counsel who are determined this date to be registered CM/ECF Users set forth in the service list obtained from this Court on the Electronic Mail Notice List.


Dated: February 18, 2025          */s/ Sarah M. Adams*

Sarah M. Adams