Shaun P. Martin (Cal. Bar No. 158480)
*smartin@sandiego.edu*
5998 Alcala Park, Warren Hall
San Diego, CA 92110
Telephone: (619) 260-2347
Facsimile: (619) 260-7933

Eleanor Frisch (Cal. Bar No. 304408)
*efrisch@cohenmilstein.com*
Jacob T. Schutz (MNBA #0395648,
admitted *pro hac vice*)
*jschutz@cohenmilstein.com*
COHEN MILSTEIN SELLERS
  & TOLL PLLC
400 South 4th Street # 401-27
Minneapolis, MN 55415
Tel.: (202) 408-4600
Fax: (202) 408-4699

[Additional counsel appear on signature page]

*Counsel for Plaintiffs and the Proposed Class*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## EASTERN DIVISION

| | |
|---|---|
| Alfredo Ramirez, Ramón Santos Castro and Ivan Fernandez, individually and as representatives of a class of all others similarly situated and on behalf of the AMPAM Parks Mechanical, Inc. Employee Stock Ownership Plan (the "AMPAM ESOP" or the "ESOP"),<br><br>                    Plaintiffs,<br><br>          v.<br><br>AMPAM Parks Mechanical, Inc., Charles E. Parks III, John D. Parks, John G. | Case No. 5:24-cv-01038-KK (DTBx)<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**<br><br>**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**<br><br>Hearing Date: March 6, 2025<br>Time: 10:30 AM<br>Judge: Hon. Kenly K. Kato |

Mavredakis, Kushal B. Kapadia, the AMPAM Board of Directors, Neil Brozen, Ventura Trust Company, James C. Wright III, Kevin Dow, James Ellis, Steve Grosslight, and Mike Matkins,

              Defendants.

Courtroom: 3

# **TABLE OF CONTENTS**

I.    Introduction ................................................................................. 1

II.   Mr. Ramirez and Mr. Santos are Adequate Class Representatives ............... 2

    A.    There are No Conflicts. ......................................................... 2

        1.    Plaintiffs Ramirez and Santos Have No Conflicts
            with Each Other. ........................................................ 3

        2.    Defendants' Asserted Conflict Between Plaintiffs
            and Non-Class Members is Irrelevant and Non-
            Existent. ................................................................... 5

    B.    Plaintiffs Have and Will Prosecute This Action
       Vigorously on Behalf of the Proposed Class. ............................. 7

        1.    Plaintiffs Understand Their Duties as Class
            Representatives. ........................................................ 7

        2.    Plaintiffs Have Sufficient Familiarity with the
            Litigation. ................................................................ 9

        3.    Plaintiffs Have Sufficiently Supervised Their
            Counsel. .................................................................. 14

    C.    Defendants' Claim that Ramirez Lacks Credibility
       Fails. ............................................................................. 17

III.  Plaintiffs Have Satisfied Commonality and Typicality Because All
    Class Members Suffered the Exact Same Harm. .......................... 20

IV.   Plaintiffs Have Satisfied Rule 23(b). ........................................... 21

V.    Conclusion .......................................................................... 22

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Cunningham v. Wawa, Inc.*,
   387 F. Supp. 3d 529 (E.D. Pa. 2019)....................................................7

*In re Facebook Biometric Info. Privacy Litig.*,
   326 F.R.D. 535 (N.D. Cal. 2018), *aff'd by Patel v. Facebook, Inc.*,
   932 F.3d 1264 (9th Cir. 2019) ...........................................................15

*Fernandez v. K-M Indus. Holding Co., Inc.*,
   2008 WL 2625874 (N.D. Cal. June 26, 2008)......................................7

*Fifth Third Bancorp v. Dudenhoeffer*,
   573 U.S. 409 (2014).............................................................................4

*In re First Am. Corp. ERISA Litig.*,
   258 F.R.D..............................................................................11, 15, 21

*Foster v. Adams & Assocs., Inc.*,
   2019 WL 4305538 (N.D. Cal. Sept. 11, 2019)....................................7

*Gamache v. Hogue*,
   338 F.R.D. 275 (M.D. Ga. 2021)........................................................7

*Gamino v. KPC Healthcare Holdings, Inc.*,
   2021 WL 7081190 (C.D. Cal. Aug. 6, 2021) ..........................7, 21, 22

*Godfrey v. GreatBanc Tr. Co.*,
   2021 WL 679068 (N.D. Ill. Feb. 21, 2021) .........................................3

*Hadley v. Kellogg Sales Co.*,
   324 F. Supp. 3d 1084 (N.D. Cal. 2018)...............................................6

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) .............................................................2

*Hilsley v. Ocean Spray Cranberries, Inc.*,
   2018 WL 6300479 (S.D. Cal. Nov. 29, 2018)....................................18

*Hurtado v. Rainbow Disposal Co., Inc.*,
    2019 WL 1771797 (C.D. Cal. Apr. 22, 2019) ............................................1, 7, 10

*Ingles v. City of New York*,
    2003 WL 402565 (S.D.N.Y. Feb. 20, 2003) ....................................................21

*Jovel v. Boiron, Inc.*,
    2014 WL 1027874 (C.D. Cal. Feb. 27, 2014) ..................................................17

*Kaplan v. Pomerantz*,
    132 F.R.D. 504 (N.D. Ill. 1990).................................................................17, 18

*Khan v. Bd. of Dirs. of Pentegra Defined Contribution Plan*,
    2023 WL 6256204 (S.D.N.Y. Sept. 26, 2023) ................................................15

*Lockheed Corp. v. Spink*,
    517 U.S. 882 (1996).........................................................................................4

*McCluskey v. Trs. of Red Dot Corp. Emp. Stock Ownership Plan & Tr.*,
    268 F.R.D. 670 (W.D. Wash. 2010) .................................................................7

*Moeller v. Taco Bell Corp.*,
    220 F.R.D. 604 (N.D. Cal. 2004), *amended in part*, 2012 WL
    3070863 (N.D. Cal. July 26, 2012).................................................................16

*In re Nat'l Football League's Sunday Ticket Antitrust Litig.*,
    2023 WL 1813530 (C.D. Cal. Feb. 7, 2023) .....................................................5

*Neil v. Zell*,
    275 F.R.D. 256 (N.D. Ill. 2011).......................................................................7

*In re Northrop Grumman Corp. ERISA Litig.*,
    2011 WL 3505264 (C.D. Cal. Mar. 29, 2011)...............................................9, 11

