1  J. CHRISTIAN NEMETH (Cal. Bar No. 222271)
   jcnemeth@mwe.com
2  **MCDERMOTT WILL & EMERY LLP**
   333 SE 2nd Avenue, Suite 4500
3  Miami, FL  33131-4336
   Telephone:  +1 305 358 3500
4  Facsimile:   +1 305 347 6500

5  JULIAN ANDRE (Cal. Bar No. 251120)
   jandre@mwe.com
6  **MCDERMOTT WILL & EMERY LLP**
   2049 Century Park East, Suite 3200
7  Los Angeles, CA  90067-3206
   Telephone:  +1 310 551 9335
8  Facsimile:   +1 310 317 7296

9  *Attorneys for Defendants Neil Brozen*
   *and Ventura Trust Company*

10

                    **UNITED STATES DISTRICT COURT**

11                  **CENTRAL DISTRICT OF CALIFORNIA**

12                  **EASTERN DIVISION AT RIVERSIDE**

13

Alfredo Ramirez et al.,                 CASE NO. 5:24-cv-01038-KK (DTBx)

14         Plaintiffs,                   **DEFENDANTS NEIL M. BROZEN**
                                         **AND VENTURA TRUST**
15                                       **COMPANY'S ANSWER TO**
       v.                                **PLAINTIFFS' FIRST AMENDED**
16                                       **CLASS ACTION COMPLAINT**
AMPAM Parks Mechanical, Inc. et al.,
17                                       **REDACTED VERSION OF**
           Defendants.                   **DOCUMENT PROPOSED TO BE**
18                                       **FILED UNDER SEAL**

19                                       *The Honorable Kenly Kiya Kato*

20

21

22

23

24

25

26

27

28

McDermott Will & Emery LLP
ATTORNEYS AT LAW
MIAMI

Pursuant to Federal Rule of Civil Procedure 12, Defendants Neil Brozen ("Brozen") and Ventura Trust Company ("Ventura"), hereby provide their Answer to the First Amended Complaint ("FAC") filed on September 13, 2024 by Plaintiffs Alfredo Ramirez, Ramón Santos Castro and Ivan Fernandez.

Except as otherwise expressly set forth below, Brozen and Ventura deny the allegations, arguments, characterization, and conclusions contained in Plaintiffs' First Amended Complaint, including any allegations contained in the headings, subheadings, and footnotes.

Brozen and Ventura explicitly deny that they are liable for any of the alleged violations the Employee Retirement Income Security Act of 1974 ("ERISA") set forth in the First Amended Complaint. Among other reasons, the AMPAM Parks Mechanical, Inc. ("AMPAM") Employee Stock Ownership Plan (the "ESOP"), paid no more than adequate consideration and fair market value for AMPAM stock during the 2019 transaction, and received no less than adequate consideration and fair market value for AMPAM stock in the 2023 transaction, as determined in good faith following a prudent investigation of the two transactions. Brozen and Ventura also explicitly deny that the ESOP and its participants suffered any losses as result of the alleged ERISA violations. To the contrary, the ESOP and its participants received immediate economic benefits as a result of the 2019 and 2023 transactions at issue in the First Amended Complaint. Plaintiffs' claims fail and they are entitled to no relief.

Brozen and Ventura expressly reserve the right to seek to amend or supplement their Answer and Affirmative Defenses as necessary or appropriate.

## ANSWER TO FIRST AMENDED COMPLAINT

## I.    INTRODUCTION

1.    Plaintiffs Alfredo Ramirez, Ramón Santos Castro and Ivan Fernandez bring this action pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, seeking plan-wide relief on behalf of the

McDermott Will & Emery LLP
Attorneys At Law
Miami

AMPAM Parks Mechanical, Inc. Employee Stock Ownership Plan (the "AMPAM ESOP" or the "ESOP") and class-wide relief on behalf of a class of similarly-situated ESOP participants and their beneficiaries as defined below.

**ANSWER:** Brozen and Ventura respond that this paragraph states legal conclusions to which no response is required. To the extent a response is required, Brozen and Ventura admit that Plaintiffs purport to bring this action under ERISA and deny the remaining allegations in this paragraph.

2. AMPAM Parks Mechanical, Inc. (the "Company" or "AMPAM") is a closely held company, employing approximately 1,000 individuals, that provides residential plumbing subcontractor services for multifamily residences.

**ANSWER:** Brozen and Ventura admit that AMPAM "provides residential plumbing subcontractor services for multifamily residences." Brozen and Ventura lack sufficient knowledge to admit or deny the remaining allegations in this paragraph.

3. Charles E. Parks III ("Buddy Parks") and his brother(s) co-founded and owned AMPAM. Buddy Parks and John D. Parks (together, "the Parks Brothers"), along with other AMPAM owners collectively liquidated their interest in AMPAM stock for $247 million in 2019. The Parks Brothers, John Mavredakis, Kushal Kapadia, and any other sellers of AMPAM stock are collectively referred to as the "Sellers" or "Seller Defendants."

**ANSWER:** Brozen and Ventura admit that Charles E. Parks III ("Buddy Parks") was one of the owners and co-founders of AMPAM and that Buddy Parks and John D. Parks (together, "the Parks Brothers") and the other AMPAM shareholders sold their interest in AMPAM to the ESOP in the 2019 (the "2019 Transaction"). Brozen and Ventura further respond that the Stock Purchase Agreement related to the 2019 Transaction (the "2019 Stock Purchase Agreement") speaks for itself and deny any allegations in this paragraph that are inconsistent with the 2019 Stock Purchase Agreement. Brozen and Ventura further respond that they lack sufficient knowledge as to who Plaintiffs' refer to as Buddy Parks "brother(s)" to admit or deny that "his

BROZEN AND VENTURA'S ANSWER TO
PLAINTIFFS' FIRST AMENDED
COMPLAINT

McDermott Will & Emery LLP
Attorneys At Law
Miami

brother(s) co-founded and owned AMPAM."  Brozen and Ventura deny any remaining allegations in this paragraph.

4.    To accomplish the sale, the Parks Brothers (who along with other Board members controlled AMPAM) created a retirement plan, the AMPAM ESOP, to purchase their AMPAM stock at an inflated price.

**ANSWER:** Brozen and Ventura respond that this paragraph states legal conclusions to which no response is required.  To the extent a response is required, Brozen and Ventura admit that the ESOP was established and that the ESOP purchased the AMPAM stock in the 2019 Transaction.  Brozen and Ventura deny the remaining allegations in this paragraph.

5.    Plaintiffs and other employee-participants (whose ESOP retirement accounts were used to purchase 100% of AMPAM stock from the Sellers) were not given an opportunity to negotiate or otherwise take part in the determination of the price that they paid for AMPAM stock.  They only found out about the ESOP Transaction after the ESOP Transaction was completed and the $247 million purchase price was approved, which left the ESOP deeply in debt and allowed the Sellers to cash out their interest in AMPAM.

**ANSWER:** Brozen and Ventura admit that the ESOP purchased 100% of the AMPAM stock in the 2019 Transaction.  Brozen and Ventura lack sufficient knowledge to admi or deny what the participants knew.  Brozen and Ventura deny the remaining allegations in this paragraph.

6.    In fact, rather than involving the employees whose retirement accounts would be used to buy AMPAM, the Parks Brothers hand-picked Neil Brozen and his company, Ventura Trust Company ("Ventura") (together, the "Trustee") as the Trustee of the ESOP.  The Trustee was supposed to be an independent third party acting with undivided loyalty to the ESOP and its participants.  However, and as discussed *infra*, the Parks Brothers along with other Board members agreed that the Trustee could ***not negotiate at all*** on behalf of the ESOP when purchasing AMPAM from the Sellers.  In

BROZEN AND VENTURA'S ANSWER TO
PLAINTIFFS' FIRST AMENDED
COMPLAINT

McDermott Will & Emery LLP
Attorneys At Law
Miami

addition, the Board members maintained control over AMPAM by, among other things, changing its bylaws to limit the Trustee's ability to sell AMPAM in the future without the Board amending the bylaws again to bless any proposed sale.  Defendants also sett up a ESOP governance structure that allowed the Board to fire the Trustee if it did not carry out the wishes of the Parks Brothers and other Board members.

**ANSWER:** Brozen and Ventura respond that the Trust Agreement dated June 24, 2019 (the "Trust Agreement") and the Fiduciary Services Agreement dated April 17, 2019 (the "2019 FSA") related to the 2019 Transaction speak for themselves and deny any allegations in this paragraph that are inconsistent with the Trust Agreement and the 2019 FSA.  Brozen and Ventura further respond that this paragraph states legal conclusions to which no response is required.  To the extent a response is required, Brozen and Ventura admit that Brozen served as the ESOP's trustee during the relevant time period and deny that Ventura served as the ESOP's trustee.  Brozen and Ventura deny the remaining allegations in this paragraph.

7.  The Parks Brothers further cemented their control over the Trustee by agreeing that AMPAM would indemnify the Trustee for all ERISA fiduciary liability in connection with the ESOP Transaction.  Specifically, Buddy Parks signed the Trust Agreement on behalf of AMPAM, whereby he agreed that:

> [T]he Company shall indemnify the Trustee for any loss, cost, expense or other damage, including attorney's fees, suffered by the Trustee and resulting from or incurred with respect to any legal proceedings related in any way to the performance of services by the Trustee pursuant to the Plan [ESOP].

The indemnification payments are paid from the Company's assets (after insurance is exhausted), which were owned by the ESOP from at least 2019 until 2023. This form of exculpation is illegal and void under ERISA. *See* ERISA § 410(a), 29 U.S.C. § 1110(a); *Johnson v. Couturier*, 572 F.3d 1067, 1080 (9th Cir. 2009); *Hurtado v. Rainbow Disposal Co.*, 2018 WL 3372752, at \*15-16 (C.D. Cal. July 9, 2018).

BROZEN AND VENTURA'S ANSWER TO PLAINTIFFS' FIRST AMENDED COMPLAINT

McDermott Will & Emery LLP
Attorneys At Law
Miami

**ANSWER:** Brozen and Ventura respond that the Trust Agreement speaks for itself and deny any allegations in this paragraph that are inconsistent with the Trust Agreement. Brozen and Ventura further respond that this paragraph states legal conclusions to which no response is required. To the extent a response is required, Brozen and Ventura deny the allegations in this paragraph.

8.    The Sellers, other Board members at that time, and the Trustee, took several actions to cause the newly-created ESOP to buy AMPAM from the Sellers at an inflated price of $247 million in a single integrated transaction (referred to as the "ESOP Transaction"). Then they sold AMPAM back to the Parks Brothers a few years later for less than the ESOP paid (referred to as the "2023 Resale Transaction").

**ANSWER:** Brozen and Ventura respond that the 2019 Stock Purchase Agreement and the 2023 Stock Purchase Agreement related to the 2023 sale of the ESOP (the "2023 Stock Purchase Agreement") speak for themselves and deny any allegations in this paragraph that are inconsistent with the 2019 Stock Purchase Agreement or the 2023 Stock Purchase Agreement. Brozen and Ventura further respond that this paragraph states legal conclusions to which no response is required. To the extent a response is required, Brozen and Ventura admit that the ESOP purchased the AMPAM stock in the 2019 Transaction and that the ESOP sold its AMPAM stock in 2023 (the "2023 Transaction"). Brozen and Ventura deny the remaining allegations in this paragraph.

9.    There is no recognized market for private stock like AMPAM's, and the value of the stock is determined based on an appropriate valuation report or stock appraisal. The valuation documents related to AMPAM's stock were controlled by the Seller Defendants.

**ANSWER:** Brozen and Ventura admit that the value of private stock can be determined based on a valuation or appraisal. Brozen and Ventura deny the remaining allegations in this paragraph.

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MIAMI

- 5 -    BROZEN AND VENTURA'S ANSWER TO
PLAINTIFFS' FIRST AMENDED
COMPLAINT

10.    Plaintiffs and other employee-participants were not given access to the valuation reports underlying the value of the AMPAM stock in their retirement accounts. Based on Defendants' duty to disclose all relevant information that bears upon their retirement investments in AMPAM, Mr. Ramirez and other employee-participants asked Defendants to provide the valuation reports prior to filing this lawsuit. However, Defendants refused to do so.

**ANSWER:** Brozen and Ventura lack sufficient knowledge to admit or deny the allegations in this paragraph.

11.    Prior to the ESOP Transaction, the Parks Brothers and John G. Mavredakis (together the "Selling Board Members"), pre-negotiated that they would keep their Board seats and that Buddy Parks would remain Chairman of the Board after the ESOP Transaction. This allowed them to retain control over AMPAM's strategy, direction, and other fundamental business decisions. By pre-negotiating that they would keep control of AMPAM's Board, the Selling Board Members retained the power to amend the Company's bylaws and the ESOP's governing documents to determine the Company's strategy and the direction of the business, to sell the Company in future mergers or corporate transactions, and to determine the amount and timing of dividends and stock distributions.

**ANSWER:** Brozen and Ventura admit that the Parks Brothers and John G. Mavredakis held Board seats after the 2019 Transaction and that Buddy Parks continued as Chairman of the Board after the 2019 Transaction. Brozen and Ventura further respond that the Company's bylaws and the ESOP's governing documents post-2019 Transaction speak for themselves (the "Governing Documents") and deny any allegations in this paragraph that are inconsistent with the Governing Documents. Brozen and Ventura also respond that the remaining allegations in this paragraph state legal arguments and conclusions to which no response is required. To the extent a response is required, Brozen and Ventura deny the remaining allegations in this paragraph.

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MIAMI

12.     As a result of the pre-agreement that the Selling Board Members would retain control over the Company's strategic direction and management. The purchase price thus should have reflected in a steep discount for the lack of control over the Company.    But it did not.

**ANSWER:** Brozen and Ventura deny the allegations in this paragraph.

13. The Board also amended the AMPAM bylaws to add sale restrictions that would limit the Trustee's ability to sell the Company.  The purchase price thus should have reflected in a discount for lack of marketability.  But it did not.

**ANSWER:** Brozen and Ventura respond that the AMPAM bylaws speak for themselves and deny any allegations to the extent they are inconsistent with the AMPAM bylaws.  Brozen and Ventura deny the remaining allegations in this paragraph.

14.     In fact, the Company's bylaws after the ESOP Transaction promised that the post-Transaction Board would have four members, one of whom was a non-employee of AMPAM, and that within 9 months the Company would appoint an independent fifth director, with two more independent directors to be added within two years of the Transaction.  However, three of the four initial Board members were Sellers (Charles Parks, Buddy Parks, and John Mavredakis), while the fourth director was AMPAM Chief Financial Officer James C. Wright III, and the later-added fifth director who was *not* independent—AMPAM CEO Kevin Dow.

**ANSWER:** Brozen and Ventura respond that the AMPAM bylaws post-2019 Transaction speak for themselves and deny any allegations that are inconsistent with the AMPAM bylaws. Brozen and Ventura deny any remaining allegations in this paragraph.

15.     The $247 million the ESOP paid was more than the fair market value of AMPAM stock because the Trustee and the stock valuation the Trustee relied on did not adequately take into account that the Selling Board Members kept control over AMPAM in many material respects, including the strategic decisions of the Company.

BROZEN AND VENTURA'S ANSWER TO PLAINTIFFS' FIRST AMENDED COMPLAINT

McDermott Will & Emery LLP
Attorneys At Law
Miami

**ANSWER:** Brozen and Ventura respond that this paragraph states legal conclusions to which no response is required.  To the extent a response is required, Brozen and Ventura deny the allegations in this paragraph. Brozen further responds that the 2019 Transaction was for fair market value.

16.    As an example of their retained control, the Parks Brothers retained a significant interest in AMPAM after 2019 even though Defendants reported to the government and employees that AMPAM became 100% ESOP owned in July 2019. Indeed, a press release published in 2023 indicated that, after the ESOP Transaction, the Parks Brothers kept a "significant ownership stake in [AMPAM]."  Indeed, as a result of the control they retained, the Parks Brothers engineered the sale of AMPAM's stock (again) just a few years later after the ESOP purchased it. The Parks Brothers reported that AMPAM was sold to a newly created shell corporation, Canyonlands Purchaser LLP, which was owned by Buddy Parks and Gemspring Capital Management, LLC ("Gemspring"), a private equity group, and the ESOP was not even mentioned as the owner in 2023.

**ANSWER:** Brozen and Ventura respond that the 2019 Stock Purchase Agreement and the 2023 Stock Purchase Agreement speak for themselves and deny any allegations in this paragraph that are inconsistent with the 2019 Stock Purchase Agreement and the 2023 Stock Purchase Agreement.  Brozen and Ventura deny the remaining allegations in this paragraph.

17.    The October 4, 2023 press release announcing the sale of AMPAM back to Buddy Parks and Gemspring (through the shell corporation was created in April of 2023) **does not even mention the ESOP** as an owner of AMPAM stock in October of 2023.  Rather, the press release states, "Co-founder Buddy Parks . . . will remain as Chairman and **maintain** a significant ownership stake in the Company . . . ." *Id.* (emphasis added).

BROZEN AND VENTURA'S ANSWER TO
PLAINTIFFS' FIRST AMENDED
COMPLAINT

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MIAMI

**ANSWER:** Brozen and Ventura respond that the 2019 Stock Purchase Agreement and the 2023 Stock Purchase Agreement speak for themselves and deny any allegations in this paragraph that are inconsistent with the 2019 Stock Purchase Agreement and the 2023 Stock Purchase Agreement. Brozen and Ventura deny the remaining allegations in this paragraph.

18. Thus, Buddy Parks publicly acknowledged that he never gave up his ownership of AMPAM in 2019 and that he retained a significant ownership stake in AMPAM from 2019 to 2023, when it was supposedly 100% owned by the ESOP. John D. Parks was identified as a director of AMPAM in 2019 and 2022 filings with the State of Delaware. On information and belief, John Parks also retained an ownership interest in the ESOP from 2019 to 2023.

**ANSWER:** Brozen and Ventura lack sufficient information to admit or deny the allegations in this paragraph regarding Buddy Parks public statements and AMPAM's filing with the State of Delaware. Brozen and Ventura deny the remaining allegations in this paragraph.

19. The Parks Brothers were able to sell AMPAM (along with other Sellers) for $247 million dollars, yet retained control of AMPAM and a hidden ownership interest in AMPAM. The Parks Brothers, who collectively controlled AMPAM from 2019 on, used this control to orchestrate its sale back to themselves through a shell corporation set up with a private equity firm in 2023: Canyonlands Purchaser, LLC.

**ANSWER:** Brozen and Ventura respond that this paragraph states legal conclusions and arguments to which no response is required. To the extent a response is required, Brozen and Ventura deny the remaining allegations in this paragraph.