*In re Online DVD-Rental Antitrust Litig.*,
    779 F.3d 934 (9th Cir. 2015) ...........................................................................5

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999).........................................................................................22

*In re Packaged Seafood Prods. Antitrust Litig.*,
    332 F.R.D. 308 (S.D. Cal. 2019) ......................................................................9

*In re Polaroid ERISA Litig.*,
    240 F.R.D. 65 (S.D.N.Y. 2006) ........................................................... 7

*Retirement Topics – Vesting*,
    IRS, https://www.irs.gov/retirement-plans/plan-participant-
    employee/retirement-topics-vesting ..................................................... 4

*Rozo v. Principal Life Ins. Co.*,
    2017 WL 2292834 (S.D. Iowa May 12, 2017) ..................................... 7

*In re Schering Plough Corp. ERISA Litig.*,
    589 F.3d 585 (3d Cir. 2009) ................................................................ 7

*Soc. Servs. Union, Local 535, Serv. Emps. Int'l Union, AFL-CIO v.*
    *Santa Clara Cnty.*,
    609 F.2d 944 (9th Cir. 1979) ............................................................... 4

*Stoffels v. SBC Comms.*,
    238 F.R.D. 446 (W.D. Tex. 2006) ...................................................... 16

*Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives &*
    *Composites, Inc.*,
    209 F.R.D. 159 (C.D. Cal. 2002) .................................................. 15, 16

*Tibble v. Edison Int'l*,
    2009 WL 6764541 (C.D. Cal. June 30, 2009) ................................. 9, 11

*In re Turkcell Iletisim Hizmetler, A.S. Sec. Litig.*,
    209 F.R.D. 353 (S.D.N.Y. 2002) ...................................................... 13

*Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*,
    2017 WL 2655678 (C.D. Cal. June 15, 2017) ............................. *passim*

*White v. Gen. Motors*,
    2023 WL 3278460 (D. Colo. May 5, 2023) ...................................... 17

*Williams Corp. v. Kaiser Sand & Gravel Co., Inc.*,
    146 F.R.D. 185 (N.D. Cal.1992) ....................................................... 10

**Rules and Statutes**

26 U.S.C. § 411 (d)(3) ............................................................................ 3

28 U.S.C. § 1391(d) .............................................................................. 16

29 U.S.C. § 1053 ..................................................................................................... 4

Cal. Gov. Code § 68561(h) ................................................................................... 14

ERISA ............................................................................................................. *passim*

Fed R. Civ. P. 23(a)(4) ............................................................................... 5, 6, 17

Fed. R. Evid. 401 .................................................................................................. 18

Fed. R. Civ. P. 23 ............................................................................... 6, 16, 20, 21

Fed. R. Civ. P. 23(b) ............................................................................................ 21

Rule 23(b)(1) ............................................................................................................ 2

Rule 23(b)(1)(A) ........................................................................................... 21, 22

Rule 23(b)(1)(B) ........................................................................................... 21, 22

# I.    INTRODUCTION

The two core questions in this case are: (i) whether ESOP participants overpaid for AMPAM stock when Defendants forced the ESOP to buy AMPAM in 2019, and (ii) whether ESOP participants were injured again in 2023 when they sold their stock back to certain Defendants, who controlled AMPAM's Board before and after both transactions. The facts relevant to these core questions are uniform among all vested ESOP participants. For example, Plaintiffs Ramirez and Santos, like all participants, paid the Sellers the same price for AMPAM stock ($▮▮▮ per share), and Defendants' liability turns on whether that price was inflated or fair. Likewise, all ESOP participants sold their AMPAM stock in 2023 at the same price ($▮▮▮ per share), and, again, liability turns on whether the price was fair. Given that the main questions in this case are the same for all class members, courts have repeatedly certified ESOP actions like this one. *See* Class Mot., ECF 84-1 at 1 n.1. Many of these decisions expressly recognize that "ERISA fiduciary litigation . . . presents a paradigmatic example of a (b)(1) class." *Hurtado v. Rainbow Disposal Co., Inc.*, 2019 WL 1771797, at *9 (C.D. Cal. Apr. 22, 2019) (cleaned up).

Defendants oppose class certification on the thinnest of bases. They allege intra-class conflicts that are not just speculative but *impossible*. Defendants' own documents demonstrate that the purported "Group 3" participants—who would not even be encompassed by Plaintiffs' class definition—do not exist, because no participants received a distribution from their ESOP account prior to the 2023 Transaction. Their next "conflict"—that one of the remedies Plaintiffs seek could harm Mr. Santos, is also impossible because (1) Plaintiffs seek rescission of only the 2023 Transaction (not the termination of the ESOP that caused Mr. Santos to vest), and (2) any attempt to force Mr. Santos to forfeit his vested shares is prohibited by ERISA.

Defendants also exploit the ethnic and demographic background of Plaintiffs Alfredo Ramirez and Ramon Santos to argue that they are inadequate class representatives. Worse, Defendants continue their retaliation campaign against █████ ████████████████████████████████████████████████████. Yet the sole support for these allegations are AMPAM's *own documents*—suggesting that AMPAM's newfound concern for such matters has arisen only to prevent the class from representation in this lawsuit, since AMPAM was not concerned about these issues earlier despite its ██████████████████████████████████████ ████████.

Courts in this Circuit have repeatedly rejected the types of "conflicts" and adequacy challenges that Defendants press here. Ultimately, Defendants fail to rebut the overwhelming authority demonstrating that the ERISA claims here should be certified because they present a "paradigmatic example of a Rule 23(b)(1) class." Plaintiffs' Motion for Class Certification, ECF 84, should be granted.

## II.     Mr. Ramirez and Mr. Santos are Adequate Class Representatives.

Adequacy is a two-part inquiry: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). In an attempt to manufacture conflicts between Plaintiffs and other class members, Defendants misrepresent key facts and distort Plaintiffs' deposition testimony. Class Opp'n, ECF 119-2, at 5.

### A.     There are No Conflicts.

Despite several pages of argument, Defendants do not identify a single person in the class who would be harmed by this lawsuit or the remedies sought by Plaintiffs Ramirez and Santos. This is perhaps not surprising given that courts routinely certify similar ERISA claims because "plaintiffs and the class members share a powerful

common interest: holding the defendants accountable for an alleged breach of their fiduciary duties under ERISA and any resulting harm to the Plan." *Godfrey v. GreatBanc Tr. Co.*, 2021 WL 679068, at *6 (N.D. Ill. Feb. 21, 2021).