20. In addition to the fact that the ESOP paid too much for AMPAM stock, the financing terms were unreasonable, imprudent and not in the interest of Plaintiffs or other ESOP participants. According to Department of Labor filings, because the ESOP did not have anywhere close to the $247 million the Sellers received for

BROZEN AND VENTURA'S ANSWER TO
PLAINTIFFS' FIRST AMENDED
COMPLAINT

McDermott Will & Emery LLP
Attorneys At Law
Miami

AMPAM stock, the ESOP had to borrow $240.3 million, or 97.3% of the purchase price. Of the total $240 million in debt, the ESOP borrowed $157.5 million from the Sellers themselves (which was guaranteed by the Company) with unreasonable financing terms. The remainder was financed through an external loan obtained by the Company.

**ANSWER:**  Brozen and Ventura respond that the Department of Labor filings speak for themselves and deny any allegations in this paragraph to extent they are inconsistent with the Department of Labor filings.  Brozen and Ventura further respond that this paragraph states legal conclusions to which no response is required.  To the extent a response is required, Brozen and Ventura deny the remaining allegations in this paragraph.

21.    This left AMPAM responsible for all $240 million in ESOP Transaction debt and required the Company to divert an estimated $18 million of its cash flow towards annual loan payments following the Transaction. This crippling interest would hamper the Company's ongoing operations and profitability. In short, the debt terms and cash flow requirements needed to pay the debt were not reasonable nor in the best interest of the ESOP participants.

**ANSWER:**  Brozen and Ventura respond that this paragraph states legal conclusions and arguments to which no response is required.  To the extent a response is required, Brozena and Ventura deny the allegations in this paragraph.

22.    Defendants together orchestrated and carried out the ESOP Transaction and the Resale Transaction to serve the Sellers' interests while the ESOP participants' interests were harmed. The ESOP obtained little control over a company (AMPAM) that was severely limited in terms of marketability to third party buyers and whose operations were impaired by the enormous debt servicing burden. As a result, the long-term value of AMPAM stock was substantially in doubt.

**ANSWER:** Brozena and Ventura deny the allegations in this paragraph.

BROZEN AND VENTURA'S ANSWER TO PLAINTIFFS' FIRST AMENDED COMPLAINT

McDermott Will & Emery LLP
Attorneys At Law
Miami

23.    Ultimately, the ESOP Transaction allowed the Parks Brothers to sell a non-controlling interest in AMPAM to the ESOP participants for significantly more than such an interest was worth because the Parks Brothers did not give up full control over AMPAM.

**ANSWER:** Brozen and Ventura deny the allegations in this paragraph.

24.    As noted, just four years after the ESOP Transactions, the Parks Brothers engineered the sale of AMPAM's stock (again) back to Buddy Parks and Gemspring through the 2023 Resale Transaction. As mentioned above, the Parks Brothers pretended during the 2023 Resale Transaction that the ESOP never existed by noting in a press release that "Co-founder Buddy Parks . . . will remain as Chairman and maintain a significant ownership stake in the Company . . . ." *Id.* (emphasis added).

**ANSWER:** Brozen and Ventura admit that the ESOP sold its AMPAM stock in the 2023 Transaction.  Brozen and Ventura deny the remaining allegations in this paragraph.

25.    In two transactions across four years, the Parks Brothers acted as a seller to the ESOP, a buyer from it, and a fiduciary with ultimate responsibility of ensuring the fairness of both of those transactions. Instead, they enriched themselves greatly but caused significant losses to the ESOP.

**ANSWER:** Brozen and Ventura respond that this paragraph state legal conclusions to which no response is required.  To the extent a response is required, Brozen and Ventura admit that the Parks Brothers sold their interest in AMPAM in the 2019 Transaction and deny the remaining allegations.  Brozen further responds that the sale of AMPAM in the 2019 Transaction and in the 2023 Transaction was for fair market value and that the ESOP participants received an immediate economic benefit in both Transactions.

26.    From at least 2010 to present, the Parks Brothers have continuously remained on the Board of Directors, illustrating how their control over the Company continued uninterrupted despite the sales to the ESOP and to Canyonlands.

- 11 -    BROZEN AND VENTURA'S ANSWER TO
PLAINTIFFS' FIRST AMENDED
COMPLAINT

**ANSWER:** Brozen and Ventura lack sufficient knowledge to admit or deny that the Parks Brothers have served on the AMPAM Board "from at least 2010 to present." Brozen and Ventura deny the remaining allegations in this paragraph.

27.    Defendants' actions as outlined herein harmed the ESOP and caused Plaintiffs and all other ESOP participants to suffer significant losses to their ESOP retirement savings.

**ANSWER:** Brozen and Ventura respond that this paragraph state legal conclusions to which no response is required.  To the extent a response is required, Brozen and Ventura deny the allegations in this paragraph.  Brozen further responds that the ESOP participants received an immediate economic benefit as a result of both the 2019 and 2023 Transactions.

28.    Plaintiffs bring this action to recover the losses suffered by the ESOP and the participants and beneficiaries of the ESOP, to obtain other equitable and remedial relief as provided by ERISA, and to otherwise remedy Defendants' prohibited transactions and fiduciary breaches in violation of ERISA as outlined herein.

**ANSWER:** Brozen and Ventura respond that this paragraph state legal conclusions to which no response is required.  To the extent a response is required, Brozen and Ventura admit that Plaintiffs bring this action for purported losses to the ESOP and its participants and for purported prohibited transactions and purported fiduciary breaches under ERISA, and deny the remaining allegations.

## II.    JURISDICTION AND VENUE

29.    **Subject Matter Jurisdiction.** This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and ERISA § 502(a), 29 U.S.C. § 1132(a).

**ANSWER:** Brozen and Ventura respond that this paragraph state legal conclusions to which no response is required.  To the extent a response is required, Brozen and Ventura admit the allegations in this paragraph.

30.    **Personal Jurisdiction.** This Court has personal jurisdiction over Defendants because they transact business in, and have significant contacts with, this

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MIAMI

District, and because ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2) provides for nationwide service of process.

**ANSWER:** Brozen and Ventura respond that this paragraph state legal conclusions to which no response is required. To the extent a response is required, Brozen and Ventura deny the allegations with respect to themselves. Brozen and Ventura lack sufficient knowledge to admit or deny the allegations with respect to the other Defendants.

31.    **Venue**. Venue is proper in this District and this Division because AMPAM Parks Mechanical, Inc. and other Defendants may be found in this District and this Division. ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2). AMAMP conducts business operations and employs employees found in this District and Division.

**ANSWER:** Brozen and Ventura respond that this paragraph state legal conclusions to which no response is required. To the extent a response is required, Brozen and Ventura deny the allegations with respect to themselves. Brozen and Ventura lack sufficient knowledge to admit or deny the allegations with respect to the other Defendants.

## III.    PARTIES

### A. Plaintiff Alfredo Ramirez

32. Plaintiff Alfredo Ramirez is a current employee of AMPAM, who has worked for AMPAM since approximately 2018. Mr. Ramirez was a participant in the ESOP as defined by ERISA § 3(7), 29 U.S.C. § 1002(7). Mr. Ramirez was vested in the ESOP and received a payment when the ESOP was terminated in 2023.

**ANSWER:** Brozen and Ventura lack sufficient knowledge to admit or deny the allegations in this paragraph. Brozen and Ventura further respond that this paragraph states legal conclusions to which no response is required. To the extent a response is required, Brozena and Ventura deny the allegations in this paragraph.

33.    Pursuant to California Labor Code § 1198.5, counsel requested personnel files for Plaintiff Alfredo Ramirez and other represented parties (including Wilis

McDermott Will & Emery LLP
Attorneys At Law
Miami

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MIAMI

Barrios, who brought a prior action alleging similar claims) in writing. Defendants failed to provide the requested documents within the 30 days of receipt of Plaintiff Ramirez's request as required by California Labor Code § 1198.5.

**ANSWER:** Brozen and Ventura deny that Plaintiffs requested "personnel files for Plaintiff Alfredo Ramirez and other represented parties" from Brozen or Ventura. Brozen and Ventura lack sufficient knowledge to admit or deny the allegations with respect to the other Defendants.  Brozen and Ventura also respond that in this paragraph states legal conclusions to which no response is required.  To the extent a response is required, Brozen and Ventura deny the remaining allegations in this paragraph.

**B. Plaintiff Ramón Santos Castro**

34. Plaintiff Ramón Santos Castro is a former employee of AMPAM who worked at AMPAM from approximately 2022 to 2023.  Mr. Castro was a participant in the ESOP as defined by ERISA § 3(7), 29 U.S.C. § 1002(7).  Mr. Castro was vested in the ESOP and received a payment when the ESOP was terminated in 2023.

**ANSWER:** Brozen and Ventura lack sufficient knowledge to admit or deny the allegations in this paragraph.  Brozen and Ventura further respond that this paragraph states legal conclusions to which no response is required.  To the extent a response is required, Brozena and Ventura deny the allegations in this paragraph.

**C. Plaintiff Ivan Fernandez**

35. Plaintiff Ivan Fernandez is a former employee of AMPAM who worked at AMPAM from approximately 2003 to 2014 and from 2017 to 2024.  Mr. Fernandez was a participant in the ESOP as defined by ERISA § 3(7), 29 U.S.C. § 1002(7). Mr. Fernandez was vested in the ESOP and received a payment when the ESOP was terminated in 2023.

**ANSWER:** Brozen and Ventura lack sufficient knowledge to admit or deny the allegations in this paragraph.  Brozen and Ventura further respond that this paragraph states legal conclusions to which no response is required.  To the extent a response is required, Brozena and Ventura deny the allegations in this paragraph.

**D.    Defendant AMPAM Parks Mechanical, Inc.**

36.    Defendant AMPAM Parks Mechanical, Inc. is a multifamily residential plumbing subcontractor that maintains operations and employs individuals (approximately 1,000) throughout California.    AMPAM may be found in Riverside and San Bernadino counties.  It conducts its business operations (including providing plumbing and mechanical contracting services) in both Riverside and San Bernadino counties.

**ANSWER:** Brozen and Ventura admit that AMPAM is a multifamily residential plumbing subcontractor that maintains operations and employs individuals throughout California. Brozen and Ventura lack sufficient knowledge to admit or deny the remaining allegations in this paragraph.

37.    ERISA provides:

> Every employee benefit plan shall be established and maintained pursuant to a written instrument. Such instrument shall provide for one or more named fiduciaries who jointly or severally shall have authority to control and manage the operation and administration of the plan.

ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1).

**ANSWER:** Brozen and Ventura respond that ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1) speaks for itself and deny any allegations in this paragraph that are inconsistent with ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1).

38.    AMPAM is or was the current or former employer of all ESOP participants.

**ANSWER:** Brozen and Ventura lack sufficient knowledge to admit or deny the allegations in this paragraph.

39.    The written instrument(s) according to which the ESOP was established and maintained (hereinafter referred to as the "ESOP Plan Document") provide that the Company is a "Named Fiduciary" with authority to control and manage the administration of the ESOP other than the responsibilities expressly delegated to the

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MIAMI

- 15 -    BROZEN AND VENTURA'S ANSWER TO
PLAINTIFFS' FIRST AMENDED
COMPLAINT

Trustee in the Plan Document. Because the Directors (i.e., members of the Board of Directors) have all the powers and responsibility of Company, they have the responsibilities and duties of the Company as the Named Fiduciary.

**ANSWER:** Brozen and Ventura respond that the ESOP Plan Document speaks for itself and deny any allegations in this paragraph that are inconsistent with ESOP Plan Document. Brozen and Ventura deny any remaining allegations in this paragraph.

40.    The ESOP Plan Document states that AMPAM (and the Board members through whom AMPAM acts) have the power and duty to "review[] the performance of the Trustee with respect to the Trustee's administrative duties, responsibilities, and obligations under the Plan and Trust Agreement."

**ANSWER:** Brozen and Ventura respond that the ESOP Plan Document speaks for itself and deny any allegations in this paragraph that are inconsistent with ESOP Plan Document.  Brozen and Ventura deny any remaining allegations in this paragraph.

41.    The Trust Agreement states that the Company (acting through its Board members) may terminate the Trustee with 30 days' written notice without cause.

**ANSWER:** Brozen and Ventura respond that the Trust Agreement speaks for itself and deny any allegations in this paragraph that are inconsistent with the Trust Agreement. Brozen and Ventura deny any remaining allegations in this paragraph.

42.    Accordingly, AMPAM is an ERISA fiduciary within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A) because it had/has discretionary control over the ESOP and the ESOP assets and it exercised control over ESOP assets.

**ANSWER:** Brozen and Ventura respond that this paragraph states legal conclusions to which no response is required.  To the extent a response is required, Brozen and Ventura respond that they lack sufficient knowledge to admit or deny the allegations in this paragraph. Brozen and Ventura deny any remaining allegations in this paragraph.

43.    The ESOP Plan Document states that AMPAM has the power and duty to "review[] the performance of the Trustee with respect to the Trustee's administrative duties, responsibilities, and obligations under the Plan and Trust Agreement."

**ANSWER:** Brozen and Ventura respond that the ESOP Plan Document speaks for itself and deny any allegations in this paragraph that are inconsistent with ESOP Plan Document.  Brozen and Ventura deny any remaining allegations in this paragraph.

44.    At all relevant times, AMPAM acted through its Board members, and the Sellers who owned and controlled AMPAM.  Indeed, the Plan Document recognizes that AMPAM may delegate its fiduciary responsibilities to members of AMPAM's Board of Directors.

**ANSWER:** Brozen and Ventura respond that the ESOP Plan Document speaks for itself and deny any allegations in this paragraph that are inconsistent with ESOP Plan Document. Brozen and Ventura deny any remaining allegations in this paragraph.

### E.    The Sellers/Seller Defendants

45. Defendant Charles E. Parks III ("Buddy") is the co-founder of AMPAM and has run AMPAM with his brothers and other Board members since approximately the late 1990s.  Before and after the ESOP Transaction, Buddy Parks has also served as the Chief Executive Officer ("CEO") and Chairman of the Board of AMPAM and, along with his brothers, controlled AMPAM's strategic decisions.  According to a document AMPAM filed with the California Secretary of State and publicly available information, Buddy Parks remains the CEO and Chairman of the Board of AMPAM.

**ANSWER:** Brozen and Ventura admit that Buddy Parks is a co-founder of AMPAM and that Buddy Parks has served as the CEO and Chairman of the AMPAM Board.  Brozena and Ventura further respond that they lack sufficient knowledge to admit or deny the remaining allegations in this paragraph. Brozen and Ventura deny any remaining allegations in this paragraph.

46.    Prior to and after the ESOP Transaction, Buddy Parks was a named fiduciary because, as alleged below, he was/is the Chairman of the Company's Board

McDermott Will & Emery LLP
Attorneys At Law
Miami

from at least 2010 to the present and, in the ESOP governing documents, the Board was given express fiduciary powers over ESOP administration, including the power to appoint or replace the ESOP Trustee. *See* ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

**ANSWER:** Brozen and Ventura respond that the ESOP governing documents speak for themselves and deny any allegations in this paragraph that are inconsistent with the ESOP governing documents. Brozen and Ventura further respond that this paragraph states legal conclusion to which no response is required. To the extent a response is required, Brozen and Ventura deny the remaining allegations in this paragraph.

47. Prior to and after the ESOP Transaction, Buddy Parks was a functional fiduciary to the ESOP because he acted for AMPAM by, among other things, signing the ESOP Trust Agreement which appointed Brozen and Ventura to be the ESOP Trustee. As a result, Defendant Buddy Parks had and has discretionary control over the ESOP and indeed exercised and exercises control over the ESOP.

**ANSWER:** Brozen and Ventura respond that the Trust Agreement speaks for itself and deny any allegations in this paragraph that are inconsistent with the Trust Agreement. Brozen and Ventura admit that Brozen was appointed as trustee of the ESOP and that the Trust Agreement was signed by Buddy Parks. Brozen and Ventura deny that Ventura was appointed as the ESOP's trustee. Brozen and Ventura further respond that the remaining allegations state legal conclusion to which no response is required. To the extent a response is required, Brozen and Ventura deny the remaining allegations in this paragraph.

48. Thus Buddy Parks was both a named fiduciary and functional fiduciary of the ESOP within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21) because he had discretionary authority or discretionary control respecting management of the ESOP, exercised authority and control respecting management or disposition of the ESOP's assets, and/or had discretionary authority or discretionary responsibility in the administration of the ESOP.

McDermott Will & Emery LLP
Attorneys At Law
Miami

**ANSWER:** Brozen and Ventura respond that this paragraph states legal conclusion to which no response is required. To the extent a response is required, Brozen and Ventura deny the allegations in this paragraph.

49.     Defendant Buddy Parks was also a "party in interest" to the ESOP within the meaning of ERISA § 3(14)(A) and (H), 29 U.S.C. § 1002(14) (A) and (H) because he was, at all relevant times, a fiduciary to the ESOP, the Chairman of the Board of Directors, an officer of AMPAM, and/or an owner (or beneficial owner) of more than 10% of AMPAM stock at the time of the Transaction.

**ANSWER:** Brozen and Ventura respond that this paragraph states legal conclusion to which no response is required. To the extent a response is required, Brozen and Ventura deny the allegations in this paragraph.

50.     Defendant Buddy Parks, along with other Sellers, sold a non-controlling interest in AMPAM to the ESOP for over $247 million dollars, which unjustly enriched him at the expense of ESOP participants.

**ANSWER:** Brozen and Ventura respond that the 2019 Stock Purchase Agreement speaks for itself and deny any allegations in this paragraph that are inconsistent with the 2019 Stock Purchase Agreement. Brozen and Ventura further respond that this paragraph states legal conclusion to which no response is required. To the extent a response is required, Brozen and Ventura admit that the ESOP purchased the AMPAM stock for a little over $247 million dollars in the 2019 Transaction and deny the remaining allegations in this paragraph.

51.     Defendant John D. Parks, along with his brother Buddy Parks, co-founded AMPAM and, along with other Sellers, sold their interest in AMPAM to the ESOP for over $247 million dollars, which unjustly enriched him at the expense of ESOP participants. He is currently the President of AMPAM and, along with his brothers, controlled AMPAM's strategic decisions.

**ANSWER:** Brozen and Ventura respond that the 2019 Stock Purchase Agreement speaks for itself and deny any allegations in this paragraph that are

BROZEN AND VENTURA'S ANSWER TO
PLAINTIFFS' FIRST AMENDED
COMPLAINT

McDermott Will & Emery LLP
Attorneys At Law
Miami

inconsistent with the 2019 Stock Purchase Agreement. Brozen and Ventura admit that the ESOP purchased the AMPAM stock for a little over $247 million dollars in the 2019 Transaction and that John D. Parks is currently the President of AMPAM. Brozen and Ventura lack sufficient knowledge to admit or deny that John D. Parks was one of AMPAM's co-founders. Brozen and Ventura further respond that the remaining allegations in this paragraph state legal conclusion to which no response is required. To the extent a response is required, Brozen and Ventura deny the remaining allegations in this paragraph.