First, Defendants misconstrue the law and argue that Plaintiff Santos will be harmed by rescission because (supposedly) this remedy will strip Mr. Santos of his vested interest in his ESOP account. Class Opp'n at 5-7. Not so. As explained below, this outcome is impossible, both because Plaintiffs seek rescission only of the 2023 Transaction, not rescission of the Plan termination that resulted in Mr. Santos's stock becoming vested, but also because any purported remedy that would un-vest Mr. Santos's stock would violate ERISA's anti-forfeiture provision.

Next, Defendants point to conflicts outside the class definition and spill much ink on purported conflicts between the Named Plaintiffs and Group 3, who Defendants admit are not even defined to be in the proposed class. Even their attempt to point to *extra*-class conflicts fails because there are zero people in Group 3.

### 1.    *Plaintiffs Ramirez and Santos Have No Conflicts with Each Other.*

Defendants resist certification by identifying a hypothetical conflict they contend might materialize if the Court orders rescission of the 2023 Transaction. In their telling, rescission of the 2023 Sale would benefit Mr. Ramirez but extinguish Mr. Santos's vested interest in his AMPAM stock. The problem with that argument is that Mr. Santos became vested not because of the 2023 Sale, but, rather, because of the separate termination of the Plan. *See* Ex. 1, at 46 (Plan Document) (stating that all non-vested participants would immediately vest upon plan termination).[1] Contrary to Defendants' assertion, Plaintiffs do not complain about the ESOP Termination or seek a remedy that would reinstate the plan. Indeed, the termination

---

[1] In fact, immediately vesting all accrued benefits upon termination is required under ERISA. *See* Internal Revenue Code § 411(d)(3).

of the ESOP is a settlor decision that Plaintiffs could not challenge. *Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996). Rather, Plaintiffs challenge the 2023 Transaction, a *fiduciary* act. Critically, AMPAM's termination of the ESOP was a separate event that need not be disturbed if the Court were to order rescission of the 2023 Transaction.

In any event, no remedy that Plaintiffs seek or that the Court could order would result in Mr. Santos becoming "un-vested" because a participants' interest in an ERISA-governed account, once vested, cannot be forfeited. 29 U.S.C. § 1053; *Retirement Topics – Vesting*, IRS, https://www.irs.gov/retirement-plans/plan-participant-employee/retirement-topics-vesting (Once an employee "is 100% vested in his or her account balance, [the employee] owns 100% of it and the employer cannot forfeit, or take it back, for any reason."). And because ERISA strictly prohibits any action that would strip ESOP participants of vested stock in their ESOP accounts, no court nor party could seek to undo Santos and Group 4 participants' vested interest in their accounts. *Cf. Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 428 (2014) (recognizing that ERISA must be interpreted in conformance with the law and nothing in ERISA could compel someone "to break the law").

Even if reinstatement of the ESOP were (1) a remedy that Plaintiffs sought, that were (2) within the Court's power to award, and (3) could somehow result in a forfeiture of Mr. Santos's interest despite § 1053's prohibition on forfeitures of vested interests, Defendants' argument still would not preclude certification because it raises a hypothetical conflict that "necessarily depends on what kind of relief is ultimately awarded by the Court." *Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, 2017 WL 2655678, at *5 (C.D. Cal. June 15, 2017). "Mere speculation as to conflicts that may develop at the remedy stage is insufficient to support denial of initial class certification." *Soc. Servs. Union, Local 535, Serv. Emps. Int'l Union, AFL-CIO v. Santa Clara Cnty.*, 609 F.2d 944, 948 (9th Cir. 1979). In line with this precedent,

this court has rejected conflict arguments similar to Defendants' contention here and observed that "the Ninth Circuit has stated on more than one occasion that potential future conflicts are insufficient to deny class certification." *Urakhchin*, 2017 WL 2655678, at *5.

Ultimately, Defendants' articulated conflicts do not come close to defeating adequacy. The supposed harms that Defendants contend will befall Mr. Santos and Group 4 class members from the litigation proceeding as a class action are not only speculative, they are impossible to materialize.

### 2. *Defendants' Asserted Conflict Between Plaintiffs and Non-Class Members is Irrelevant and Non-Existent.*

Defendants also suggest that Plaintiffs Ramirez and Santos have conflicts with the ESOP participants in Group 3 – i.e., participants who sold their AMPAM stock before the 2023 Transaction and thus were only affected by the 2019 Transaction. But this purported "conflict" would be between Plaintiffs and participants who are by definition ***not*** in the class. Conflicts between the Named Plaintiffs and individuals outside of the class are irrelevant to the Court's adequacy inquiry, which asks whether "the representative parties will fairly and adequately protect the interests of ***the class.***" Fed R. Civ. P. 23(a)(4) (emphasis added); *see*, *e.g.*, *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015) (recognizing that only ***intra*-**class conflicts are relevant and not discussing conflicts external to the class). Defendants point to no authority holding that a court must evaluate purported conflicts between the named plaintiffs and individuals outside of the class. Class Opp'n at 5-8.

Nonetheless, Defendants insinuate that it was improper for Plaintiffs to craft the class definition to avoid potential conflicts but offer no supporting authority. *Id.* Moreover, Defendants' argument is contrary to law. *See In re Nat'l Football League's Sunday Ticket Antitrust Litig.*, 2023 WL 1813530, at *16 (C.D. Cal. Feb.

7, 2023) ("Court thus does not find Defendants' argument persuasive, especially considering that they are 'unaware of any authority' supporting it." (citation omitted)); *cf. Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1097 (N.D. Cal. 2018) (rejecting argument that plaintiff was "gerrymandering the class" and holding that "this appears to be an accepted and uncontroversial approach to class definition").

But even assuming arguendo that Plaintiffs were required to include the Group 3 participants, Defendants' conflict challenge still amounts to much ado about nobody. Review of the class data produced in this litigation indicates that there are no participants who redeemed their AMPAM stock before the 2023 Transaction. Wheeler Decl. ¶¶ 4-7. That is, no "Group 3" participants exist.

The ESOP's governing document explains why there would be few (if any) individuals in Group 3: employees who left AMPAM with vested stock were not able to sell that stock until "the sixth Plan Year following the Plan Year in which the Participant terminated" (unless they terminated due to death, disability or retirement). Ex. 1 §12(b); Distribution Policy, Ex. 2, attached thereto.[2] The ESOP was terminated in 2023, after just four Plan Years. Defendants' records show that all vested ESOP participants sold their AMPAM stock through the 2023 Transaction and thus all have the same interest in prevailing in the Named Plaintiffs' challenge to the 2023 Transaction.