52.     Prior to and after the ESOP Transaction, John D. Parks was a named fiduciary because, as alleged below, he was/is a member of the Company's Board from at least 2010 to the present and, the ESOP governing documents granted the Board express fiduciary powers over ESOP administration, including the power to appoint or replace the ESOP Trustee. *See* ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

**ANSWER:** Brozen and Ventura respond that the ESOP governing documents speak for themselves and deny any allegations in this paragraph that are inconsistent with ESOP governing documents. Brozen and Ventura further respond that this paragraph states legal conclusion to which no response is required. To the extent a response is required, Brozen and Ventura deny the remaining allegations in this paragraph.

53.     Prior to and after the ESOP Transaction, John D. Parks was an ERISA fiduciary within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A) because, as President, he has acted for AMPAM (along with his brothers) to select and appoint Brozen and Ventura to be the the ESOP Trustee, among other things. As President of AMPAM, he had all the fiduciary powers and discretion given to AMPAM in the ESOP governing document; thus, Defendant John D. Parks had/has discretionary control over the ESOP and exercised/exercises control over the ESOP.

**ANSWER:** Brozen and Ventura admit that Brozen served as the ESOP's trustee during the relevant time period and deny that Ventura served as the ESOP's trustee.

BROZEN AND VENTURA'S ANSWER TO
PLAINTIFFS' FIRST AMENDED
COMPLAINT

Brozen and Ventura further respond that this paragraph states legal conclusion to which no response is required. To the extent a response is required, Brozen and Ventura deny the remaining allegations in this paragraph.

54.    Thus John D. Parks was both a named fiduciary and functional fiduciary of the ESOP within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21) because he had discretionary authority or discretionary control respecting management of the ESOP, exercised authority and control respecting management or disposition of the ESOP's assets, and/or had discretionary authority or discretionary responsibility in the administration of the ESOP.

**ANSWER:** Brozen and Ventura respond that this paragraph states legal conclusions to which no response is required.  To the extent a response is required, Brozen and Ventura deny the allegations in this paragraph.

55.    Defendant John D. Parks was a "party in interest" to the ESOP within the meaning of ERISA § 3(14)(A) and (H), 29 U.S.C. § 1002(14) (A) and (H) because he was an ESOP fiduciary, AMPAM's President, an officer of AMPAM, and/or an owner (or beneficial owner) of more than 10% of AMPAM at the time of the ESOP Transaction.

**ANSWER:** Brozen and Ventura respond that this paragraph states legal conclusion to which no response is required.  To the extent a response is required, Brozen and Ventura deny the allegations in this paragraph.

56.    Defendant John G. Mavredakis, along with the other Sellers, sold his interest in AMPAM to the ESOP for over $247 million dollars, which unjustly enriched him at the expense of ESOP participants.  Defendant Mavredakis was a member of the AMPAM Board from 2010 until August 2023 when AMPAM was resold to a Company created and owned by the Parks Brothers and a private equity firm. He may be found in Riverside County.

**ANSWER:** Brozen and Ventura admit that the ESOP purchased the AMPAM stock from John G. Mavredakis ("Mavredakis") and the other AMPAM shareholders

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MIAMI

for a little over $247 million dollars in the 2019 Transaction and that Mavredakis was a member of the AMPAM Board. Brozen and Ventura lack sufficient knowledge to admit or deny that Mavredakis may be found in Riverside County. Brozen and Ventura deny the remaining allegations in this paragraph.

57.    John G. Mavredakis was an ERISA fiduciary within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A) because, as a member of the board of directors, he has acted for AMPAM (along with the Parks Brothers) to select and appoint Brozen and Ventura as the ESOP Trustee, among other things. As a board director of AMPAM, he had the fiduciary powers and discretion given to the AMPAM Board in the ESOP governing document; thus, Defendant John G. Mavredakis had/has discretionary control over the ESOP and exercised/exercises control over the ESOP.

**ANSWER:** Brozen and Ventura respond that this paragraph states legal conclusion to which no response is required. To the extent a response is required, Brozen and Ventura deny the allegations in this paragraph.

58.    Thus John G. Mavredakis was both a named fiduciary and functional fiduciary of the ESOP within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21) because he had discretionary authority or discretionary control respecting management of the ESOP, exercised authority and control respecting management or disposition of the ESOP's assets, and/or had discretionary authority or discretionary responsibility in the administration of the ESOP.

**ANSWER:** Brozen and Ventura respond that this paragraph states legal conclusion to which no response is required. To the extent a response is required, Brozen and Ventura deny the allegations in this paragraph.

59.    Defendant John G. Mavredakis was a "party in interest" to the ESOP within the meaning of ERISA § 3(14)(A) and (H), 29 U.S.C. § 1002(14) (A) and (H) because he was an ESOP fiduciary and an AMPAM director.

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MIAMI

McDermott Will & Emery LLP
Attorneys At Law
Miami

**ANSWER:** Brozen and Ventura respond that this paragraph states legal conclusions to which no response is required. To the extent a response is required, Brozen and Ventura deny the allegations in this paragraph.

60.    Defendant Kushal B. Kapadia, along with the other Sellers, sold his interest in AMPAM to the ESOP for over $247 million dollars, which unjustly enriched him at the expense of ESOP participants. Defendant Kapadia founded KKAP Advisors, which advertises, "Our Founder has successfully advised numerous private equity and institutional investors to manage critical financing and M&A transactions," specifically identifying AMPAM as among those clients. KKAP Advisors' website states it was created in 2020. In discovery responses, AMPAM identified Defendant Kapadia as an "Outside advisor to AMPAM at the time of the Initial Transaction." Defendant Kapadia was a "paid member" of the AMPAM Board "as of Q3 2021," according to a FINRA BrokerCheck report.

**ANSWER:** Brozen and Ventura admit that the ESOP purchased the AMPAM stock for a little over $247 million in the 2019 Transaction. Brozen and Ventura respond that they lack sufficient knowledge to admit or deny the remaining allegations in this paragraph.

61.    Defendants Buddy Parks, John D. Parks, John G. Mavredakis, and Kushal B. Kapadia are collectively referred to as the "Sellers" or "Seller Defendants" who sold their interest in AMPAM to the ESOP for $247 million in 2019.

**ANSWER:** Brozen and Ventura admit that the ESOP purchased the AMPAM stock from the Seller Defendants for a little over $247 million dollars in the 2019 Transaction. Brozen and Ventura further respond that this paragraph includes a definition to which no response is necessary. Brozen and Ventura deny any remaining allegations in this paragraph.

**F. Trustee Defendants**

62.    Defendant Ventura Trust Company ("Ventura") is a Minnesota corporation with its principal executive office located in Minneapolis, Minnesota.

BROZEN AND VENTURA'S ANSWER TO
PLAINTIFFS' FIRST AMENDED
COMPLAINT

Ventura advertises that it "Lead[s] dozens of ESOP transactions annually" and "Serv[es] over 150 ESOP plans per year."

**ANSWER:** Brozen and Ventura admit that Ventura it is a Minnesota corporation with its principal office located in Minneapolis, Minnesota. Brozen and Ventura further responds that Ventura's website speaks for itself and denies any allegations in this paragraph that are inconsistent with Ventura's website. Brozen and Ventura deny any remaining allegations in this paragraph.

63. Closing documents executed in connection with the ESOP Transaction state that Ventura ESOP Fiduciary Services was the Trustee along with Defendant Neil Brozen.

**ANSWER:** Brozen and Ventura deny the allegations in this paragraph. Brozen and Ventura further respond that Brozen served as the ESOP's sole trustee during the relevant time period and that Ventura did not serve as the ESOP's trustee.

64. The indemnification provision that requires AMPAM to indemnify Defendant Neil Brozen also requires AMPAM to indemnify Ventura.

**ANSWER:** Brozen and Ventura lack sufficient information to admit or deny the vague and confusing allegations in this paragraph because the allegations refer to unspecified "indemnification provision." Brozen and Ventura deny any remaining allegations in this paragraph.

65. Defendant Brozen's Rule 26(a) disclosures state that he sought advice regarding whether to approve the ESOP Transaction from Ventura's Advisory Board indicating that Ventura was generally involved in the decision to approve the ESOP Transaction.

**ANSWER:** Brozen and Ventura respond that Brozen's Rule 26(a) disclosures speak for themselves and deny any allegations int this paragraph that are inconsistent with Brozen's Rule 26(a) disclosures. Brozen and Ventura deny the remaining allegations in this paragraph.

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MIAMI

66.    As the ESOP's independent trustee, Brozen sought and received advice regarding the Initial Transaction from Ventura's Advisory Board in or around June 2019.

**ANSWER:** Brozen and Ventura admit that Brozen had conversations with Ventura's Advisory Board regarding the 2019 Transaction in or around June 2019 and that Brozen took those conversations into account when approving the 2019 Transaction.  Brozen and Ventura deny the remaining allegations in this paragraph.

67.    Defendant Neil Brozen is an individual residing in Minnesota.  Defendant Brozen is President of Ventura.   Ventura and Defendant Brozen are collectively referred to herein as the "Trustee."

**ANSWER**: Brozen admits that he resides in Minnesota.  Brozen and Ventura admit that Brozen is the President of Ventura.  Brozen and Ventura deny the remaining allegations in this paragraph to the extent they refer to Ventura as the ESOP's trustee.

68.    Defendants Brozen and Ventura served as the Trustee of the ESOP and improperly approved the ESOP Transaction on behalf of the ESOP. As Trustee of the ESOP, the Trustee was both a named fiduciary and functional fiduciary of the ESOP within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21) because they had discretionary authority or discretionary control respecting management of the ESOP, exercised authority and control respecting management or disposition of the ESOP's assets, and/or had discretionary authority or discretionary responsibility in the administration of the ESOP.

**ANSWER:** Brozen and Ventura respond that this paragraph state legal conclusions to which no response is required.  To the extent a response is required, Brozen and Ventura admit that Brozen was a fiduciary of the ESOP in his capacity as the ESOP's trustee and deny that Ventura was the ESOP's trustee or a fiduciary of the ESOP.  Brozen and Ventura deny the remaining allegations in this paragraph.

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MIAMI

69.    The Trustee has also been a "party in interest" at all relevant times because, *inter alia*, he is a fiduciary to the ESOP and provides services to the ESOP. ERISA § 3(14), 29 U.S.C. § 1002(14).

**ANSWER:** Brozen and Ventura respond that the allegations in this paragraph state legal conclusion to which no response is required.

70.    Defendant Brozen has been sued multiple times for violations of ERISA based on his actions as a trustee for ESOPs other than the AMPAM ESOP, including by the Secretary of Labor.

**ANSWER:** Brozen and Ventura admit that Brozen has been named as a defendant in other lawsuits alleging violations of ERISA, but deny all of the allegations raised in those other litigation matters. Brozen and Ventura further deny that there has been any finding that Brozen violated ERISA in any of those other litigation matters. Brozen and Ventura deny any remaining allegations in this paragraph.

**G. The Board Defendants**

71.    Defendant Buddy Parks has been a member of the AMPAM Board and Chairman since before 2010.

**ANSWER:** Brozen and Ventura admit that Buddy Parks was a member of the AMPAM Board at the time of the 2019 Transaction and the 2023 Transaction. Brozen and Ventura lack sufficient knowledge to admit or deny the remaining allegations in this paragraph.

72.    Defendant John D. Parks has been a member of the AMPAM Board since before 2010.

**ANSWER:** Brozen and Ventura admit that John D. Parks was a member of the AMPAM Board at the time of the 2019 Transaction and the 2023 Transaction. Brozen and Ventura lack sufficient knowledge to admit or deny the remaining allegations in this paragraph.

BROZEN AND VENTURA'S ANSWER TO PLAINTIFFS' FIRST AMENDED COMPLAINT

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MIAMI

73.    Defendant John G. Mavredakis has been a member of the AMPAM Board since before 2010 until August 2023, when the ESOP sold AMPAM to a company created by the Parks Brothers and a private equity firm.

**ANSWER:** Brozen and Ventura admit that John G. Mavredakis was a member of the AMPAM Board at the time of the 2019 Transaction and the 2023 Transaction. Brozen and Ventura further admit that the ESOP sold its AMPAM stock in the 2023 Transaction. Brozen and Ventura lack sufficient knowledge to admit or deny the remaining allegations in this paragraph.

74.    Defendant James C. Wright III has been a member of the AMPAM Board since before 2010 until October 2019. He was also Chief Financial Officer of AMPAM at the time of the ESOP Transaction.

**ANSWER:** Brozen and Ventura admit that James C. Wright III was a member of the AMPAM Board and the Chief Financial Officer at the time of the 2019 Transaction.  Brozen and Ventura lack sufficient knowledge to admit or deny the remaining allegations in this paragraph.

75.    Buddy Parks, John D. Parks, John G. Mavredakis and James C. Wright III are collectively referred to as the "ESOP Transaction Board Defendants."

**ANSWER:** Brozen and Ventura respond that this paragraph sets forth no factual allegations for which a response is required.

76.    Defendant Kevin Dow joined the AMPAM Board in October 2019, when he also served as CEO of AMPAM.  He remained on the Board until August 2023 when the ESOP sold AMPAM to a company created by the Parks Brothers and a private equity firm.

**ANSWER:** Brozen and Ventura admit that Kevin Dow was a member of the AMPAM Board and served as AMPAM's CEO.  Brozen and Ventura further admit that Kevin Down was an AMPAM Board member at the time of the 2023 Transaction. Brozen and Ventura further admit that the ESOP sold its AMPAM stock in the 2023

1  Transaction.  Brozen and Ventura lack sufficient knowledge to admit or deny the

2  remaining allegations in this paragraph.

3      77. Defendant James Ellis joined the AMPAM Board in August 2020 and

4  remained on the Board until August 2023 when the ESOP sold AMPAM to a company

5  created by the Parks Brothers and a private equity firm.

6      **ANSWER:** Brozen and Ventura admit that James Ellis was a member of the

7  AMPAM Board at the time of the 2023 Transaction.  Brozen and Ventura further admit

8  that the ESOP sold its AMPAM stock in the 2023 Transaction. Brozen and Ventura

9  lack sufficient knowledge to admit or deny the remaining allegations in this paragraph.

10      78. Defendant Steve Grosslight joined the AMPAM Board in August 2020 and

11  remained on the Board until August 2023 when the ESOP sold AMPAM to a company

12  created by the Parks Brothers and a private equity firm.

13      **ANSWER:** Brozen and Ventura admit that Steve Grosslight was a member of

14  the AMPAM Board at the time of the 2023 Transaction.  Brozen and Ventura further

15  admit that the ESOP sold its AMPAM stock in the 2023 Transaction. Brozen and

16  Ventura lack sufficient knowledge to admit or deny the remaining allegations in this

17  paragraph.

18      79. Defendant Mike Matkins joined the AMPAM Board in September 2022 and

19  remained on the Board until August 2023 when the ESOP sold AMPAM to a company

20  created by the Parks Brothers and a private equity firm.

21      **ANSWER:** Brozen and Ventura admit that Mike Matkins was a member of the

22  AMPAM Board at the time of the 2023 Transaction.  Brozen and Ventura further admit

23  that the ESOP sold its AMPAM stock in the 2023 Transaction.    Brozen and Ventura

24  lack sufficient knowledge to admit or deny the remaining allegations in this paragraph.

25      80. Defendant Chris Kenney Matkins joined the AMPAM Board in September

26  2022 and, on information and belief, remains on the Board today.

27

28

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MIAMI

1    **ANSWER:** The allegations in this paragraph relate to a Defendant that the Court

2    dismissed from the case. *See* Dkt. 121. To the extent that a response is required,

3    Brozen and Ventura deny the allegations in this paragraph.

4    81. The members who joined the Board after the ESOP Transaction closed are

5    Kevin Dow, James Ellis, Steve Grosslight, and Mike Matkins and, with the Parks

6    Brothers and John G. Mavredakis, are collectively referred to as the "Post ESOP

7    Transaction Board Defendants."

8    **ANSWER:** Brozen and Ventura admit the allegations in this paragraph.

9    82. According to the Plan Documents, the Board has the fiduciary power to

10   appoint the ESOP Trustee.

11   **ANSWER:** Brozen and Ventura respond that the Plan Documents speak for

12   themselves and deny any allegations that are inconsistent with Plan Documents.

13   Brozen and Ventura deny any remaining allegations in this paragraph.

14   83. Additionally, the Trust Agreement for the ESOP provides, "[u]pon

15   resignation or removal of the Trustee, the Board of Directors shall appoint a successor

16   trustee or trustees." The Trust Agreement also states, "[t]he Company (through its

17   Board of Directors) shall have the right at any time" to modify or terminate the Trust

18   Agreement.

19   **ANSWER:** Brozen and Ventura respond that the Trust Agreement speaks for

20   itself and deny any allegations that are inconsistent with the Trust Agreement. Brozen

21   and Ventura deny any remaining allegations in this paragraph.

22   84. The engagement agreement between AMPAM and the ESOP Trustee

23   states that "the Board desires to appoint the Trustee … as trustee of the Trust and to

24   delegate to the Trustee certain fiduciary responsibilities as more fully described in this

25   Agreement." It also states that "The appointment of the Trustee as trustee of the Trust

26   has been duly authorized and approved by the Board or subcommittee thereof and

27   documented in written resolutions adopted by the Board or subcommittee thereof."

28

McDermott Will & Emery LLP
Attorneys At Law
Miami

- 29 -    BROZEN AND VENTURA'S ANSWER TO
PLAINTIFFS' FIRST AMENDED
COMPLAINT

**ANSWER:** Brozen and Ventura respond that the 2019 FSA speaks for itself and deny any allegations in this paragraph that are inconsistent with the 2019 FSA. Brozen and Ventura deny any remaining allegations in this paragraph.

85. The closing documents executed in connection with the ESOP Transaction assume that the members of AMPAM Board of Directors owed fiduciary duties to the ESOP because they refer to an open question as to whether the Board members complied with their fiduciary duties in connection with the ESOP Transaction.

**ANSWER:** Brozen and Ventura lack sufficient information to admit or deny the vague and confusing allegations in this paragraph because the allegations refer to unspecified "closing documents." Brozen and Ventura deny any remaining allegations in this paragraph.

86. Also, because AMPAM is the ESOP's Named Fiduciary and, under AMPAM's bylaws, the Board may exercise all of its powers, the Board and its members acted as the Named Fiduciary for the ESOP and had the responsibility to ensure that AMPAM was fulfilling its fiduciary duties under ERISA.