Nevertheless, whether or not Group 3 is a null set, the "conflict" between Group 3 and the Named Plaintiffs is irrelevant because Rule 23's adequacy requirement is expressly circumscribed to ensure that "the representative parties will fairly and adequately protect the interests of ***the class.***" Fed. R. Civ. P. 23(a)(4)

---

[2] Likewise, the ESOP's government filings state that distributions for terminated employees (who did not terminate due to death, disability or retirement) "are offered in the sixth plan year following the plan year in which the participant terminated employment." Ex. 3, at 19 (2022 Form 5500).

(emphasis added). There is no requirement to adequately protect the interests of people outside the class. Defendants' adequacy arguments do nothing to rebut the virtually uniform authority certifying ERISA class claims just like the ones asserted here. *E.g.*, *Urakhchin*, 2017 WL 2655678, at *5-7, *9 (granting certification of ERISA class claims and rejecting speculative conflicts to find that named plaintiffs adequately represented the class); *Gamino v. KPC Healthcare Holdings, Inc.*, 2021 WL 7081190, at *5-6, *8 (C.D. Cal. Aug. 6, 2021); *Foster v. Adams & Assocs., Inc.*, 2019 WL 4305538, at *4-8 (N.D. Cal. Sept. 11, 2019); *Hurtado*, 2019 WL 1771797, at *1; *McCluskey v. Trs. of Red Dot Corp. Emp. Stock Ownership Plan & Tr.*, 268 F.R.D. 670, 676-78 (W.D. Wash. 2010); *Fernandez v. K-M Indus. Holding Co., Inc.*, 2008 WL 2625874, at *3-5 (N.D. Cal. June 26, 2008); *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 601-04 (3d Cir. 2009); *Rozo v. Principal Life Ins. Co.*, 2017 WL 2292834, at *4, *7 (S.D. Iowa May 12, 2017); *Neil v. Zell*, 275 F.R.D. 256, 267, 270 (N.D. Ill. 2011); *Cunningham v. Wawa, Inc.*, 387 F. Supp. 3d 529, 538, 551 (E.D. Pa. 2019); *Gamache v. Hogue*, 338 F.R.D. 275, 289-92 (M.D. Ga. 2021); *In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 78 (S.D.N.Y. 2006) (collecting cases).

**B.    Plaintiffs Have and Will Prosecute This Action Vigorously on Behalf of the Proposed Class.**

**1.    *Plaintiffs Understand Their Duties as Class Representatives.***

Defendants challenge the adequacy of the Named Plaintiffs by suggesting that they "neither understand nor appreciate their obligations" as class representatives. Class Opp'n at 9. Yet this assertion is belied by, amongst other things, the numerous actions Plaintiffs have taken in furtherance of their duties. Plaintiffs have been actively engaged in the litigation, including discussing the pleadings with Counsel, participating in discovery by verifying answers to interrogatories, searching for and producing documents responsive to requests for production, and sitting for

deposition. Ramirez Decl., ECF 84-26 ¶ 5;[3] Santos Decl., ECF 84-27 ¶ 5;[4] Santos Tr. (Ex. 4) at 43:15-24 (signed interrogatories); 49:15-20 (provided documents related to the AMPAM ESOP to his attorneys); 53:3-19 (reviewed complaint and discussed it with counsel before filing); Ramirez Tr. (Ex. 5) at 30:2-31:5 (communicates with attorneys and reviewed and signed interrogatories). Plaintiffs further attest that they understand and are prepared to carry out the duties of class representatives. Ramirez Decl. ¶¶ 6-8; Santos Decl. ¶¶ 6-8.

Both Plaintiffs testified accurately regarding their obligations to the class. Plaintiff Ramirez explained that he was acting as "a representative of all of the employees of AMPAM." Ramirez Tr. 29:19-20. He acknowledged he has responsibilities such as to "speak to my attorney" and "to represent all employees." *Id.* at 29:21-30:1. Plaintiff Ramirez further explained he was willing to testify at trial. *Id.* at 34:13-16. Plaintiff Santos also testified that he was seeking to be a class representative. Santos Tr. 36:15-17. He stated that when he signed his Duties of Class Representatives form, he understood his responsibilities, and he remains willing to carry them out. *Id.* at 39:3-6; 54:13-15. Mr. Santos accurately explained, "I'm my coworkers' representative for this lawsuit" with responsibilities such as "[a]cquiring our rights for them to give us." *Id.* at 55:1-9.[5] He testified that if his lawyers ask him to sign something, he asks them to explain it to him. *Id.* at 41:11-16. He explained he joined the lawsuit "to acquire our rights." *Id.* at 43:12.

---

[3] A translated English version of Plaintiff Ramirez's declaration and duties of class representative form were filed as ECFs 84-19 and 84-20.

[4] A translated English version of Plaintiff Santos's declaration and duties of class representative form were filed as ECFs 84-17 and 84-18.

[5] Defendants' protestations that this specific exchange occurred after a break in testimony is of no consequence, particularly considering that Plaintiff Santos testified that he found prior questions "confus[ing]" and that he subsequently "remembered what was written in my declaration." Santos Tr. 55:12-22.

On this record, Plaintiffs are adequate class representatives because they understood "their general responsibilities as [] class representative[s]" and "actively participated in discovery and sat for depositions." *In re Packaged Seafood Prods. Antitrust Litig.*, 332 F.R.D. 308, 330 (S.D. Cal. 2019). *See also In re Northrop Grumman Corp. ERISA Litig.*, 2011 WL 3505264, *14-15 (C.D. Cal. Mar. 29, 2011) (adequacy met where plaintiffs "participated actively in discovery, met with counsel, sat for deposition, and reviewed the complaint before it was filed"). Moreover, Mr. Ramirez and Mr. Santos will vigorously represent the proposed class because they understand their role to be "to represent the people that can't be here or don't know how to be here or [are] afraid to be here to get back what's been taken." *In re Northrop Grumman Corp*, 2011 WL 3505264, *15; *see also* discussion *supra*. Consistent with the weight of authority, Messrs. Ramirez and Santos should be appointed as class representatives.