**ANSWER:** Brozen and Ventura respond that this paragraph state legal conclusions to which no response is required. Brozen and Ventura further respond that AMPAM's bylaws speak for themselves and deny any allegations in this paragraph that are inconsistent with AMPAM's bylaws. Brozen and Ventura deny any remaining allegations in this paragraph.

87. Accordingly, the Board Defendants had and/or exercised discretionary authority or discretionary control respecting management of the ESOP and are fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

**ANSWER:** Brozen and Ventura respond that this paragraph state legal conclusions to which no response is required. To the extent a response is required, Brozen and Ventura deny the allegations in this paragraph.

BROZEN AND VENTURA'S ANSWER TO
PLAINTIFFS' FIRST AMENDED
COMPLAINT

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MIAMI

88.    At all relevant times the Board Defendants have been fiduciaries to the ESOP and had a duty to monitor the Trustee.

**ANSWER:** Brozen and Ventura respond that this paragraph state legal conclusions to which no response is required. To the extent a response is required, Brozen and Ventura deny the allegations in this paragraph.

89.    The Selling Board Members are Buddy Parks, John D. Parks, and John G. Mavredakis.

**ANSWER:** Brozen and Ventura respond that this paragraph includes a definition to which no response is necessary.

### IV.    FACTUAL ALLEGATIONS

90.    According to publicly available documents, AMPAM Parks Mechanical, Inc. was a "family-owned business" until the ESOP Transaction in 2019.  AMPAM was founded by Buddy Parks and his father decades ago.  Since then, the Parks Brothers have run AMPAM with John G. Mavredakis.

**ANSWER:**  Brozen and Ventura admit that Buddy Parks was a co-founder of AMPAM.  Brozen and Ventura lack sufficient knowledge to admit or deny the allegations in this paragraph regarding unspecified public documents. Brozen and Ventura deny any remaining allegations in this paragraph.

91.    In or around 2019, the Parks Brothers decided to sell their stake in the Company by creating a retirement plan (the AMPAM ESOP) that would borrow hundreds of million of dollars to purportedly purchase 100% of the AMPAM stock they owned.

**ANSWER:** Brozen and Ventura admit that the ESOP was established in or around 2019 and that the ESOP purchased the AMPAM stock in the 2019 Transaction. Brozen and Ventura further respond that the 2019 Stock Purchase Agreement speaks for itself and deny any allegations in this paragraph that are inconsistent with the 2019 Stock Purchase Agreement.  Brozen and Ventura deny the remaining allegations in this paragraph.

McDermott Will & Emery LLP
Attorneys At Law
Miami

92.     To effectuate the Parks Brothers' sale of their interest, they established the ESOP, an ERISA-protected defined contribution plan where employer contributions made on behalf of employees are invested in the employer's stock (here AMPAM stock). ERISA § 407(d)(6), 29 U.S.C. § 1107(d)(6); *see also* 29 C.F.R. § 2550.407d–6 (2022) (definition of the term "employee stock ownership plan").

**ANSWER:** Brozen and Ventura respond that this paragraph state legal conclusions to which no response is required.  To the extent a response is required, Brozen and Ventura admit that the ESOP was established in or around 2019 and that the ESOP purchased the AMPAM stock in the 2019 Transaction.  Brozen and Ventura deny the remaining allegations in this paragraph.

93.     All employer contributions to the ESOP, invested in employer stock, are part of employee compensation and comprise an important part of employee retirement savings.

**ANSWER:** Brozen and Ventura respond that this paragraph state legal conclusions to which no response is required.  To the extent a response is required, Brozen and Ventura deny the allegations in this paragraph.

94.     Because—and only because—an ESOP contribution qualifies as employee compensation, an employer can deduct the total value of its ESOP contribution from its income tax liability as an ordinary business expense. 26 U.S.C. § 404; 26 C.F.R. § 1.404(a)–1(b) (2022).

**ANSWER:**  Brozen and Ventura respond that this paragraph state legal conclusions to which no response is required.  To the extent a response is required, Brozen and Ventura deny the allegations in this paragraph.

95.     Buddy Parks signed the ESOP Trust Agreement between AMPAM and the Trustee wherein he appointed the ESOP Trustee on behalf of the AMPAM Board and/or the Company.

**ANSWER:** Brozen and Ventura respond that the Trust Agreement speaks for itself and deny any allegations in this paragraph that are inconsistent with the Trust

McDermott Will & Emery LLP
Attorneys At Law
Miami

McDermott Will & Emery LLP
Attorneys At Law
Miami

Agreement.  Moreover, to the extent this paragraph refers to "ESOP Trustee" as both Brozen and Ventura, Brozen and Ventura admit that Brozen served as the ESOP's trustee during the relevant time period and deny that Ventura served as the ESOP's trustee.  Brozen and Ventura deny any remaining allegations in this paragraph.

96.    AMPAM and its Board members failed to establish and implement a governance structure for the ESOP Transaction that was in the interest of ESOP participants consistent with their fiduciary duties to monitor the Trustee and ensure that the ESOP did not pay more than fair market value.

**ANSWER:** Brozen and Ventura respond that the allegations in this paragraph are not directed at Brozen or Ventura, thus no response from them is required.  To the extent a response is required, Brozen and Ventura lack sufficient knowledge to admit or deny the allegations in this paragraph. Moreover, to the extent this paragraph refers to "Trustee" as both Brozen and Ventura, Brozen and Ventura admit that Brozen served as the ESOP's trustee during the relevant time period and deny that Ventura served as the ESOP's trustee.  Brozen and Ventura deny any remaining allegations in this paragraph.

97.    And AMPAM and the Board Members (the majority of whom were Sellers) suffered a fundamental, structural conflict of interest. They failed to mitigate their conflicts and failed to adequately and critically evaluate the Trustee to ensure that Brozen and Ventura were performing their Trustee duties appropriately.

**ANSWER:** Brozen and Ventura deny the allegations in this paragraph.

98.    The Trust Agreement states that, prior to July 15, 2019, AMPAM (then controlled by the Selling Board Members) appointed the Trustee to the ESOP, which was a fiduciary act that required them to monitor the Trustee and to furnish accurate and complete information concerning AMPAM in connection with the ESOP Transaction.

**ANSWER:** Brozen and Ventura respond that the Trust Agreement speaks for itself and deny any allegations in this paragraph that are inconsistent with the Trust

BROZEN AND VENTURA'S ANSWER TO PLAINTIFFS' FIRST AMENDED COMPLAINT

Agreement. Moreover, to the extent this paragraph refers to "Trustee" as both Brozen and Ventura, Brozen and Ventura admit that Brozen served as the ESOP's trustee during the relevant time period and deny that Ventura served as the ESOP's trustee. Brozen and Ventura deny any remaining allegations in this paragraph.

99. The Trustee was duty bound to evaluate whether all terms of the ESOP Transaction (including the price paid for AMPAM stock) were adequately investigated, all relevant alternative options were considered, and the ESOP Transaction was in the best interest of ESOP participants. During the ESOP Transaction the Trustee and the Parks Brothers were duty bound to ensure that the ESOP did not pay more than fair market value for the AMPAM stock it purchased.

**ANSWER:** Brozen and Ventura respond that this paragraph state legal conclusions to which no response is required. To the extent a response is required, Brozen admits that as the ESOP's trustee he was required to evaluate the terms of the 2019 Transaction and ensure that the 2019 Transaction was in the best interest of the ESOP participants and that the ESOP did not pay more than fair market value for the AMPAM stock. Brozen and Ventura lack sufficient knowledge to admit or deny the allegations with respect to the Parks Brothers. Moreover, to the extent this paragraph refers to "Trustee" as both Brozen and Ventura, Brozen and Ventura admit that Brozen served as the ESOP's trustee during the relevant time period and deny that Ventura served as the ESOP's trustee. Brozen and Ventura deny the remaining allegations in this paragraph.

100. Yet the Selling Board Members who controlled AMPAM did not select the Trustee because they believed Brozen and Ventura would perform a thorough and rigorous evaluation of the sale price and other Transaction terms. To the contrary, they selected the Trustee because they believed Brozen and Ventura would be easy to deal with, would not negotiate with them, and would approve the Transaction on terms that were favorable to the Sellers rather than in the best interest of the ESOP and its participants. And that is exactly what happened.

BROZEN AND VENTURA'S ANSWER TO PLAINTIFFS' FIRST AMENDED COMPLAINT

McDermott Will & Emery LLP
Attorneys At Law
Miami

**ANSWER:** Brozen and Ventura respond that they cannot speak to what the Selling Board Members "believed." Brozen and Ventura deny any remaining allegations in this paragraph.

101.   For example, the Trustee's engagement agreement, which was executed by Buddy Parks on behalf of AMPAM, expressly states the "Trustee shall, in his sole and absolute discretion, negotiate the other terms and conditions of the Contemplated Transactions; provided, however, ***nothing*** in the preceding clause ***shall obligate the Trustee to negotiate***[.]"

**ANSWER:** Brozen and Ventura respond that the 2019 FSA speaks for itself and deny any allegations that are inconsistent with the 2019 FSA.  Moreover, to the extent this paragraph refers to "Trustee" as both Brozen and Ventura, Brozen and Ventura deny that Ventura served as the ESOP's trustee.   Brozen and Ventura deny any remaining allegations in this paragraph.

102.   In other words, Buddy Parks, his fellow Board members, and AMPAM agreed to engagement terms for the Trustee that expressly condoned the Trustee not negotiating at all on behalf of the ESOP.

**ANSWER:** To the extent this paragraph refers to "Trustee" as both Brozen and Ventura, Brozen and Ventura deny that Ventura served as the ESOP's trustee.  Brozen and Ventura deny any remaining allegations in this paragraph.

103.   Another example that the Trustee was eager to please the Sellers who sat on the AMPAM Board and who hired the Trustee is that, prior to the ESOP Transaction, the Trustee pre-negotiated that three of the four Board members (the Selling Board members who would retain a hidden a stake in AMPAM after the ESOP purchased it) would all keep their Board seats even after the ESOP Transaction.  Indeed, Buddy Parks would remain Chairman of the Board after the ESOP Transaction.  In fact, this agreement that Buddy Parks would keep his seat as Chairman of the Board was publicly known at least one month prior to the completion of the ESOP Transaction.

McDermott Will & Emery LLP
Attorneys At Law
Miami

Indeed, Buddy Parks remained the Chairman of the Board after the ESOP Transaction occurred.

**ANSWER:** Brozen and Ventura admit that Buddy Parks was the Chairman of the Board after the 2019 Transaction. To the extent this paragraph refers to "Trustee" as both Brozen and Ventura, Brozen and Ventura deny that Ventura served as the ESOP's trustee. Brozen and Ventura deny the remaining allegations in this paragraph.

104. The Selling Board Members's ability to ensure that they would retain three seats on AMPAM Board allowed them to keep control over AMPAM after it was supposedly sold to the ESOP. This control included control over AMPAM's strategy, the amount and timing of dividends and stock distributions, and other fundamental business decisions. The Selling Board Members also retained substantial power to amend the Company's bylaws and the ESOP's governing documents.

**ANSWER:** Brozen and Ventura deny the allegations in this paragraph.

105. AMPAM's corporate filings with the California Secretary of State show that Buddy Parks remained the CEO of AMPAM for years after the ESOP Transaction. Specifically, AMPAM's "Statement of Information" filings on November 16, 2021 and April 7, 2023 report Buddy Parks as the CEO of AMPAM. Similarly, a 2022 Annual Franchise Tax Report filed by AMPAM with the State of Delaware lists both Parks Brothers as directors.

**ANSWER:** Brozen and Ventura respond that the November 16, 2021 and the April 7, 2023 Statements of Information speak for themselves and deny any allegations that are inconsistent with the November 16, 2021 and the April 7, 2023 Statements of Information. Brozen and Ventura deny the remaining allegations in this paragraph.

106. In addition, the Selling Board Members effectively controlled the Trustee who was beholden to the Board Members given that they controlled a majority of the Board seats and the Board had the power to fire the Trustee if it did not like the decisions the Trustee made.

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MIAMI

**ANSWER:** Brozen and Ventura deny the allegations in this paragraph. Moreover, to the extent this paragraph refers to "Trustee" as both Brozen and Ventura, Brozen and Ventura deny that Ventura served as the ESOP's trustee.

107. In addition, the Trust Document specifically gives AMPAM—which was/is controlled by the Selling Board Members prior to and after the ESOP Transaction— unilateral power to remove the Trustee and gave the Selling Board Members the power to pick the replacement for the Trustee. Thus, the Trustee and any successor Trustee was not truly "independent."

**ANSWER:** Brozen and Ventura respond that the Trust Agreement speaks for itself and deny any allegations that are inconsistent with the Trust Agreement. Moreover, to the extent this paragraph refers to "Trustee" as both Brozen and Ventura, Brozen and Ventura deny that Ventura served as the ESOP's trustee. Brozen and Ventura deny the remaining allegations in this paragraph.

108. This lack of independence compromised not only the investigation of the Transaction, but also the ongoing management of AMPAM. With limited exception, Plan participants did not have majority power to vote on shareholder matters. Instead, the Trustee, who was hand-picked by the Park Brothers and who could be fired by them at will, held the majority of voting power.

**ANSWER:** Brozen and Ventura deny the allegations in this paragraph. Moreover, to the extent this paragraph refers to "Trustee" as both Brozen and Ventura, Brozen and Ventura deny that Ventura served as the ESOP's trustee.

109. As noted above, the Trustee approved a sale price of $247,026,699 million for 834,331 shares of the Company's stock, or $296.08 per share. This amount exceeded the fair market value of the Company at the time of the Transaction and greater than what a buyer, under no compulsion to buy AMPAM, would have paid in an arm's length negotiation for the non-controlling and non-marketable interest sold.

**ANSWER:** Brozen and Ventura respond that the 2019 Stock Purchase Agreement speaks for itself and deny any allegations in the 2019 Stock Purchase

BROZEN AND VENTURA'S ANSWER TO PLAINTIFFS' FIRST AMENDED COMPLAINT

McDermott Will & Emery LLP
Attorneys At Law
Miami

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MIAMI

Agreement that are inconsistent with the 2019 Stock Purchase Agreement. Brozen admits that, as trustee of the ESOP, he approved the 2019 Transaction. Brozen and Ventura deny the remaining allegations in this paragraph. Moreover, to the extent this paragraph refers to "Trustee" as both Brozen and Ventura, Brozen and Ventura deny that Ventura served as the ESOP's trustee.

110.   By year-end 2022, AMPAM had contributed a total of $36,230,656 into the ESOP, purportedly for the benefit of employees. Yet, the value of the AMPAM stock in Plaintiffs' and the Class's ESOP accounts was just $22,960,789 with a total of 97,421 shares of AMPAM stock allocated to the ESOP participants' accounts.

**ANSWER:** Brozen and Ventura deny the allegations in this paragraph.

111.   The purchase price of $247 million and the Trustee's evaluation and due diligence to justify that price suffered from a number of serious flaws that any prudent and diligent fiduciary, acting in the best interest of the ESOP and its participants, should have discovered.

**ANSWER:** Brozen and Ventura deny the allegations in this paragraph. Moreover, to the extent this paragraph refers to "Trustee" as both Brozen and Ventura, Brozen and Ventura deny that Ventura served as the ESOP's trustee.

112.   *First*, the sale price failed to properly take account of the fact that the ESOP did not purchase a controlling interest in AMPAM.

**ANSWER:** Brozen and Ventura deny the allegations in this paragraph.

113.   As discussed above, the terms of the sale included a pre-agreement that Selling Board Members would retain their Board seats (which was enough to retain control over AMPAM) and that Buddy Parks would retain his role as Chairman of the Board. Because this allowed the Sellers to retain control over AMPAM's strategic direction and management, the fair market value of AMPAM stock should have reflected a steep discount for the lack of control over the Company. But the actual purchase price did not.

**ANSWER:** Brozen and Ventura deny the allegations in this paragraph.

BROZEN AND VENTURA'S ANSWER TO PLAINTIFFS' FIRST AMENDED COMPLAINT

114. That the ESOP did not obtain a controlling interest in AMPAM (even though its governmental filings states it paid for a controlling interest) is further confirmed by the fact that, just a few years after the ESOP Transactions, the Parks Brothers engineered the sale of AMPAM's stock (again) to a newly created shell corporation, Canyonlands Purchaser LLP, which was owned by the Parks Brothers and Gemspring, a private equity group.

**ANSWER:** Brozen and Ventura deny the allegations in this paragraph.

115.  Further, as noted above, Defendant Buddy Parks continued to serve as Chairman of the Company's Board after the Transaction.  And, after the ESOP Transaction, all three Selling Board Members retained their Board seats which allowed them to arrange the sale of AMPAM back to the Park Brothers and a private equity firm.

**ANSWER:** Brozen and Ventura admit that the three Selling Board Members served as Board members of AMPAM at the time of the 2023 Transaction.  Brozen and Ventura deny the remaining allegations.

116.  Because the ESOP participants did not gain meaningful control over AMPAM as a result of the Transaction, the purchase price the ESOP paid should have been heavily discounted to reflect this lack of control.  Court decisions have held that discounts for lack of control as high as 40% are appropriate.

**ANSWER:** Brozen and Ventura respond that the allegations in this paragraph state legal conclusions to which no response is required.  To the extent a response is required, Brozen and Ventura deny the allegations in this paragraph.

117.  Publicly available governmental filings state that the ongoing valuations of AMPAM stock did not include any discount for lack of control.  As a result, the ESOP overpaid.  Had even a minimal discount for lack of control (10%) been applied, the ESOP would have paid approximately $25 million less than the ESOP actually did; and a 40% discount for lack of control would have resulted in the ESOP paying approximately $100 million less than the ESOP actually did.

BROZEN AND VENTURA'S ANSWER TO PLAINTIFFS' FIRST AMENDED COMPLAINT

McDermott Will & Emery LLP
Attorneys At Law
Miami

**ANSWER:** Brozen and Ventura lack sufficient knowledge to admit or deny the allegations in this paragraph because they refer to unspecified governmental filings. Brozen and Ventura further respond that the allegations in this paragraph state legal conclusions to which no response is required. To the extent a response is required, Brozen and Ventura deny the allegations in this paragraph.

118.  Here, the Trustee did not adequately consider which elements of control were actually being transferred via the sale and did not ensure that an appropriate discount for lack of control was used in the valuation of AMPAM stock.

**ANSWER:** Brozen and Ventura deny the allegations in this paragraph. Moreover, to the extent this paragraph refers to "Trustee" as both Brozen and Ventura, Brozen and Ventura deny that Ventura served as the ESOP's trustee.