## 2. *Plaintiffs Have Sufficient Familiarity with the Litigation.*

Defendants assert that "neither Ramirez nor Santos understands even the most rudimentary aspects of the ESOP or why they are bringing claims about it." Class Opp'n at 12. However, "the Ninth Circuit 'has never imposed a knowledge requirement on proposed class representatives.'" *Urakhchin*, 2017 WL 2655678, at *6 (quoting *Tibble v. Edison Int'l*, 2009 WL 6764541, at *6 (C.D. Cal. June 30, 2009)). To do so would be especially inappropriate "in a case such as this involving complicated matters of ERISA law." *Tibble*, 2009 WL 6764541, at *6.

Regardless, Defendants mischaracterize Plaintiffs' deposition testimony to make their point. For example, when asked for his "understanding of what an ESOP is," Plaintiff Ramirez accurately and succinctly explained, "It's a retirement plan for AMPAM employees." Ramirez Tr. 11:20-30. He testified that he first heard about the ESOP "during a meeting or gathering that we had in a park" where he learned

"that they had given stocks to the employees." *Id.* at 12:7-9. He knew he was a participant in the ESOP. *Id.* at 12:10-13. He explained that he expected to receive a "fair share," but "it wasn't fair" in the "division of the employees' stocks." *Id.* at 12:15-13:6. He also explained that his shares in the ESOP were not a gift but earned as compensation. *Id.* at 13:23-14:6. He was aware that, in 2023, the ESOP sold its shares of AMPAM stock. *Id.* at 15:3-7. He even specifically identified "ERISA" as entitling him to a "bigger share." *Id.* at 21:1-10. Courts presiding over similar ESOP cases in this District have found plaintiffs adequate class representatives where "they understand the basic contours of the case and have been actively engaged in the litigation" and "further attest that they understand and are prepared to carry out the duties of class representatives." *Hurtado*, 2019 WL 1771797, at *9.

It is hardly surprising that when further pressed about exactly what he thought "should have been done differently in the 2023 transaction," Mr. Ramirez explained that he relied on his Counsel to explain to him such details and that he "can't think of them here quickly." *Id.* at 21:18-22; 54:2-4. "In complex litigation, a class representative need not have first hand knowledge of all of the details of his or her suit." *Williams Corp. v. Kaiser Sand & Gravel Co., Inc.*, 146 F.R.D. 185, 188 (N.D. Cal.1992). Even so, Mr. Ramirez recognized the Complaint and explained it was "[t]he class action." Ramirez Tr. 22:2-6. He explained further that he had discussed the class action complaint with his lawyers, and that it was brought to obtain "a fair share." *Id.* at 26:4-10. Mr. Ramirez further stated that the wrongdoing in this case involved "the buying and selling of the ESOP funds." *Id.* at 45:17-23. He testified that he, like "all of the employees of AMPAM," were injured by the Defendants, and he was bringing this action for "fair compensation that [Defendants] did not split" (or distribute). *Id.* at 50:20-51:6. Again, courts in this district have found plaintiffs with a similar level of understanding to be adequate class representatives in ERISA cases. *Urakhchin*, 2017 WL 2655678, at *6-7. "Courts are reluctant . . . to deny class

certification on the basis that the class representatives lack sophistication." *In re Northrop Grumman*, 2011 WL 3505264, at *14 (citing cases). Indeed, a class representative's reliance on lawyers "is especially appropriate in a case such as this involving complicated matters of ERISA law." *Tibble*, 2009 WL 6764541, at *6.

Similarly, Plaintiff Santos testified that he was a participant in the AMPAM ESOP. Santos Tr. 11:13-16. He knew the ESOP was involved in a stock transaction in 2019 and another transaction in 2023. *Id.* at 16:6-15. He explained he was suing because "what we want is for them to give us our rights when they sold their company," specifically the "ones that we were entitled to, each company employee." *Id.* at 24:20-25:1. Plaintiff Santos also stated he should have received more from the ESOP when it terminated. *Id.* at 25:7-10. He testified that he read the First Amended Complaint before it was filed in September 2024. *Id.* at 27:11-14. He understood that Defendants "didn't give us what we were entitled to." *Id.* at 28:20-25, 29:12-17. Mr. Santos's understanding of his claims is consistent with the understanding of class representatives found to be adequate in other ERISA class actions. *E.g.*, *In re Northrop Grumman*, 2011 WL 3505264, at *14-15 (finding the named plaintiff to be adequate where she explained that her role was "to be here to get back what's been taken").

Defendants' argument that Plaintiffs Ramirez and Santos lack sufficient knowledge of their claims is contrary to intra-Circuit law recognizing that "the Ninth Circuit 'has never imposed a knowledge requirement on proposed class representatives.'" *Urakhchin*, 2017 WL 2655678, at *6 (quoting *Tibble*, 2009 WL 6764541. Rather, Plaintiffs are adequately representing the class by discussing the pleadings with Counsel before filing, providing sworn interrogatory responses, producing documents, sitting for deposition, and remaining in regular contact with Counsel. *See supra* § II.B.1; *In re First Am. Corp. ERISA Litig.*, 258 F.R.D. at 620

(adequacy met where "there is at least some evidence that the Plan Participants are knowledgeable about and prepared to prosecute this action").

Defendants state they "do not suggest that Plaintiffs' limited English proficiency renders them inadequate class representatives." Class Opp'n at 18. Yet their attacks on Plaintiffs' deposition testimony fail to account for the inherent difficulties in communicating across language barriers about complex legal and financial concepts. Plaintiff Ramirez received only a high school education in Mexico. Ramirez Tr. 9:6-12. Spanish is his native language, and he is able to communicate very little in English. *Id.* at 7:24-8:3. Similarly, Plaintiff Santos has a high school education from Honduras and cannot communicate at all in English. Santos Tr. 6:7-9, 9:18-22. Of course, concepts like ESOPs and determinations of fair market value are not easily translatable into Spanish, and two translators may translate the same English term differently.

As an example of how the language barrier makes Plaintiffs seem less informed than they really are, during Plaintiff Ramirez's deposition, his use of a Spanish word that could be translated either as "split" or "distribution" caused repeated confusion:

> Q. And what do you think the AMPAM Board of Directors did wrong?
> …
> A. An unfair split.
> Q. What do you mean by "split"?
> A. The buying and selling of ESOP.
> Q. I'm not following. What was unfair about it?