119. *Second*, Buddy Parks retained a hidden "significant ownership interest" (not just operational control) in AMPAM from 2019 onwards even though the ESOP's reports filed with the government stated that the ESOP owned a 100% interest in AMPAM. In other words, while AMPAM reported to the government that the the Company became 100% ESOP owned in 2019, its October 4, 2023 press release painted a very different picture: that Buddy Parks had always kept a "significant ownership stake in AMPAM."

**ANSWER:** Brozen and Ventura lack sufficient knowledge to admit or deny the allegations in this paragraph because they refer to unspecified governmental filings. Brozen and Ventura deny the remaining allegations in this paragraph.

120.  Indeed, the October 4, 2023 press release announcing the sale of AMPAM back to Buddy Parks and Gemspring (through the shell corporation created in April of 2023) ***does not even mention*** the ESOP as an owner of AMPAM stock in October of 2023.

**ANSWER:** Brozen and Ventura respond that the October 4, 2023 press release speaks for itself and deny any allegations in this paragraph that are inconsistent with

- 40 -    BROZEN AND VENTURA'S ANSWER TO
PLAINTIFFS' FIRST AMENDED
COMPLAINT

the October 4, 2023 press release. Brozen and Ventura deny any remaining allegations in this paragraph.

121. According to the press release, Buddy Parks kept a significant interest in AMPAM to the ESOP from 2019 to 2023 and on information and belief, the same is true for John Parks.

**ANSWER:** Brozen and Ventura respond that the October 4, 2023 press release speaks for itself and deny any allegations in this paragraph that are inconsistent with the October 4, 2023 press release. Brozen and Ventura deny any remaining allegations in this paragraph.

122. This undisclosed and significant ownership interest that Buddy Parks retained for years after the ESOP Transaction indicates that the price the ESOP paid was more than fair market value.

**ANSWER:** Brozen and Ventura respond that the allegations in this paragraph state a legal conclusion to which no response is required. To the extent a response is required, Brozen and Ventura deny the allegations in this paragraph.

123. *Third*, the $247 million price was based on financial information provided by the Parks Brothers (who together ran and controlled AMPAM). Each of them had a personal interest in painting the rosiest picture possible of AMPAM's financial situation and, on information and belief, did so. As Trustee, Defendant Brozen and Ventura had a responsibility to carefully scrutinize the financial projections and other information supplied by the Parks Brothers and other Company insiders, rather than simply taking them at face value. However, no evidence of such scrutinization of the valuation was provided in response to Plaintiffs' counsel's pre-litigation request for information relating to the Transaction.

**ANSWER:** Brozen and Ventura admit that Brozen served as the ESOP's trustee during the relevant time period and deny that Ventura served as the ESOP's trustee. Brozen and Ventura deny the remaining allegations in this paragraph.

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MIAMI

- 41 -    BROZEN AND VENTURA'S ANSWER TO PLAINTIFFS' FIRST AMENDED COMPLAINT

124. *Fourth*, simultaneous with the closing of the Transaction, the Board Defendants amended the bylaws of AMPAM to insert a substantial restriction on the saleability of the Company. In particular, Section 7.7 entitled "Ownership Restriction" required that substantially all of AMPAM shares shall be owned by the employees only, including the ESOP as an employee stock ownership trust. This provision substantially limited the ESOP's ability to sell AMPAM after the ESOP Transaction and thus should have resulted in material discount for lack of marketability. Section 9.1 of the Bylaws precludes amendment except by a majority vote of the Board of Directors, meaning that the Selling Board members retained the power to enforce the marketability restriction (and in turn preserve their power as Board members by avoiding a sale to a third party who might replace them on the Board).

**ANSWER:**  Brozen and Ventura respond that AMPAM's bylaws speak for themselves and deny any allegations in this paragraph that are inconsistent with AMPAM's bylaws.  Brozen and Ventura deny the remaining allegations in this paragraph.

125. Not surprisingly, the Post ESOP Transaction Board Defendants voted to amend the bylaws to allow the sale back to the Parks Brothers in the 2023 Resale Transaction.

**ANSWER:** Brozen and Ventura deny the allegations in this paragraph.

126. This significant ownership restriction further solidified the Board's control over AMPAM post Transaction.

**ANSWER:** Brozen and Ventura deny the allegations in this paragraph.

127. Numerous studies that have been conducted to examine the size of marketability discounts ascribed to illiquid investments indicate a range of 10% to as much as 60% would be appropriate.

**ANSWER:** Brozen and Ventura lack sufficient information to admit or deny the vague and confusing allegations in this paragraph because the allegations refer to

McDermott Will & Emery LLP
Attorneys At Law
Miami

unspecified "[n]umerous studies."    Brozen and Ventura  deny any remaining allegations in this paragraph.

128.  *Fifth*, the Transaction saddled the ESOP with an enormous debt burden that was effectively underwritten by the Company, which sapped its cash flows and growth potential as an ongoing business enterprise.

**ANSWER:** Brozen and Ventura deny the allegations in this paragraph.

129. The financing terms were not reasonable as they required, in part, for the ESOP (through the Company) to pay the Sellers 8.5% to 9.5% on $158 million in Transaction debt plus pay outside lenders approximately 5% on $93.5 million of additional Transaction debt.  In total, it appears that approximately $18 million of the Company's cash flow was required to service the debt to the Sellers and repay the Sellers.  This put a tremendous financial strain on the Company's operations and solvency.   In addition, this severe drag on the Company's operations and solvency were not adequately reflected in the Transaction sale price nor adequately considered by the Trustee when approving the Transaction terms.

**ANSWER:** Brozen and Ventura deny the allegations in this paragraph.

130. *Sixth*, the Company's business faced significant risks and headwinds at the time of the Transaction that were not adequately reflected in the Company's financial projections.

**ANSWER:** Brozen and Ventura deny the allegations in this paragraph.

131. The ESOP Transaction occurred during a time of great uncertainty in the housing market, especially for multifamily homes built in California, the type of projects on which AMPAM works. In 2019, the California Assembly passed rent control for multifamily houses with the enactment of Assembly Bill 1482. The law applies to the majority of California's multifamily housing stock and caps annual rent increases at 5 percent plus the rate of inflation, or 10 percent, whichever is lower. The rent control law also requires a property owner to have "just cause" to evict a tenant. ]

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MIAMI

Assembly Bill 1482 was being considered by the California legislature at the time of the ESOP Transaction, and was eventually signed into law.

**ANSWER:** Brozen and Ventura respond that the Assembly Bill 1482 speaks for itself and denies any allegations in this paragraph that are inconsistent with the Assembly Bill 1482. Brozen and Ventura deny the remaining allegations in this paragraph.

133. Additionally, in 2019, housing starts in California experienced their first decline in 10 years. That year, 11% fewer multifamily homes were built. Indeed, 2018 was a high-water mark for multifamily construction starts in California that was followed by a steady decline into at least 2021.

**ANSWER:** Brozen and Ventura lack sufficient knowledge to admit or deny the allegations in this paragraph.

134. One industry report in the summer of 2019 noted that in the last six months, "developers have pulled back on new development, and half of the panelists stated that they were not planning to start a new development in the next 12 months." Developers expressed a more negative outlook in the 2019 survey than in 2018 in 5 of the 6 geographic areas examined, with 3 of the 6 having an overall negative outlook.

**ANSWER:** Brozen and Ventura lack sufficient knowledge to admit or deny the allegations in this paragraph.

135. These substantial headwinds facing the multifamily housing industry, on which AMPAM's financial success depended, were not adequately reflected in the ESOP's purchase price of $247 million.

**ANSWER:** Brozen and Ventura deny the allegations in this paragraph.

136. Because the slump in the multi-family housing interest was not adequately reflected in the Company's financial projections, the stock suffered a sustained reduction in value that was not just due to the transaction debt taken on in 2019.

**ANSWER:** Brozen and Ventura deny the allegations in this paragraph.

BROZEN AND VENTURA'S ANSWER TO
PLAINTIFFS' FIRST AMENDED
COMPLAINT

137. Indeed, from 2019 to 2020 the AMPAM stock the ESOP owned declined in value by $15.7 million.

**ANSWER:** Brozen and Ventura deny the allegations in this paragraph

138. Thereafter, the ESOP's 2021 Form 5500 reported a value of $12.69 million, still significantly depressed.

**ANSWER:** Brozen and Ventura respond that the ESOP's 2021 Form 5500 reports speak for themselves and deny any allegations in this paragraph that are inconsistent with the ESOP's 2021 Form 5500. Brozen and Ventura deny any remaining allegations in this paragraph.

139. *Seventh*, as part of the Transaction, the Sellers received warrants, which allowed the Sellers to dilute the value of the ESOP's ownership in AMPAM.

**ANSWER:** Brozen and Ventura admit that warrants were issued to the Sellers around the time of the 2019 ESOP Transaction.  Brozen and Ventura deny the remaining allegations in this paragraph.

140.   The Sellers received ███████ warrants with a strike price of just ██████ ██████████████████████████████████████████ Because the strike price was so low, shortly after the Transaction the warrants were in the money and diluted the ESOP's interest in AMPAM such that the Sellers then effectively owned ██% of the fully diluted common stock outstanding.

**ANSWER:** Brozen and Ventura respond that the 2019 Stock Purchase Agreement and the 2019 Closing Documents speak for themselves and deny any allegations that are inconsistent with the 2019 Stock Purchase Agreement and the 2019 Closing Documents.  Brozen and Ventura deny the remaining allegations in this paragraph.

141.   The warrants had a ████████ expiration, an excessively long period in which the Sellers would retain the right to exercise the warrants.  In addition, the interest rates on the Seller Notes were ███████%. Based on the interest plus the value

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MIAMI

1   of the warrants means, the Sellers were likely to receive ████████ returns on

2   the loans and warrants together, which was unreasonable and imprudent.

3       **ANSWER:** Brozen and Ventura respond that the 2019 Stock Purchase

4   Agreement and the 2019 Closing Documents speak for themselves and deny any

5   allegations that are inconsistent with the 2019 Stock Purchase Agreement and the 2019

6   Closing Documents.  Brozen and Ventura further respond that this paragraph states

7   legal conclusion to which no response is required.  To the extent a response is required,

8   Brozen and Ventura deny the allegations in this paragraph.  Brozen and Ventura deny

9   the remaining allegations in this paragraph.

10      142.  In light of the enormous value of the warrants, the ESOP should have paid

11  a lower price to reflect the significant dilution of its interest in AMPAM and/or should

12  have paid a lower interest rate on the Seller Notes.

13      **ANSWER:**  Brozen and Ventura deny the allegations in this paragraph.

14      143. Because the Trustee failed to engage in an adequate investigation and failed

15  to insist on appropriate discounts for the lack of control and marketability being sold

16  and the dilution caused by the warrants, the ESOP overpaid.

17      **ANSWER:** Brozen and Ventura deny the allegations in this paragraph.

18  Moreover, to the extent this paragraph refers to "Trustee" as both Brozen and Ventura,

19  Brozen and Ventura deny that Ventura served as the ESOP's trustee.

20      144. The enormous debt servicing requirements post ESOP Transaction

21  negatively affected AMPAM's long term financial prospects. As noted above,

22  AMPAM had reported a declining equity value that had failed to even recover to the

23  same level as the year the ESOP Transaction closed as of year-end 2021.

24      **ANSWER:** Brozen and Ventura deny the allegations in this paragraph.

25      145. Demonstrating that the Selling Board members retained control over

26  AMPAM and could take advantage of the difficult condition in which they placed the

27  ESOP, the Trustee approved the sale of AMPAM to the Parks Brothers just 4 years

28  after the ESOP Transaction.

- 46 -    BROZEN AND VENTURA'S ANSWER TO
PLAINTIFFS' FIRST AMENDED
COMPLAINT

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MIAMI

**ANSWER:** Brozen and Ventura deny the allegations in this paragraph. Moreover, to the extent this paragraph refers to "Trustee" as both Brozen and Ventura, Brozen and Ventura deny that Ventura served as the ESOP's trustee.

146.    After years of AMPAM declining in value, in 2023 the Parks Brothers orchestrated the sale of the ESOP's holdings to himself and a private equity firm, Gemspring (the "2023 Resale Transaction"). Defendant Brozen and Ventura as Plan Trustee imprudently and disloyally approved this transaction.

**ANSWER:** Brozen and Ventura deny the allegations in this paragraph.

147.    According to the Plan's Form 5500, on August 8, 2023, the Company and the ESOP entered into a stock purchase agreement with Canyonlands Purchaser, LLC to sell all outstanding shares of the Company. Canyonlands Purchaser, LLC is a Delaware entity formed on April 6, 2023 which is owned by Buddy Parks, Gemspring and, on information and belief, John Parks.

**ANSWER:** Brozen and Ventura respond that the relevant Form 5500 and the 2023 Stock Purchase Agreement speak for themselves and deny any allegations in this paragraph that are inconsistent with the relevant Form 5500 and the 2023 Stock Purchase Agreement. Brozen and Ventura lack sufficient knowledge to admit or deny the remaining allegations in this paragraph.

148.    Indeed, as discussed, the press release from the time of the sale is written as if the ESOP never existed in the first place. According to the press release, "Co-founder Buddy Parks . . . will remain as Chairman and maintain a significant ownership stake in the Company . . . ." Yet, as reflected in the Plan's 2022 Form 5500, the ESOP held all 834,331 outstanding shares of AMPAM stock at year-end 2022.

**ANSWER:** Brozen and Ventura respond that the ESOP's 2022 Form 5500 speaks for itself and deny any allegations in this paragraph that are inconsistent with the 2022 Form 5500. Brozen and Ventura further respond that the alleged press release speaks for itself. Brozen and Ventura deny any remaining allegations in this paragraph.

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MIAMI

149.   Again, the Parks Brothers never gave up control of AMPAM when they sold it to the ESOP as evidenced by the fact that they were able to orchestrate getting AMPAM shares back.

**ANSWER:** Brozen and Ventura deny the allegations in this paragraph.

150.   Although Buddy Parks may have wished to pretend the ESOP had never existed, the protections afforded by ERISA are not so easily shirked.  Due to Parks Brothers' conflicts as Board members, lenders and to be purchasers of AMPAM, the Trustee was obligated to investigate and give due consideration to alternatives to the resale of AMPAM back to the Parks Brothers and Gemspring via Canyonlands Purchaser LLC.  Had the Trustee done so, the marketplace would have produced higher offers and financing alternatives that would have better served the interests of the ESOP and ESOP participants.

**ANSWER:** Brozen and Ventura deny the allegations in this paragraph. Moreover, to the extent this paragraph refers to "Trustee" as both Brozen and Ventura, Brozen and Ventura deny that Ventura served as the ESOP's trustee.

151. The Selling Board Members and the Post ESOP Transaction Board Defendants were required to monitor the Trustee to ensure that the Trustee investigated other potential buyers and maximized the price paid to the ESOP for AMPAM stock. However, because of their unmitigated conflicts of interest, the Selling Board Members and the Post ESOP Transaction Board Defendants failed to appropriately monitor the Trustee prior to the decision to sell AMPAM back to the Parks Brothers and Gemspring.

**ANSWER:** Brozen and Ventura respond that the allegations in this paragraph are not directed at Brozen or Ventura, thus no response from them is required.  Brozen and Ventura further respond that the allegations in this paragraph state legal conclusion to which no response is required.  To the extent a response is required, Brozen and Ventura deny the allegations in this paragraph.  Moreover, to the extent this paragraph

McDermott Will & Emery LLP
Attorneys At Law
Miami

refers to "Trustee" as both Brozen and Ventura, Brozen and Ventura deny that Ventura served as the ESOP's trustee.

152. Ultimately, Plaintiffs and other employee-participants (whose ESOP retirement accounts were used to purchase 100% of AMPAM stock from the Sellers) were not given an opportunity to negotiate or otherwise take part in the determination of the price that they paid for AMPAM stock.  Likewise, employee-participants only learned about the the fact that the ESOP sold AMPAM back to the Parks Brothers and a private equity firm after it was completed, and employees had no involvement in the negotiations concerning the price.

**ANSWER:** Brozen and Ventura deny the allegations in this paragraph.

## V.    CLASS ACTION ALLEGATIONS

153.   Plaintiffs bring their claims on behalf of the Plan pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), and as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of the following Class:

> All participants in the AMPAM ESOP on or after December 28, 2017, and those participants' beneficiaries, excluding Defendants and their immediate family members; any fiduciary of the Plan; the officers and directors of AMPAM or of any entity in which a Defendant has a controlling interest; and legal representatives, successors, and assigns of any such excluded persons.

**ANSWER:** Brozen and Ventura respond that this paragraph states legal conclusions to which no response is required.  To the extent a response is required, Brozen and Ventura admit that the Plaintiffs purport to bring a class action under ERISA and deny the remaining allegations in this paragraph.

154. **Numerosity.** The Class satisfies the numerosity requirement because it is composed of hundreds of persons. At the end of 2022, the year before it was terminated, the ESOP had approximately 797 participants. The number of Class members is sufficiently large that joinder of all its members is impracticable.

McDermott Will & Emery LLP
Attorneys At Law
Miami

- 49 -    BROZEN AND VENTURA'S ANSWER TO PLAINTIFFS' FIRST AMENDED COMPLAINT

1    **ANSWER:** Brozen and Ventura respond that this paragraph states legal

2   conclusions to which no response is required.  To the extent a response is required,

3   Brozen and Ventura deny the allegations in this paragraph.

4    155.   **Commonality.** This case presents numerous common questions of law

5   and fact, including (among other things):

6       a.  Whether the ESOP Transaction was a prohibited transaction
            under ERISA;

7

8       b.  Whether the Resale Transaction was a prohibited transaction
            under ERISA;

9

10      c.  Whether the Sellers received more than adequate consideration
            in connection with the ESOP Transaction;

11

12      d.  Whether the ESOP received less than adequate consideration in
            connection with the 2023 Resale Transaction;

13

14      e.  Whether Defendant Brozen and Ventura were a fiduciary to the
            ESOP as the ESOP Trustee;

15

16      f.  Whether the Trustee engaged in a prudent investigation of the
            ESOP Transaction and acted in the best interests of the ESOP and
17          its participants in approving the ESOP Transaction;

18

19      g.  Whether the Trustee engaged in a prudent investigation of the
            ESOP Transaction and acted in the best interests of the ESOP and
20          its participants in approving the 2023 Resale Transaction;

21

22      h.  Whether AMPAM, operating through the Parks Brothers,
            imprudently appointed Brozen and Ventura as Trustee, failed to
23          monitor the Trustee, and imprudently retained the Trustee despite
            their fiduciary failures, without taking appropriate corrective
24          action;

25      i.  Whether the Parks Brothers were involved in the preparation of
            the financial projections used in appraisals of AMPAM stock that
26          formed the basis of the ESOP purchase price of $247 million;

27

28

                                    - 50 -    BROZEN AND VENTURA'S ANSWER TO
                                              PLAINTIFFS' FIRST AMENDED
                                              COMPLAINT

j. Whether the Parks Brothers and other Seller Defendants provided misleading or incomplete financial information in connection with the ESOP Transaction or the 2023 Resale Transaction;

k. The amount of losses suffered by the ESOP as a result of the unlawful conduct alleged herein;

l. The proper form of equitable and injunctive relief; and

m. The extent to which any non-fiduciary Defendants are subject to equitable remedies and relief.