Ramirez Tr. 48:21-49:8. After Defendants' Counsel later repeated her confusion over the use of the word "split," the translator intervened: "Another word or translation for the word he's using is 'distribute.'" *Id.* at 51:21-52:4. This exchange highlights that, even with the assistance of an interpreter, certain technical, legal, or financial concepts can easily get lost in translation. Defendants double down in their

opposition, claiming "there are no allegations whatsoever regarding improper allocations or distributions." Class Opp'n at 13. But, of course, that Plaintiffs should have received a larger distribution (i.e., payment) from their ESOP accounts when the Plan terminated is at the heart of Plaintiffs' claims. That a plumber who is not familiar with financial concepts referred to unfair distributions is not tantamount to "alarmingly unfamiliar" with the claims he is asserting. *Contra* Class Opp'n at 11-15.

Defendants also argue that Plaintiffs are inadequate because not every single document in this case has been translated for the named Plaintiffs. Instead, Plaintiffs' Counsel has sometimes explained the contents of the documents verbally rather than providing a written translation. Wheeler Decl. ¶ 8. In any event, "there is no requirement that a representative plaintiff himself be able to communicate with counsel and understand the papers in the case." *In re Turkcell Iletisim Hizmetler, A.S. Sec. Litig.*, 209 F.R.D. 353, 356 (S.D.N.Y. 2002) (approving class representative who did not speak English, but understood "the basic nature of the lawsuit, and, while he d[id] not grasp the nuances of a class action, his interests are clearly aligned with the class members whom he represents").[6]

To the extent difficulties arose due to language differences, they were exacerbated by Defendants' own actions. After Defendants refused Plaintiffs' request to serve interrogatories on Plaintiffs in Spanish, Plaintiffs' Counsel provided Plaintiffs with a professional translation of the interrogatories from English to

---

[6] Defendants cite an exchange in which Plaintiff Santos did not recognize an English version of an authorization he signed for his Counsel to obtain Plan-related documents on his behalf. Class Opp'n at 17-18. But in the two lines immediately following the testimony that Defendants cite, Mr. Santos testified that while he had not seen a Spanish translation of the records request, "I asked my attorneys to explain it to me." Santos Tr. 42:9-10. Indeed, when Defendants' Counsel asked, "[i]f your lawyers send you something to sign, do you just sign it?" Plaintiff Santos explained, "I ask my attorneys to explain it to me." Santos Tr. 41:11-16.

Spanish and served professionally translated responses on Defendants in both languages. Wheeler Decl. ¶¶ 9-13. At deposition, Defendants' Counsel asked questions using Plaintiffs' formal Responses, with Defendants' interrogatories written only in English and the responses appearing in both languages. Wheeler Decl. ¶ 14. Plaintiffs' Counsel noted for the record that because Defendants presented the interrogatories only in English, Plaintiff Santos could not adequately testify about his responses without the context of the questions in his native language. Santos Tr. 46:13-25.

Finally, Plaintiffs harbor significant doubts about the reliability of the interpreters Defendants hired for these depositions. Although Plaintiffs requested that Defendants arrange for an interpreter on the Central District of California's Interpreter Roster, Defendants' Counsel did not do so. Wheeler Decl. ¶¶ 15-17. Moreover, the interpreters selected by Defendants did not comply with Cal. Gov. Code § 68561(h), which requires the interpreter to state on the record "that he or she has presented to both parties the interpreter certification or registration badge issued to him or her by the Judicial Council or other documentation that verifies his or her certification or registration accompanied by photo identification." Cal. Gov. Code § 68561(h). Nor did the interpreter for Plaintiff Ramirez comply with § 68561(h)'s requirement to state his name and certification number on the record until asked by Plaintiffs' Counsel mid-way through the deposition. Ramirez Tr. 27:7-11; Wheeler Decl. ¶ 20. The interpreters also arrived several hours late, resulting in hours-long delays to the depositions and causing substantial inconvenience to Plaintiffs. *Id.* ¶¶ 18-19. Plaintiffs' testimony should be viewed in light of the interpreters' lack of professionalism and the complex topics involved in this ERISA action.

### 3. *Plaintiffs Have Sufficiently Supervised Their Counsel.*

Defendants attack Plaintiffs' adequacy as class representatives because they purportedly failed to supervise their Counsel. Class Opp'n at 18. Their arguments

distort the relevant facts and contradict numerous decisions in the Ninth Circuit rejecting similar arguments that ERISA plaintiffs "appear to have 'abdicated all responsibility in the litigation to their counsel.'" *In re First Am. Corp. ERISA Litig.*, 258 F.R.D. at 619 (citation omitted). Indeed, "[t]here is no merit to this claim here" given that there "is at least some evidence that the Plan Participants are knowledgeable about and prepared to prosecute this action." *Id.* at 619-20.[7]

"Objections to adequacy based on a named representative's alleged ignorance are disfavored. Even if the named plaintiffs have relied heavily on the advice of attorneys and others, it is hardly a badge of inadequacy to seek help from those with relevant expertise, particularly in a complex case like this one." *In re Facebook Biometric Info. Privacy Litig.*, 326 F.R.D. 535, 543 (N.D. Cal. 2018) (citations omitted), *aff'd by Patel v. Facebook, Inc.*, 932 F.3d 1264 (9th Cir. 2019). Courts generally find supervision adequate where the plaintiffs have "a rudimentary understanding of the nature of the present action and they have a demonstrated willingness to assist counsel in the prosecution of the litigation." *Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.*, 209 F.R.D. 159, 165 (C.D. Cal. 2002).

Defendants' attack on Plaintiffs' reliance on Counsel misses the mark. Courts recognize that ERISA claims "involve technical financial decisions affecting billions of dollars in assets and Plan fiduciaries' compliance with the requirements of ERISA. It is understandable, and excusable, that Plaintiffs, who are not lawyers or investment professionals, may have had difficulty answering questions about the claim." *Khan v. Bd. of Dirs. of Pentegra Defined Contribution Plan*, 2023 WL

---

[7] In *Bodner v. Oreck Direct, LLC*, cited in Class Opp'n at 18, the court declined to find adequacy where the "[p]laintiff did not read the complaint before it was filed," and counsel had a known "practice of selecting stand-in plaintiffs, even ones who are inappropriate." 2007 WL 1223777, at*1, *3 (N.D. Cal. Apr. 25, 2007). Such circumstances are clearly absent here.