**ANSWER:** Brozen and Ventura respond that this paragraph states legal conclusions to which no response is required. To the extent a response is required, Brozen and Ventura deny the allegations in this paragraph.

156. **Typicality.** Plaintiffs' claims are typical of the claims of the Class because (among other things): (a) they are or were employed by AMPAM and participated in the ESOP; (b) Plaintiffs were injured in the same manner as other Class members in connection with the ESOP Transaction and the inflated price that was paid for the Company; and (c) to the extent that Plaintiffs seek relief on behalf of the Plan pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), their claims are not only typical of, but the same as, a claim under § 502(a)(2) brought by any other Class member.

**ANSWER:** Brozen and Ventura respond that this paragraph states legal conclusions to which no response is required. To the extent a response is required, Brozen and Ventura deny the allegations in this paragraph.

157. **Adequacy.** Plaintiffs will fairly and adequately protect the interests of the Class and are committed to the vigorous representation of the Class. Plaintiffs' retained counsel, Cohen Milstein Sellers and Toll PLLC, are experienced in class action and ERISA litigation, and Plaintiffs and their counsel have no interests antagonistic to or in conflict with the interests of the Class. 158. **Rule 23(b)(1)(A).** Class certification is appropriate pursuant to Federal Rule of Civil Procedure 23(b)(1)(A). Fiduciaries of

McDermott Will & Emery LLP
Attorneys At Law
Miami

ERISA-covered plans have a legal obligation to act consistently with respect to all similarly situated participants and to act in the best interests of plan participants. This action challenges whether Defendants acted consistently with their fiduciary duties or otherwise violated ERISA as to the ESOP as a whole. As a result, prosecution of separate actions by individual members would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants relating to the ESOP.

**ANSWER:** Brozen and Ventura respond that this paragraph states legal conclusions to which no response is required. To the extent a response is required, Brozen and Ventura deny the allegations in this paragraph.

159. **Rule 23(b)(1)(B).** Class certification is also appropriate pursuant to Federal Rule of Civil Procedure 23(b)(1)(B). Administration of an ERISA-covered plan requires that all similarly situated participants be treated the same. Resolving whether Defendants fulfilled their fiduciary obligations to the ESOP and engaged in prohibited transactions with respect to the ESOP would, as a practical matter, be dispositive of the interests of the other participants in the ESOP and would substantially impair or impede their ability to protect their interests if they are not made parties to this litigation by being included in the Class. Further, the relief granted by the Court, including any equitable relief, injunctive relief, or accounting of profits, may be dispositive of the interests of other class members.

**ANSWER:** Brozen and Ventura respond that this paragraph states legal conclusions to which no response is required. To the extent a response is required, Brozen and Ventura deny the allegations in this paragraph.

160. **Rule 23(b)(2).** Additionally and alternatively, class certification is appropriate pursuant to Federal Rule of Civil Procedure 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Class, making appropriate declaratory and injunctive relief with respect to the Class as a whole. This action challenges whether Defendants acted consistently with their fiduciary duties or

BROZEN AND VENTURA'S ANSWER TO PLAINTIFFS' FIRST AMENDED COMPLAINT

McDermott Will & Emery LLP
Attorneys At Law
Miami

otherwise violated ERISA as to the ESOP as a whole. The members of the Class are entitled to declaratory and injunctive relief to remedy Defendants' fiduciary violations

**ANSWER:** Brozen and Ventura respond that this paragraph states legal conclusions to which no response is required.  To the extent a response is required, Brozen and Ventura deny the allegations in this paragraph.

161.  **Rule 23(b)(3)**. Additionally and alternatively, class certification is appropriate pursuant to Federal Rule of Civil Procedure 23(b)(3) because questions of law and fact common to all Class members predominate over any questions affecting individual members of the Class and because a class action is superior to other available methods for the fair and efficient adjudication of this action. Common questions related to liability will necessarily predominate over any individual questions because Defendants' duties and obligations were uniform as to all ESOP participants and therefore all members of the Class, and whether Defendants breached those duties will center on their conduct rather than the conduct of individual class members. Common questions as to remedies will likewise predominate over any individual issues in light of the plan-wide claims asserted in the action and the nature of the relief sought. Further, a class action is superior to other available methods for resolving the controversy because the claims are brought on behalf of the ESOP, involve an ESOP Transaction impacting all Class members, and the issues in this litigation will be most efficiently resolved in a single proceeding rather than multiple proceedings. The losses suffered by individual Class members are small compared to the expense and burden of individual prosecution of this action. As such, Class members do not have an interest in individually prosecuting their claims, and Plaintiffs are unaware of any similar action filed by another member of the Class. Proceeding on a class-wide basis in this forum will be desirable, manageable, and obviate the need for unduly duplicative litigation which might result in inconsistent judgments.

McDermott Will & Emery LLP
Attorneys At Law
Miami

**ANSWER:** Brozen and Ventura respond that this paragraph states legal conclusions to which no response is required. To the extent a response is required, Brozen and Ventura deny the allegations in this paragraph.

162. The names and addresses of the Class members are available from the ESOP and/or the Company, and notice can be provided to all members of the Class to the extent required by Federal Rule 23.

**ANSWER:** Brozen and Ventura respond that this paragraph states legal conclusions to which no response is required. To the extent a response is required, Brozen and Ventura lack sufficient knowledge to admit or deny the allegations in this paragraph.

## VI.   CAUSES OF ACTION
### Count I
### Prohibited Transactions in Violation of ERISA § 406(a), 29 U.S.C. § 1106(a) (Against Neil Brozen, Ventura, the Parks Brothers, John G. Mavredakis, and AMPAM)

163. Plaintiffs incorporate the preceding paragraphs as though set forth herein.

**ANSWER:** Brozen and Ventura incorporate their responses to the paragraphs above as though fully stated herein.

164. ERISA § 406(a)(1), 29 U.S.C. § 1106(a)(1) requires that a plan fiduciary "shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect (A) sale or exchange, or leasing, of any property between the plan and a party in interest," "(B) lending of money or other extensions of credit between the plan and a party in interest," or a "(D) transfer to, or use by or for the benefit of a party in interest, of any assets of the plan."

**ANSWER:** Brozen and Ventura respond that the ERISA § 406(a)(1), 29 U.S.C. § 1106(a)(1) speaks for itself and deny any allegations in this paragraph that are inconsistent with ERISA § 406(a)(1), 29 U.S.C. § 1106(a)(1).

165.   Each of the Defendants named in this Count was a fiduciary as discussed in Section III.D-G above.

**ANSWER:** Brozen and Ventura respond that the allegations in this paragraph contain legal conclusions to which no response is required.  To the extent a response is required, Brozen and Ventura admit that Brozen was fiduciary of the ESOP in his capacity as the ESOP's trustee.  Brozen and Ventura deny that Ventura was a fiduciary of the ESOP.  Brozen and Ventura lack sufficient knowledge to admit or deny the allegations in this paragraph with respect to the other Defendants.

166.   The ESOP Transaction involved the sale of property and lending of money between the ESOP and several "parties in interest," and transfer of ESOP assets to parties in interest as discussed in Section III.D-G above.

**ANSWER:** Brozen and Ventura respond that the allegations in this paragraph contain legal conclusions to which no response is required.  Brozen and Ventura further respond that the 2019 Stock Purchase Agreement speaks for itself and deny any allegations in this paragraph that are inconsistent with the 2019 stock Purchase Agreement.  Brozen and Ventura deny the remaining allegations in this paragraph.

167.   Similarly, the sale of AMPAM to Gemspring and Buddy Parks in 2023 involved the sale of plan property to "parties in interest" as discussed in Section IV. above.

**ANSWER:** Brozen and Ventura respond that the allegations in this paragraph contain legal conclusions to which no response is required.  Brozen and Ventura further respond that the 2023 Stock Purchase Agreement speaks for itself and deny any allegations in this paragraph that are inconsistent with the 2023 Stock Purchase Agreement. Brozen and Ventura deny the remaining allegations in this paragraph.

168.   As set forth in Section IV above, as Trustee, Defendants Brozen and Ventura approved the ESOP Transaction terms, including the price and financing terms, in violation of ERISA § 406(a)(1)(A), (B), and (D), 29 U.S.C. § 1106(a)(1)(A),

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MIAMI

(B), and (D) because the Trustee failed to conduct a prudent investigation of the sale price, financing terms, and other material terms of the Transaction.

**ANSWER:** Brozen and Ventura deny the allegations in this paragraph.

169.   Four years later, the Trustee approved the Resale Transaction, whereby the ESOP received less than fair market value when it sold AMPAM to Gemspring and the Parks Brothers. The Trustee approved the Resale Transaction including the transaction terms and price, in violation of ERISA § 406(a)(1)(A) and (D), 29 U.S.C. § 1106(a)(1)(A) and (D) without conducting a prudent and loyal investigation into alternative buyers and options that would be in the interest of the ESOP.

**ANSWER:** Brozen and Ventura deny the allegations in this paragraph.

170.   Prior to and after the ESOP Transaction and the Resale Transaction, AMPAM, as a Named Fiduciary, and the Selling Board Members (who controlled AMPAM) caused the prohibited transactions to occur through their actions and inactions described above.

**ANSWER:** Brozen and Ventura respond that the allegations in this paragraph are not directed at Brozen or Ventura, thus no response from them is required.  Brozen and Ventura further respond that the allegations in this paragraph state legal conclusion to which no response is required.  To the extent a response is required, Brozen and Ventura deny the allegations in this paragraph.

171. Further, each of the Parks Brothers and John G. Mavredakis received significant consideration in connection with the ESOP Transaction and was familiar with the terms of, and parties to, the Transaction. As such, each of them had actual or constructive knowledge that: (i) the Transaction constituted a direct or indirect sale of property between the ESOP and parties affiliated with AMPAM (ERISA "parties in interest"); (ii) the ESOP loans constituted a use of Plan assets by or for the benefit of themselves and other parties in interest; (iii) the ESOP Transaction price was more than fair market value as set forth in Section IV above; (iv) at least Buddy Parks retained an ownership interest in AMPAM after it was supposed to be 100% ESOP

owned. Brozen and Ventura were hired for the purpose of ensuring the ESOP Transaction was fair to the ESOP and thus also knew or should have known the aforementioned facts. Yet, in spite of such actual or constructive knowledge, the Parks Brothers, John G. Mavredakis, Brozen, Ventura, and AMPAM took acts to consummate the ESOP Transaction and/or influenced the Trustee to do so, and are thus liable for violations of ERISA § 406(a)(1)(A), (B), and (D), 29 U.S.C. § 1106(a)(1)(A), (B), and (D).

**ANSWER:** Brozen and Ventura respond that the allegations in this paragraph state legal conclusions and arguments to which no response is required. To the extent a response is required, Brozen and Ventura deny the allegations.

172. Similarly, the Parks Brothers, John Mavredakis, Brozen, Ventura, and AMPAM had actual or constructive knowledge that: (i) the sale of AMPAM from the ESOP to Gemspring and Buddy Parks in 2023 constituted a direct or indirect sale of property between the ESOP and parties affiliated with AMPAM (ERISA "parties in interest"); and, (ii) the sale price was less than fair market value as set forth in Section IV above. Yet, in spite of such actual or constructive knowledge, the Parks Brothers, John Mavredakis, Brozen, Ventura, and AMPAM took acts to consummate the sale of AMPAM from the ESOP to Gemspring and Buddy Parks and/or influenced the Trustee to do so, and are thus liable for violations of ERISA § 406(a)(1)(A) and (D), 29 U.S.C. § 1106(a)(1)(A) and (D).

**ANSWER:** Brozen and Ventura respond that the allegations in this paragraph state legal conclusions and argument to which no response is required. To the extent a response is required, Brozen and Ventura deny the allegations in this paragraph.

173. Defendants Brozen, Ventura, the Parks Brothers, John G. Mavredakis and AMPAM thus caused the ESOP to pay an inflated price and take on $240 million in debt with unreasonable terms (the ESOP Transaction), which resulted in substantial losses to the ESOP and its participant accounts. Defendants Brozen, Ventura, and the Parks Brothers then used their control over the distressed Company to their advantage

McDermott Will & Emery LLP
Attorneys At Law
Miami

and caused the Resale Transaction where Gemspring and the Parks Brothers purchased AMPAM from the ESOP for less than fair market value. They are thus each subject to appropriate relief under ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) and ERISA § 409, 29 U.S.C. § 1109 for these violations of ERISA.

**ANSWER:** Brozen and Ventura respond that the allegations in this paragraph state legal conclusion to which no response is required. To the extent a response is required, Brozen and Ventura deny the allegations in this paragraph.

174. In addition or alternatively, each of them is liable as co-fiduciaries as set forth in Count IV.

**ANSWER:** Brozen and Ventura respond that the allegations in this paragraph state legal conclusions and argument to which no response is required. To the extent a response is required, Brozen and Ventura deny the allegations in this paragraph.

### Count II
### Prohibited Transaction in Violation of ERISA § 406(b), 29 U.S.C. § 1106(b)
### (Against Charles E. Parks III/Buddy Parks, John D. Parks and John G. Mavredakis)

175. Plaintiffs incorporate the preceding paragraphs as though set forth herein.

**ANSWER:** Brozen and Ventura incorporate their responses to the paragraphs above as though fully stated herein.

176. Each of the Defendants named in this Count was a fiduciary as discussed in Section III.E above.

**ANSWER:** Because the allegations in Count II are not asserted against Brozen or Ventura, no response is required. To the extent a response is required, Brozen and Ventura deny the allegations in this paragraph.

177. ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1) prohibits a fiduciary from "deal[ing] with the assets of the plan in his own interest or for his own account."

**ANSWER:** Because the allegations in Count II are not asserted against Brozen or Ventura, no response is required. To the extent a response is required, Brozen and Ventura deny the allegations in this paragraph.

McDermott Will & Emery LLP
Attorneys At Law
Miami

178.   As set forth in Sections III.E and IV above, the Parks Brothers and John G. Mavredakis sold their interest in AMPAM and dealt with ESOP assets in their own interest within the meaning of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1). ERISA § 406(b)(2), 29 U.S.C. § 1106(b)(2) mandates that a plan fiduciary shall not "act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants." As also set forth in these Sections above, the Parks Brothers then bought an interest in AMPAM from the ESOP and again dealt with ESOP assets in their own interest within the meaning of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1).

**ANSWER:** Because the allegations in Count II are not asserted against Brozen or Ventura, no response is required. To the extent a response is required, Brozen and Ventura deny the allegations in this paragraph.

179.   As set forth in Sections III.E and IV above, the Parks Brothers and John G. Mavredakis acted in their own interests and adverse to ESOP's interests in connection with the ESOP Transaction by arranging to receive more than adequate consideration for their shares, in violation of ERISA § 406(b)(2), 29 U.S.C. § 1106(b)(2). Defendant Buddy Parks likewise acted in his own interest and adverse to ESOP's interests in connection with the purchase by Gemspring and Buddy Parks of AMPAM from the ESOP in 2023 by arranging to pay the ESOP less than adequate consideration for its shares, in violation of ERISA § 406(b)(2), 29 U.S.C. § 1106(b)(2).

**ANSWER:** Because the allegations in Count II are not asserted against Brozen or Ventura, no response is required. To the extent a response is required, Brozen and Ventura deny the allegations in this paragraph.

180.   ERISA § 406(b)(3), 29 U.S.C. § 1106(b)(3) prohibits a plan fiduciary from "receiv[ing] any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan."

McDermott Will & Emery LLP
Attorneys At Law
Miami

- 59 -    BROZEN AND VENTURA'S ANSWER TO
PLAINTIFFS' FIRST AMENDED
COMPLAINT

**ANSWER:** Because the allegations in Count II are not asserted against Brozen or Ventura, no response is required. To the extent a response is required, Brozen and Ventura deny the allegations in this paragraph.

181. As set forth in Sections III.E and IV above, the Parks Brothers and John G. Mavredakis orchestrated the ESOP Transaction and caused themselves to receive consideration (indeed, more than adequate consideration) for their own personal accounts in connection with the ESOP Transaction, in violation of ERISA § 406(b)(3), 29 U.S.C. § 1106(b)(3).

**ANSWER:** Because the allegations in Count II are not asserted against Brozen or Ventura, no response is required. To the extent a response is required, Brozen and Ventura deny the allegations in this paragraph.

182. As set forth in Sections IV above, Buddy Parks orchestrated the 2023 Resale Transaction and caused him to receive consideration (indeed, more than adequate consideration) for their own personal accounts in connection with the ESOP Transaction, in violation of ERISA § 406(b)(3), 29 U.S.C. § 1106(b)(3).

**ANSWER:** Because the allegations in Count II are not asserted against Brozen or Ventura, no response is required. To the extent a response is required, Brozen and Ventura deny the allegations in this paragraph.

183. The Parks Brothers and John G. Mavredakis are therefore subject to appropriate relief under ERISA § 502(a)(2) and (3), 29 U.S.C. § 1132(a)(2) and (3) and ERISA § 409, 29 U.S.C. § 1109 for these violations of ERISA.

**ANSWER:** Because the allegations in Count II are not asserted against Brozen or Ventura, no response is required. To the extent a response is required, Brozen and Ventura deny the allegations in this paragraph.

**Count III**
**Breach of Fiduciary Duties Under ERISA § 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A) and (B)**

BROZEN AND VENTURA'S ANSWER TO PLAINTIFFS' FIRST AMENDED COMPLAINT

McDermott Will & Emery LLP
Attorneys At Law
Miami

**(Against Neil Brozen, Ventura, Charles E. Parks III/Buddy Parks, John D. Parks, John G. Mavredakis, James C. Wright III, AMPAM, and the other Board Defendants)**

184. Plaintiffs incorporate the preceding paragraphs as though set forth herein.

**ANSWER:** Brozen and Ventura incorporate their responses to the paragraphs above as though fully stated herein.

185. ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A) requires that a plan fiduciary act "for the exclusive purpose of providing benefits to participants and [the] beneficiaries [of the plan.]"

**ANSWER:** Brozen and Ventura respond that ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A) speaks for itself and deny any allegations in this paragraph that are inconsistent with ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A).

186. ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B) requires that a plan fiduciary act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent [person] acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."