6256204, at *5 (S.D.N.Y. Sept. 26, 2023) (citation omitted); *see also Stoffels v. SBC Comms.*, 238 F.R.D. 446, 454-55 (W.D. Tex. 2006) ("[C]ivil litigation under ERISA is a complex undertaking, and in complex litigation contexts, . . . class representatives need not be legal scholars, and are entitled to rely on counsel." (citation omitted)). Moreover, "adoption of defendant's position would convert the class action into a device usable only by individuals with such a degree of sophistication that they would be capable of acting as their own attorneys." *Moeller v. Taco Bell Corp.*, 220 F.R.D. 604, 612 (N.D. Cal. 2004) (citation omitted), *amended in part*, 2012 WL 3070863 (N.D. Cal. July 26, 2012); *Thomas & Thomas Rodmakers*, 209 F.R.D. at 165. In addition to their active participation in discovery propounded on them and sitting for deposition, Messrs. Ramirez and Santos are in regular contact with their attorneys and have affirmatively reached out to their Counsel asking for status updates on the case. Wheeler Decl. ¶ 3.

Defendants fail to link their lengthy recitation of this action's procedural history to any relevant Rule 23 requirement. For example, Defendants make much of Plaintiffs' Counsel's filing of a previous action on behalf of an individual who mistakenly believed he had worked enough years to be vested and alleged errors in civil cover sheets.[8] But none of the procedural issues recounted by Defendants come close to the concerns articulated by the court in *Navarro v. ExxonMobil Corp.*, where counsel was unable to certify a class, despite numerous attempts, in a case that had been pending for five years. 2022 WL 22248790, at *1 (C.D. Cal. July 5, 2022). This case has been pending for less than a year and, to date, the Named Plaintiffs have defeated a motion to dismiss and completed class discovery in a timely fashion. And

---

[8] Defendants' argument on the civil cover sheet seems based on the mistaken premise that business entities are residents only of the place where they are headquartered. *See* Class Opp'n at 16 n.4. As Plaintiffs have previously explained to Defendants, this is incorrect. *See* 28 U.S.C. § 1391(d). In any event, Defendants waited nearly nine months before mentioning any issue with the civil cover sheet.

where the proposed class representatives and their counsel "proffered intelligible arguments in an effort to certify the proposed class," there is "no legitimate question regarding named plaintiff and counsel's adequacy." *White v. Gen. Motors*, 2023 WL 3278460, at *12 (D. Colo. May 5, 2023) (cleaned up) (finding named plaintiff and their counsel adequate under Rule 23(a)(4)).

### C.    Defendants' Claim that Ramirez Lacks Credibility Fails.

Defendants further challenge Mr. Ramirez's adequacy as a class representative by claiming that he lacks credibility, even though such challenges "are rarely upheld" and succeed only when there are "confirmed examples of past dishonesty such as fraud or a criminal conviction, or the proposed representative had given inconsistent testimony on material issues in the litigation," neither of which are the case here. 1 Newberg and Rubenstein on Class Actions § 3:68 (6th ed.). "If the credibility issues are only general in nature and do not relate directly to material issues in the lawsuit, courts will not find a lead plaintiff inadequate." *Jovel v. Boiron, Inc.*, 2014 WL 1027874, at *3 (C.D. Cal. Feb. 27, 2014).

Defendants' argument that Mr. Ramirez is inadequate relies on cases about plaintiffs with severe credibility issues relevant to issues in the case. *See Kaplan v. Pomerantz*, 132 F.R.D. 504, 509-510 (N.D. Ill. 1990) (finding a named plaintiff inadequate because of testimony he gave in deposition that the court concluded was false). In *CE Design Ltd. v. King Architectural Metals, Inc.*, the Court questioned the adequacy of a TCPA named plaintiff whose "business model combines selling civil engineering services with filing class action junk-fax suits." 637 F.3d 721, 724, 726 (7th Cir. 2011). At deposition, the plaintiff representative from *CE Design* gave noncredible testimony that he was unaware that he had expressly authorized the faxes. The Court was concerned with the credibility problem not because a named plaintiff must be perfect, but rather because the credibility issue related to an individual defense. Indeed, the court warned defendants not "to try to derail

legitimate class actions by conjuring up trivial credibility problems." *Id.* at 728. "For an assault on the class representative's credibility to succeed, the party mounting the assault must demonstrate that there exists *admissible* evidence so severely undermining plaintiff's credibility that a fact finder might reasonably focus on plaintiff's credibility, to the detriment of the absent class members' claims." *Id.* (emphasis added) (quoting Dubin v. Miller, 132 F.R.D. 269, 272 (D.Colo.1990)); *see Hilsley v. Ocean Spray Cranberries, Inc.*, 2018 WL 6300479, at *9 (S.D. Cal. Nov. 29, 2018) (rejecting credibility challenge to named plaintiff because the issue was "merely background information and not a key element of a cause of action"). Defendants' challenge does not meet this standard because none of the evidence they cite is relevant to any claim or defense in this case and is thus not admissible. Fed. R. Evid. 401.

To begin with, Mr. Ramirez's interactions with Maria Orozco have no relevance to the claims or defenses here. Ms. Orozco, an HR Manager at AMPAM, called Mr. Ramirez to her office and asked him about this lawsuit outside the presence of his Counsel, despite presumably knowing that he was represented in this lawsuit. Ramirez Tr. 36:16-40:18. Mr. Ramirez was under no legal compulsion to be truthful with Ms. Orozco, and it is unsurprising, given the power disparity between them, that Mr. Ramirez may have minimized or denied his involvement in litigation against his current employer. In fact, the interaction caused Mr. Ramirez to worry that his participation in the lawsuit was jeopardizing his job. *See* Ex. 6 (Oct. 24, 2024 Letter to S. Adams) ("Mr. Ramirez felt intimidated during the meeting with higher level employees about his participation in the lawsuit.").

Next, Defendants suggest that because Mr. Ramirez, a Spanish-speaking plumber who makes about $███ per year, is an inadequate class representative because he owes a few thousand dollars to the Internal Revenue Service. Again, Mr. Ramirez's modest debt would not be admissible at trial. And Mr. Ramirez's financial

circumstances are representative of the class he seeks to represent. AMPAM's data shows that the median salary of class members is less than $█████, and over half of the participants are plumbers or other blue-collar workers. Wheeler Decl. ¶ 7. To the extent Defendants argue that Mr. Ramirez lied under oath when he said he had not been delinquent on his taxes, Counsel's subsequent exchange with Mr. Ramirez makes apparent that he has a different understanding of what it means to be "delinquent:"

> Q. So when I asked you a few minutes ago if you'd ever been delinquent in your taxes, and you said, "No," why was that?
>
> A. Because I'm not delinquent with the IRS. I owe them. I know that I owe them, and I'm going to pay them.