**ANSWER:** Brozen and Ventura respond that ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B) speaks for itself and deny any allegations in this paragraph that are inconsistent with ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B). Brozen and Ventura deny the remaining allegations in this paragraph.

187. In the context of a sale of the sponsoring company/employer to an ESOP, the duties of loyalty under ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A) and prudence under ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B) require a fiduciary ESOP trustee to undertake a prudent and diligent investigation of the sale price, the financing terms, and other transaction terms and all underlying financial projections and assumptions, in the exclusive interest of the ESOP and its participants without regard to the interests of company insiders who retained the trustee, to ensure that the

McDermott Will & Emery LLP
Attorneys At Law
Miami

ESOP and its participants pay no more than adequate consideration for the company's assets.

**ANSWER:** Brozen and Ventura respond that ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A) and ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B) speaks for itself and deny any allegations in this paragraph that are inconsistent with ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A) and ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B).  Brozen and Ventura deny the remaining allegations in this paragraph.

188. Each of the Defendants named in this Count was a fiduciary as discussed in Section III.D-G above.

**ANSWER:** Brozen and Ventura respond that the allegations in this paragraph state legal conclusions to which no response is required.  To the extent a response is required, Brozen admits that, as the ESOP's trustee, he served as a fiduciary to the ESOP.  Brozen and Ventura deny that Ventura served as a fiduciary to the ESOP. Brozen and Ventura further respond that the remaining allegations in this paragraph are not directed at Brozen or Ventura, thus no response from them is required.  To the extent a response is required, Brozen and Ventura deny the remaining allegations.

189.   Based on the facts alleged above, Defendants Brozen and Ventura failed to undertake a prudent and appropriate investigation of the terms of the ESOP Transaction and effectively gave a wink and a nod to the Parks Brothers who hired Defendant Brozen and Ventura, instead of serving in a truly independent capacity for the exclusive benefit of the ESOP and its participants.

**ANSWER:** Brozen and Ventura admit that Brozen served as the ESOP's trustee during the relevant time period and deny that Ventura served as the ESOP's trustee. Brozen and Ventura further respond that the remaining allegations in this paragraph state legal conclusions to which no response is required.  To the extent a response is required, Brozen and Ventura deny the remaining allegations.

190.   As alleged above, a prudent and loyal investigation of the relevant ESOP Transaction terms and underlying financial projections and assumptions in connection

with the ESOP Transaction would have revealed that the price the ESOP paid was greater than the fair market value of the AMPAM stock at the time of the Transaction, as set forth in Section IV above.

**ANSWER:** Brozen and Ventura deny the allegations in this paragraph.

191.    Based on the facts alleged above, Defendants Brozen and Ventura also failed to undertake a prudent and appropriate investigation of the terms of the sale of AMPAM from the ESOP to Gemspring and Buddy Parks in the 2023 Resale Transaction, again failing to serve in a truly independent capacity for the exclusive benefit of the ESOP and its participants.

**ANSWER:** Brozen and Ventura deny the allegations in this paragraph.

192.    As alleged above, with respect to the 2023 Resale Transaction, a prudent and loyal investigation of the relevant terms and underlying financial projections and assumptions in connection with the transaction would have revealed that the price received by the ESOP was less than the fair market value of the AMPAM stock at the time of the transaction.

**ANSWER:** Brozen and Ventura deny the allegations in this paragraph.

193.    By failing to act prudently and loyally in participants' best interests in connection with the ESOP Transaction and the ongoing management of the ESOP (including the subsequent resale of the Company for less than it was originally purchased), Defendants Brozen and Ventura breached their fiduciary duties under ERISA § 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A) and (B) and caused losses from the ESOP's overpayment in the ESOP Transaction, and receiving less than fair market value for AMPAM in the Resale Transaction, which caused losses to the individual retirement accounts of ESOP participants.

**ANSWER:** Brozen and Ventura respond that the allegations in this paragraph state legal conclusions to which no response is required.  To the extent a response is required, Brozen and Ventura deny the allegations in this paragraph.

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MIAMI

194.   As set forth above, the ESOP Transaction Board Defendants breached their fiduciary duties in connection with the ESOP Transaction by, *inter alia*, selecting Brozen and Ventura as Trustee for self-interested reasons, by providing overly aggressive projections of growth to Defendants Brozen and Ventura, and by ensuring that Buddy Parks remained Chairman of the Board and that John Parks retained control over AMPAM through his role as President.

**ANSWER:**  Brozen and Ventura deny the allegations in this paragraph.

195.   As also set forth above, the Parks Brothers violated their duties of loyalty and prudence in causing the Trustee, or permitting the Trustee, to approve the 2023 Resale Transaction for less than the ESOP paid for the stock and less than it was worth.

**ANSWER:** Brozen and Ventura respond that the allegations in this paragraph are not directed at Brozen or Ventura, thus no response from them is required.  To the extent a response is required, Brozen and Ventura deny the allegations.  Moreover, to the extent this paragraph refers to "Trustee" as both Brozen and Ventura, Brozen and Ventura deny that Ventura served as the ESOP's trustee.

196.   As alleged above, the Board Defendants were ESOP fiduciaries who were responsible for fulfilling AMPAM's fiduciary duties as set forth in the Plan Document. In addition, the Board's the power to appoint and/or remove the Trustee resulted in their obligation to monitor the Trustee to ensure that it is acting in compliance with the terms of the Plan and in accordance with ERISA. *See* 29 C.F.R. § 2509.75-8 (FR-17) (2023). If the appointed fiduciary has violated or continues to violate ERISA, the monitoring fiduciary must remove the appointed fiduciary and take any other remedial action necessary to address the ERISA violations.

**ANSWER:** Brozen and Ventura respond that the allegations in this paragraph state legal conclusions to which no response is required.  To the extent a response is required, Brozen and Ventura deny the allegations in this paragraph.  Moreover, to the extent this paragraph refers to "Trustee" as both Brozen and Ventura, Brozen and

McDermott Will & Emery LLP
Attorneys At Law
Miami

Ventura admit that Brozen served as the ESOP's trustee during the relevant time period and deny that Ventura served as the ESOP's trustee.

197.   None of the ESOP Transaction Board Defendants adequately monitored the Trustee's performance prior to the ESOP Transaction.  As such, they failed to ensure that the Trustee did not allow the ESOP to pay more than fair market value for the AMPAM stock and that the financing terms were reasonable.

**ANSWER:** Brozen and Ventura respond that the allegations in this paragraph are not directed at Brozen or Ventura, thus no response from them is required.  To the extent a response is required, Brozen and Ventura deny the allegations.  Moreover, to the extent this paragraph refers to "Trustee" as both Brozen and Ventura, Brozen and Ventura deny that Ventura served as the ESOP's trustee.

198.   None of the Post ESOP Transaction Board Defendants monitored the Trustee's performance prior to the 2023 Resale Transaction. As such, they failed to ensure that the Trustee did not allow the ESOP to receive less than fair market value for the AMPAM stock.

**ANSWER:** Brozen and Ventura respond that the allegations in this paragraph are not directed at Brozen or Ventura, thus no response from them is required.  To the extent a response is required, Brozen and Ventura deny the allegations.  Moreover, to the extent this paragraph refers to "Trustee" as both Brozen and Ventura, Brozen and Ventura deny that Ventura served as the ESOP's trustee.

199.   As such, the Parks Brothers, John G. Mavredakis, James C. Wright III, AMPAM, and the other Board Defendants breached their fiduciary duty to monitor the Trustee in compliance with ERISA § 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A) and (B) and other applicable ERISA regulations. Among other things, the Parks Brothers, John G. Mavredakis, AMPAM, and the other Board Defendants:

> a.   failed to monitor and evaluate the performance of the Trustee, or have a system in place for doing so, to ensure that the Trustee conducted a

McDermott Will & Emery LLP
Attorneys At Law
Miami

sufficiently rigorous review of the ESOP Transaction and the 2023 Resale Transaction in compliance with ERISA;

b.  knew and failed to correct the fact that the Trustee was acting based on unrealistic and unreliable financial projections for AMPAM's future revenues, cash flows, and earnings;

c.  knew and failed to correct the fact that the Transaction sale price approved by the Trustee was inflated and exceeded the fair market value of the Company and that the financing terms were unreasonably profitable for the Sellers to the detriment of the ESOP and its sole asset (AMPAM);

d.  knew and failed to correct the fact that the 2023 Resale Transaction sale price approved by the Trustee was below fair market value of the Company;

e.  failed to investigate Defendant Brozen's appropriateness and competence as Trustee which would have identified and then avoided the problems associated with his work in connection with other transactions (*see supra* ¶ 70);

f.  failed to remove the Trustee when they knew that the Trustee's performance was inadequate for the reasons described herein and elsewhere in this Complaint; and

g.  failed to take other appropriate remedial measures to address the Trustee's fiduciary failures as Trustee and the improper approval of the ESOP Transaction (and subsequent resale transaction).

**ANSWER:** Brozen and Ventura respond that the allegations in this paragraph are not directed at Brozen or Ventura, thus no response from them is required. To the extent a response is required, Brozen and Ventura deny the allegations. Moreover, to the extent this paragraph refers to "Trustee" as both Brozen and Ventura, Brozen and Ventura deny that Ventura served as the ESOP's trustee.

200. Had AMPAM and the ESOP Transaction Board Defendants properly monitored the Trustee, the ESOP would not have overpaid in the ESOP Transction.

McDermott Will & Emery LLP
Attorneys At Law
Miami

**ANSWER:** Brozen and Ventura deny the allegations in this paragraph. Moreover, to the extent this paragraph refers to "Trustee" as both Brozen and Ventura, Brozen and Ventura deny that Ventura served as the ESOP's trustee.

201.    Had AMPAM and the Post ESOP Transaction Board Defendants properly monitored the Trustee, the ESOP would not have received less than adequate consideration for AMPAM in the 2023 Resale Transaction.

**ANSWER:** Brozen and Ventura deny the allegations in this paragraph. Moreover, to the extent this paragraph refers to "Trustee" as both Brozen and Ventura, Brozen and Ventura deny that Ventura served as the ESOP's trustee.

202.    Defendants Brozen, Ventura, the Parks Brothers, AMPAM, and the other Board Defendants caused substantial lossess to the ESOP and thus are subject to appropriate relief under ERISA § 502(a)(2) and (3), 29 U.S.C. § 1132(a)(2) and (3) and ERISA § 409, 29 U.S.C. § 1109 for these fiduciary breaches in violation of ERISA.

**ANSWER:** Brozen and Ventura deny the allegations in this paragraph.

### Count IV
### Co-Fiduciary Liability Under ERISA § 405(a)(1)-(3), 29 U.S.C. § 1105(a)(1)-(3)
### (Against AMPAM and the Board Defendants)

203. Plaintiffs incorporate the preceding paragraphs as though set forth herein.

**ANSWER:** Brozen and Ventura incorporate their responses to the paragraphs above as though fully stated herein.

204.    Each of the Defendants named in this Count was a fiduciary as discussed in Section III.D and G above.

**ANSWER:** Because the allegations in Count IV are not asserted against Brozen or Ventura, no response is required. To the extent a response is required, Brozen and Ventura deny the allegations in this paragraph.

205.    ERISA § 405(a)(1), 29 U.S.C. § 1105(a)(1) provides that a fiduciary "with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan . . . if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary."

- 67 -     BROZEN AND VENTURA'S ANSWER TO PLAINTIFFS' FIRST AMENDED COMPLAINT

McDermott Will & Emery LLP
Attorneys At Law
Miami

**ANSWER**: Because the allegations in Count IV are not asserted against Brozen or Ventura, no response is required. To the extent a response is required, Brozen and Ventura deny the allegations in this paragraph.

206. ERISA § 405(a)(2), 29 U.S.C. § 1105(a)(2) provides that a fiduciary "with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan . . . if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach."

**ANSWER**: Because the allegations in Count IV are not asserted against Brozen or Ventura, no response is required. To the extent a response is required, Brozen and Ventura deny the allegations in this paragraph.

207. ERISA § 405(a)(3), 29 U.S.C. § 1105(a)(3) provides that a fiduciary "with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan . . . if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach."

**ANSWER**: Because the allegations in Count IV are not asserted against Brozen or Ventura, no response is required. To the extent a response is required, Brozen and Ventura deny the allegations in this paragraph.

208. The Board Defendants had all management power over AMPAM and/or were involved in and directed the preparation of the financial projections underlying the stock appraisal AMPAM relied upon in determining (i) the purchase price the ESOP paid for the Company; (ii) the subsequent valuations of AMPAM stock at year-end 2019, 2020, 2021, and 2022; (iii) the price paid to the ESOP in the 2023 Resale Transaction. 209. Given their intimate knowledge of AMPAM's business, their unique access to Company financial information (and involvement in the preparation of such information), and their appointment of Defendants Brozen and Ventura, AMPAM and the ESOP Transaction Board Defendants knew that the price the ESOP paid for

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MIAMI

AMPAM stock was inflated and exceeded fair market value and knew that the Trustee failed to prudently and appropriately carry out their duties in approving the ESOP Transaction.

**ANSWER**:  Because the allegations in Count IV are not asserted against Brozen or Ventura, no response is required.  To the extent a response is required, Brozen and Ventura deny the allegations in this paragraph.

210.    Given their intimate knowledge of AMPAM's business, their unique access to Company financial information (and involvement in the preparation of such information), and their ongoing duty to monitor the Trustee, AMPAM and the Post ESOP Transaction Board Defendants knew that the price the ESOP received for AMPAM stock was below fair market value and knew that the Trustee failed to prudently and appropriately carry out the duties of the Trustee in approving the 2023 Resale Transaction.

**ANSWER**:  Because the allegations in Count IV are not asserted against Brozen or Ventura, no response is required.  To the extent a response is required, Brozen and Ventura deny the allegations in this paragraph.

211.    Nonetheless, they knowingly participated in the fiduciary violations of the Trustee and concealed them from the ESOP's participants and others by allowing Defendants Brozen and Ventura to continue to serve as Trustee and allowing the ESOP Transaction and the 2023 Resale Transaction to go forward without disclosing, addressing, or remedying those fiduciary violations.

**ANSWER**:  Because the allegations in Count IV are not asserted against Brozen or Ventura, no response is required.  To the extent a response is required, Brozen and Ventura deny the allegations in this paragraph.

212.    Similarly, by failing to appropriately monitor and address the performance failures of the Trustee, or have a system in place for ensuring that the Trustee conducted a sufficiently rigorous review of the ESOP Transaction and the 2023 Resale Transaction in compliance with ERISA, the Defendants named in this Count

McDermott Will & Emery LLP
Attorneys At Law
Miami

failed to comply with their fiduciary duties which enabled the Trustee to facilitate the
ESOP Transaction and 2023 Resale Transaction in breach of the Trustee's fiduciary
duties to the ESOP.

**ANSWER**: Because the allegations in Count IV are not asserted against Brozen
or Ventura, no response is required. To the extent a response is required, Brozen and
Ventura deny the allegations in this paragraph.

213. As discussed above, the Defendants named in this Count had knowledge of
the facts underlying the Trustee's breaches and knowledge that the Trustee was not
appropriately monitored, but failed to make reasonable efforts under the circumstances
to remedy the breaches.

**ANSWER**: Because the allegations in Count IV are not asserted against Brozen
or Ventura, no response is required. To the extent a response is required, Brozen and
Ventura deny the allegations in this paragraph.

214. Under ERISA § 405(a)(1)-(3), 29 U.S.C. § 1105(a)(1)-(3), each of the
Defendants named in this Count are liable as co-fiduciaries for Defendants Brozen and
Ventura's fiduciary violations.

**ANSWER**: Because the allegations in Count IV are not asserted against Brozen
or Ventura, no response is required. To the extent a response is required, Brozen and
Ventura deny the allegations in this paragraph.

215. Had they not violated their co-fiduciary duties, the ESOP would not have
suffered the losses alleged herein. They are therefore subject to appropriate relief under
ERISA § 409, 29 U.S.C. § 1109 and ERISA § 502(a)(2) and (3), 29 U.S.C. § 1132(a)(2)
and (3) based on their co-fiduciary liability.

**ANSWER**: Because the allegations in Count IV are not asserted against Brozen
or Ventura, no response is required. To the extent a response is required, Brozen and
Ventura deny the allegations in this paragraph.

**Count V**

BROZEN AND VENTURA'S ANSWER TO
PLAINTIFFS' FIRST AMENDED
COMPLAINT

**Equitable Relief Under ERISA § 502(a)(3), 29 U.S.C § 1132(a)(3)  (Against Seller Defendants)**

216. Plaintiffs incorporate the preceding paragraphs as though set forth herein.

**ANSWER:** Brozen and Ventura incorporate their responses to the paragraphs above as though fully stated herein.

217. Under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), a court may award "other appropriate equitable relief" to redress "any act or practice" that violates ERISA. A defendant may be held liable under this section regardless of whether it is a fiduciary.

**ANSWER**:  Because the allegations in Count V are not asserted against Brozen or Ventura and Count V has been dismissed (ECF 121), no response is required.  To the extent a response is required, Brozen and Ventura deny the allegations in this paragraph.

218.  A non-fiduciary transferee of ill-gotten assets of the Plan is subject to equitable restitution of those assets and disgorgement of any profits thereon if the non-fiduciary had actual or constructive knowledge of the circumstances that rendered the transaction or payment unlawful.

**ANSWER**:  Because the allegations in Count V are not asserted against Brozen or Ventura and Count V has been dismissed (ECF 121), no response is required.  To the extent a response is required, Brozen and Ventura deny the allegations in this paragraph.

219.  The Sellers knowingly participated in and profited from the fiduciary breaches and prohibited transactions alleged herein with full knowledge that their stake in the Company was being unlawfully acquired for greater than fair market value.

**ANSWER**:  Because the allegations in Count V are not asserted against Brozen or Ventura and Count V has been dismissed (ECF 121), no response is required.  To the extent a response is required, Brozen and Ventura deny the allegations in this paragraph.

BROZEN AND VENTURA'S ANSWER TO
PLAINTIFFS' FIRST AMENDED
COMPLAINT

McDermott Will & Emery LLP
Attorneys At Law
Miami

220.   Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), the Court should order restitution of the consideration Sellers received as a result of the ESOP Transaction and disgorgement of any profits thereon, regardless of whether or not the Sellers were fiduciaries to the ESOP. As discussed above, the consideration that the Sellers received impermissibly exceeded the fair market value of their shares. Moreover, the Sellers had actual or constructive knowledge that they were receiving greater than fair market consideration based on, *inter alia*, (i) their personal familiarity with the value of their own equity interests; (ii) their access to the Company's books and records; (iii) their inside knowledge of confidential business and financial information pertaining to AMPAM; (iv) their status as officers or directors of the Company, to the extent they held those roles; and (v) their close personal and/or family relationships to other company insiders.