Ramirez Tr. 57:13-18. This exchange is another example of a language barrier. As in English, "delincuente" in Spanish can mean "criminal."[9] Mr. Ramirez's testimony makes clear that he does not consider himself "delinquent" on his taxes because he is not facing any criminal charges for being behind. Being in debt, to the IRS or anyone else, is simply not a crime, either for Mr. Ramirez or for the tens of millions of others in the United States who have unpaid debts.

Lastly, Defendants imply—though they are never so bold as to explicitly argue—that Mr. Ramirez's ██████████████████ preclude him from serving as a class representative. Defendants dress up this argument as one about Mr. Ramirez's "honesty" because ████████████████████████████ ██████████████████████. Defendants cite no deposition testimony from Mr. Ramirez on the topic because, after Plaintiffs asserted that such lines of questioning were harassing, intimidating, and potentially illegal retaliation

---

[9] *See delincuente*, WordReference.com, *https://www.wordreference.com/es/en/translation.asp?spen=delincuente.*

against Mr. Ramirez for his assertion of his ERISA rights, Defendants declined to pursue such testimony. Ex. 7 (Feb. 6, 2025 email from S. Adams). Regardless, ███ ████████████ is irrelevant to this case and inadmissible, and any credibility challenge on that basis thus fails.

Substantiation for Defendants' accusations about Mr. Ramirez's dishonesty on this topic is paper-thin. Their own brief recognizes that



### III. Plaintiffs Have Satisfied Commonality and Typicality Because All Class Members Suffered the Exact Same Harm.

Defendants make a threadbare argument that Plaintiffs fail to satisfy the commonality and typicality requirements of Rule 23 by merely regurgitating their meritless conflict arguments. As described above, those arguments fail, most obviously because no such "Group 3" participants exist. More fundamentally, Defendants' Opposition does nothing to refute the numerous intra-Circuit cases holding that ERISA fiduciary claims like those Plaintiffs pursue here meet Rule 23's commonality and typicality requirements. *See* cases cited in Class Mot. at 12-15. These decisions certifying ERISA fiduciary claims recognize that commonality and typicality are satisfied because "all proposed class members participated in the same

plan, they were all owed the same duty by the plan's fiduciaries, the fiduciaries breached that duty with the same conduct, and recovery is sought on behalf of the plan as a whole." *Gamino*, 2021 WL 7081190, at *4. Plaintiffs have met Rule 23's commonality and typicality requirements.

## IV.    Plaintiffs Have Satisfied Rule 23(b).

Defendants contend Plaintiffs have not satisfied Rule 23(b), despite the weight of authority holding that ERISA actions "presents a paradigmatic example of a (b)(1) class." Class Mot. at 1 & n.1. But to do so they rely on non-binding, out-of-Circuit authority for the proposition that a class may not be certified under Rule 23(b)(1)(A) over a defendant's objection. Class Opp'n at 23. Those cases were wrongly decided because they effectively invalidate Rule 23(b)(1)(A) entirely, simply because defendants oppose class certification. While there is no binding Ninth Circuit authority on this issue, Defendants overlook that a court in this district expressly rejected this precise argument in another ERISA case. *See In re First Am. Corp. ERISA Litig.*, 258 F.R.D. at 622 n.11. As that decision recognized, "clearly all litigants as well as the courts benefit from consistency in the adjudication of claims of individual class members." *Id.* (quoting *Ingles v. City of New York*, 2003 WL 402565, at *7 (S.D.N.Y. Feb. 20, 2003)).

Plaintiffs likewise satisfy Rule 23(b)(1)(B) because the Court's ruling on the legality of the two transactions will impact all plan participants who held AMPAM stock in their ESOP accounts in the same manner. Defendants once again rely on a non-existent "Group 3" of participants and assert—without citation—that class certification would somehow "extinguish the rights" of these fictional individuals. Class Opp'n at 23. This is incorrect. ERISA is fundamentally grounded in trust law, and "actions charging a breach of trust" which "similarly affect[s] the members of a large class of beneficiaries" provide a "classic example" for Rule 23(b)(1)(B) certification because "any individual adjudication by a class member disposes of, or

substantially affects, the interests of absent class members." *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 833-35 (1999). Defendants fail to dispute or even address *Ortiz* and Plaintiffs' other cited authorities, which clearly establish that Rule 23(b)(1)(B) applies here because a judgment for the named plaintiffs will "plainly affect[] the rights of all ESOP participants." *Gamino*, 2021 WL 7081190, at *6 (citation omitted).

Certification is proper if either Rule 23(b)(1)(A) or (b)(1)(B) is satisfied, and, here, certification is independently proper under both.

## V.    CONCLUSION

For the foregoing reasons, the Court should certify Plaintiffs' proposed class under Rule 23(b)(1).


DATED:        February 20, 2025        Respectfully Submitted,


By:    */s/ Ryan Wheeler*
Michelle C. Yau (DCBA #980449, MABA #657236, admitted *pro hac vice*)
*myau@cohenmilstein.com*
Ryan A. Wheeler (Cal. Bar No. 331642)
*rwheeler@cohenmilstein.com*
Allison C. Pienta (DCBA #494372, admitted *pro hac vice*)
*apienta@cohenmilstein.com*
COHEN MILSTEIN SELLERS
   & TOLL PLLC
1100 New York Ave. NW, Eighth Floor
Washington, DC 20005
Tel.: (202) 408-4600
Fax: (202) 408-4699

Eleanor Frisch (Cal. Bar No. 304408)
*efrisch@cohenmilstein.com*
Jacob T. Schutz (MNBA #0395648,

admitted *pro hac vice*)
*jschutz@cohenmilstein.com*
COHEN MILSTEIN SELLERS
 & TOLL PLLC
400 South 4th Street # 401-27
Minneapolis, MN 55415
Tel.: (202) 408-4600
Fax: (202) 408-4699

Shaun P. Martin (Cal. Bar No. 158480)
*smartin@sandiego.edu*
5998 Alcala Park, Warren Hall
San Diego, CA 92110
Telephone: (619) 260-2347
Facsimile: (619) 260-7933

*Counsel for Plaintiffs and the Proposed Class*

**L.R. 11-6.2 Certificate of Compliance**

The undersigned, counsel of record for Plaintiffs Alfredo Ramirez and Ramón Santos Castro certifies that this brief contains 6,879 words, which complies with the word limit of L.R. 11-6.1.

Dated: <u>February 20, 2024</u>           <u>*/s/ Ryan Wheeler*</u>
                                          Ryan Wheeler