**ANSWER**:  Because the allegations in Count V are not asserted against Brozen or Ventura and Count V has been dismissed (ECF 121), no response is required.  To the extent a response is required, Brozen and Ventura deny the allegations in this paragraph.

221.   The Plan Document contemplates that some or all of the Sellers would invest the proceeds of the ESOP Transaction in "qualified replacement property" pursuant to Section 1042 of the Internal Revenue Code in order to avoid capital gains tax on the sale of their AMPAM stock to the ESOP. Under I.R.C. Section 1042, the gains on the sale of the stock to the ESOP are taxed when the qualified replacement property is sold, and capital gains taxes can be entirely eliminated if the qualified replacement property is held by the Sellers until death. Thus, on information and belief, any Sellers who invested the proceeds in qualified replacement property continue to hold such property to avoid the adverse tax consequences.

**ANSWER**:  Because the allegations in Count V are not asserted against Brozen or Ventura and Count V has been dismissed (ECF 121), no response is required.  To

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MIAMI

the extent a response is required, Brozen and Ventura deny the allegations in this paragraph.

222.   Each Seller who sought deferral of capital gains pursuant to I.R.C. Section 1042 was required to sign a Statement of Purchase that identified and declared the specific securities that represented the qualified replacement property that was purchased to avoid taxes on the receipt of proceeds from the ESOP Transaction. The Statement of Purchase for each Seller who elected an I.R.C. Section 1042 deferral would be filed with his or her tax return. 223. Thus, all consideration to the Sellers in connection with the ESOP Transaction and all profits thereon are in the current possession of the Sellers and are traceable to its current location.

**ANSWER**:  Because the allegations in Count V are not asserted against Brozen or Ventura and Count V has been dismissed (ECF 121), no response is required.  To the extent a response is required, Brozen and Ventura deny the allegations in this paragraph.

224. The Sellers cannot retain this consideration to the extent it exceeded the fair market value of their shares.

**ANSWER**:  Because the allegations in Count V are not asserted against Brozen or Ventura and Count V has been dismissed (ECF 121), no response is required.  To the extent a response is required, Brozen and Ventura deny the allegations in this paragraph.

### Count VI

### Illegal Agreement to Exculpate Fiduciary Liability in Violation of ERISA § 410(a), 29 U.S.C. § 1110(a) (Against Trustee, Board Defendants and AMPAM)

225. Plaintiffs incorporate the preceding paragraphs as though set forth herein.

**ANSWER:** Brozen and Ventura incorporate their responses to the paragraphs above as though fully stated herein.

226. ERISA § 410(a), 29 U.S.C. § 1110(a) provides in relevant part (with exceptions not applicable here) that "any provision in an agreement or instrument

McDermott Will & Emery LLP
Attorneys At Law
Miami

which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under this part [ERISA Part IV] shall be void as against public policy."

**ANSWER**:  Because Count VI has been dismissed (ECFs 121, 122), no response is required.  To the extent a response is required, Brozen and Ventura deny the allegations in this paragraph.

227.   AMPAM adopted and/or approved terms of the ESOP Plan Document that state that the Company will indemnify any officer and director of AMPAM and all of its affiliates for "any loss, cost, expense, or other damage, including reasonable attorneys' fees, suffered by such Indemnitee resulting from or incurred with respect to any legal proceedings related in any way to the performance of services by the Indemnitee."

**ANSWER**:  Because Count VI has been dismissed (ECFs 121, 122), no response is required.  To the extent a response is required, Brozen and Ventura deny the allegations in this paragraph.

228.   Buddy Parks and AMPAM adopted and/or approved the Trust Agreement with Defendant Brozen, which states that AMPAM will indemnify Defendant Brozen for "any loss, cost, expense or other damage, including attorney's fees, suffered by the Trustee and resulting from or incurred with respect to any legal proceedings related in any way to the performance of services by the Trustee." 229. AMPAM adopted and/or approved the Company Bylaws, which states in Article VI that AMPAM will indemnify any officer and director of AMPAM against "reasonable expenses (including attorneys' fees), judgments, fines, penalties, amounts paid in settlement and other liabilities actually and reasonably incurred" from any legal proceeding related to the officer or director's role as officer or director, even for events that occurred *prior to* adoption of the indemnification provision of the Bylaws.

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MIAMI

**ANSWER**:   Because Count VI has been dismissed (ECFs 121, 122), no response is required.  To the extent a response is required, Brozen and Ventura deny the allegations in this paragraph.

230.   The indemnification and defense provisions in the ESOP Plan Document and the Trust Agreement and Article VI of the Company Bylaws violate ERISA § 410(a), 29 U.S.C. § 1110(a) to the extent that they purport to relieve Defendant Brozen and the Board Defendants of responsibility or liability for violations of ERISA, including the ERISA violations alleged herein.

**ANSWER**:   Because Count VI has been dismissed (ECFs 121, 122), no response is required.  To the extent a response is required, Brozen and Ventura deny the allegations in this paragraph.

231.   As such, these provisions must be declared void or inapplicable to the claims alleged herein.

**ANSWER**:   Because Count VI has been dismissed (ECFs 121, 122), no response is required.  To the extent a response is required, Brozen and Ventura deny the allegations in this paragraph.

**COUNT VII**
**Failure to Comply with California Labor Code Section 1198.5 (Against AMPAM)**

232.   Plaintiffs incorporate the preceding paragraphs as though set forth herein.

**ANSWER:** Brozen and Ventura incorporate their responses to the paragraphs above as though fully stated herein.

233.   California Labor Code Section 1198.5(a) provides, "Every current and former employee, or his or her representative, has the right to inspect and receive a copy of the personnel records that the employer maintains relating to the employee's performance or to any grievance concerning the employee."

**ANSWER**:   Because the allegations in Count VII are not asserted against Brozen or Ventura and because Count VII has been dismissed (ECF 121), no response

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MIAMI

Case 5:24-cv-01038-KK-DTB    Document 147    Filed 03/14/25    Page 77 of 85    Page ID
#:4822

is required. To the extent a response is required, Brozen and Ventura deny the allegations in this paragraph.

234. California Labor Code Section 1198.5(b)(1) further provides, "Upon a written request from a current or former employee, or his or her representative, the employer shall . . . provide a copy of the personnel records, at a charge not to exceed the actual cost of reproduction, not later than 30 calendar days from the date the employer receives the request." 235. An employer's failure to comply within this timeframe entitles a current or former employee to recover a seven hundred fifty dollar $750 penalty from the employer. Cal. Lab. Code § 1198.5(k).

**ANSWER**: Because the allegations in Count VII are not asserted against Brozen or Ventura and because Count VII has been dismissed (ECF 121), no response is required. To the extent a response is required, Brozen and Ventura deny the allegations in this paragraph.

236. Pursuant to California Labor Code § 1198.5, Plaintiffs' counsel requested personnel files for Plaintiff Alfredo Ramirez and other represented parties in writing on April 2, 2024. Defendants failed to provide the requested documents within 30 days of receipt of Plaintiff Ramirez's request as required by California Labor Code § 1198.5(b)(1).

**ANSWER**: Because the allegations in Count VII are not asserted against Brozen or Ventura and because Count VII has been dismissed (ECF 121), no response is required. To the extent a response is required, Brozen and Ventura deny the allegations in this paragraph.

## VII. PRAYER FOR RELIEF

237. Plaintiffs, on behalf of themselves, the ESOP, and the Proposed Class, pray that judgment be entered against Defendants on each Count and that the Court grant the following relief:

A. Declare that Defendants have violated ERISA as alleged herein;

B. Enjoin Defendants from engaging in further such violations of ERISA;

McDermott Will & Emery LLP
Attorneys At Law
Miami

- 76 -    BROZEN AND VENTURA'S ANSWER TO
PLAINTIFFS' FIRST AMENDED
COMPLAINT

C. Order Defendants to restore all losses to the Plan that resulted from their ERISA violations;

D. Order the Seller Defendants to disgorge all profits in connection with the ESOP Transaction and deposit them into the Plan;

E. Order other remedial and equitable relief that the Court deems appropriate, including but not limited to reforming or rescinding the ESOP Transaction and/or the 2023 Resale Transaction, a surcharge against Defendants, an accounting for profits, and a constructive trust and/or equitable lien on any funds wrongfully held by any of the Defendants; Enjoin the Defendants from dissipating any of the proceeds they received from the ESOP Transaction held in their actual or constructive possession until the ESOP participants' rights can be adjudicated;

F. Enjoin the Defendants from transferring or disposing of any of the proceeds they received from the ESOP Transaction to any person or entity, which would prejudice, frustrate, or impair the ESOP participants' ability to recover the same;

G. Void the indemnification and defense provisions challenged in Count VI and require the indemnitees to return the cost of their defense to the ESOP;

H. Require Defendants to pay attorneys' fees and costs pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g) and/or order payment of fees and expenses to Plaintiffs' counsel on the basis of the common benefit or common fund doctrine out of any money recovered for the Class;

I. Enter a monetary judgment against AMPAM in favor of Plaintiff Ramirez for $750, plus attorneys' fees and costs pursuant to California Labor Code § 1198.5(l);

J. Award pre-judgment interest and post-judgment interest as appropriate; and

K. Award such other and further relief that the Court determines is appropriate pursuant to ERISA § 502(a)(2) and/or (a)(3), 29 U.S.C. § 1132(a)(2) and/or (a)(3), or pursuant to Rule 54(c) of the Federal Rules of Civil Procedure, or that is equitable and just.

- 77 -     BROZEN AND VENTURA'S ANSWER TO PLAINTIFFS' FIRST AMENDED COMPLAINT

**ANSWER:** Brozen and Ventura deny that Plaintiffs are entitled to any of the relief requested.

<b>DEMAND FOR JURY TRIAL</b>

Plaintiffs hereby demand trial by jury on all issues so triable, pursuant to Rule 38 of the Federal Rules of Civil Procedure.

**ANSWER:** Brozen and Ventura respond that this paragraph sets forth no factual allegations for which a response is required.

<b><u>BROZEN AND VENTURA'S AFFIRMATIVE AND OTHER DEFENSES</u></b>

In further answer to Plaintiffs' First Amended Complaint, Brozen and Ventura hereby repeat, reallege, and incorporate herein by reference their responses to Paragraphs 1 through 237 and allege the following affirmative and other defenses. In asserting these defenses, Brozen and Ventura do not assume the burden of proof as to matters that, pursuant to law, are Plaintiffs' burden to prove. Because Counts VI of Plaintiffs' First Amended Complaint has been dismissed, ECF 122, Brozen and Ventura have not alleged any affirmative or other defenses as to that dismissed cause of action. Without waiving or excusing the burden of proof, Brozen and Ventura assert the following affirmative or other defenses to Counts I and III of Plaintiffs' First Amended Complaint, as the only two causes of action remaining against Brozen and Ventura:

<b>FIRST DEFENSE</b>

<b>EXEMPTIONS FROM PROHIBITED TRANSACTIONS</b>

1.    Plaintiffs' prohibited transaction claims fail in whole or in part because the prohibited transaction rules in ERISA § 406 do not apply to the 2019 Transaction or 2023 Transaction. The 2019 and 2023 Transactions satisfies the exemptions set forth in ERISA § 408(e) and/or § 408(b). The ESOP paid no more than adequate consideration and fair market value for AMPAM stock in the 2019 Transaction, which Brozen determined in good faith following a prudent investigation prior to approving the transaction. The ESOP also received no less than adequate consideration and fair

McDermott Will & Emery LLP
Attorneys At Law
Miami

market value for AMPAM stock in the 2023 Transactions, which Brozen determined in good faith following a prudent investigation prior to approving the transaction. The amount of compensation paid to Brozen for his services in connection with the transaction was reasonable, satisfying the exemptions set forth in ERISA § 408(b) and/or ERISA § 408(c).

2. ERISA § 408(e) provides an exemption for the acquisition or sale by a plan of qualifying employer securities if such acquisition or sale is for "adequate consideration," if no commission is charged with respect thereto, and if the plan is an eligible individual account plan under ERISA § 1107(d)(3), which includes employee stock ownership plans.

3. The ERISA § 408(e) exemption applies to the 2019 Transaction because Brozen conducted a prudent investigation of the AMPAM stock that was offered for sale prior to approving the 2019 Transaction. Following this prudent investigation, Brozen determined in good faith that the price the ESOP would pay for AMPAM stock in the 2019 Transaction was no more than adequate consideration and fair market value.

4. The ERISA § 408(e) exemption applies to the 2023 Transaction because Brozen conducted a prudent investigation of the AMPAM stock that was offered to be purchased prior to approving the 2023 Transaction. Following this prudent investigation, Brozen determined in good faith that the price the ESOP would receive for AMPAM stock in the 2023 Transaction was no less than adequate consideration and fair market value.

5. ERISA § 408(b)(3) provides an exemption for a loan to an employee stock ownership plan if the loan is primarily for the benefit of participants and beneficiaries of the plan and such loan is at an interest rate which is not in excess of a reasonable rate, and ERISA § 408(b)(3) allows a plan to give collateral if such collateral are qualifying employer securities.

6. The ERISA § 408(b)(3) exemption applies because the financing

provided to the ESOP was not in excess of a reasonable rate and was primarily for the benefit of the participants and beneficiaries of the ESOP.

7.    ERISA § 408(b)(2) and (c)(2) provide exemptions for compensation paid to fiduciaries in connection with an alleged prohibited transaction if the compensation paid was reasonable.

8.    The ERISA § 408(b)(2) and (c)(2) exemptions apply because the amount of compensation paid to Brozen was reasonable.

9.    Brozen and Ventura also reserve their right to argue the applicability of other exemptions in response to claims or positions Plaintiffs takes in this litigation.

## SECOND DEFENSE
## FAILURE TO STATE A CLAIM

10.    The First Amended Complaint, in whole or in part, fails to state a claim upon which relief can be granted.

## THIRD DEFENSE
## WAIVER/ESTOPPEL

11.    Plaintiffs' claims are barred in whole or in part based on the acceptance of their benefits.  Plaintiffs' claims are or may be barred, in whole or in part, by the doctrines of waiver, laches, and/or estoppel.

## FOURTH DEFENSE
## STANDING

12.    Plaintiffs' claims are barred in whole or in part because neither Plaintiffs, any other participant or beneficiary, nor the Plan suffered an actual concrete injury as result of the 2019 Transaction or the 2023 Transaction and Plaintiffs thus lack standing to bring their claims.

## FIFTH DEFENSE
## LACK OF DAMAGES AND/OR CAUSATION

13.    Plaintiffs' claims are barred, in whole or in part, because Plaintiffs have not suffered any loss or injury and/or because of lack of loss causation.

McDermott Will & Emery LLP
Attorneys At Law
Miami

## SIXTH DEFENSE
## VENTURA NOT A FIDUCIARY

14.    Plaintiffs' claims against Ventura are barred, in whole or in part, because Ventura did not serve as trustee to the ESOP and is not otherwise a fiduciary under ERISA.

## SEVENTH DEFENSE
## NO ERISA VIOLATION

15.    Plaintiffs' claims are barred, in whole or in part, because the actions of Brozen and Ventura, to the extent any are found to be those of an ERISA fiduciary, complied with the requirements of ERISA as well as industry norms and standards.

## EIGHTH DEFENSE
## STATUTE OF LIMITATIONS

16.    Plaintiffs' claims regarding the 2019 Transaction are barred by the statute of limitations in ERISA § 413, 29 U.S.C. § 1113 because Plaintiffs had actual knowledge that the alleged prohibited transaction took place more than three years before filing suit.

## NINTH DEFENSE
## DAMAGES CAUSED BY OTHER PARTIES

17.    Plaintiffs' alleged damages, if any, were caused by other parties over whom Brozen and Ventura had no control and for whom Brozen and Ventura had no responsibility.

## TENTH DEFENSE
## LACK OF INTENT

18.    ERISA § 406(a)(1)(D) prohibits transactions between a plan and a party in interest that constitute a direct or indirect "transfer to, or use by, or for the benefit of a party in interest, of any assets of the plan."

19.    Courts have held that a prohibited use of plan assets for the benefit of a party in interest, as described by ERISA § 406(a)(1)(D), requires a "subjective intent

BROZEN AND VENTURA'S ANSWER TO
PLAINTIFFS' FIRST AMENDED
COMPLAINT

McDermott Will & Emery LLP
Attorneys At Law
Miami

1    to benefit" a party in interest.

2        20.    Plaintiffs have not alleged and cannot establish that Brozen or Ventura

3    had any "subjective intent to benefit" any party in interest.

4                    **RESERVATION OF RIGHT TO AMEND ANSWER**

5        Brozen and Ventura reserve the right to amend this Answer to assert any

6    additional affirmative or other defenses that may be uncovered or made known during

7    the pendency of this case.

8        **WHEREFORE**, Brozen and Ventura respectfully pray that the Court:

9        1.  dismiss Counts I and III with prejudice;

10       2.  judgment in their favor as to Counts I and III;

11       3.  deny all relief requested by Plaintiffs;

12       4.  allow Brozen and Ventura to recover costs and attorneys' fees, to the extent

13           allowed by law; and

14       5.  grant such further relief as is just and proper.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

McDermott Will & Emery LLP
Attorneys At Law
Miami

1    Dated: March 14, 2025                McDERMOTT WILL & EMERY LLP

2

3                                         By:*/s/ Julian Andre*

4                                            J. CHRISTIAN NEMETH (Cal. Bar No.
                                             222271)
5                                            jcnemeth@mwe.com
                                             **McDERMOTT WILL & EMERY LLP**
6                                            333 SE 2nd Avenue, Suite 4500
                                             Miami, FL  33131-4336
7                                            Telephone:     +1 305 358 3500
                                             Facsimile:     +1 305 347 6500
8
                                             JULIAN ANDRE (Cal. Bar No. 251120)
9                                            jandre@mwe.com
                                             **McDERMOTT WILL & EMERY LLP**
10                                           2049 Century Park East, Suite 3200
                                             Los Angeles, CA  90067-3206
11                                           Telephone:     +1 310 551 9335
                                             Facsimile:     +1 310 317 7296
12
13                                           ***Attorneys for Defendants Neil Brozen
                                             and Ventura Trust Company***
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 83 -    BROZEN AND VENTURA'S ANSWER TO
          PLAINTIFFS' FIRST AMENDED
          COMPLAINT

# CERTIFICATE OF SERVICE

I hereby certify that on March 14, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of the filing to the email address denoted on the Notice of Electronic Filing.

By: */s/ Julian Andre*
Julian Andre

McDermott Will & Emery LLP
Attorneys At Law
Miami

BROZEN AND VENTURA'S ANSWER
TO PLAINTIFFS' FIRST AMENDED
COMPLAINT